# EXHIBIT A

Electronically Filed
06/09/2016 12:57:24 PM

*[signature]*

CLERK OF THE COURT

1   **COMP**
    PAUL D.S. EDWARDS,
2   713 Wheat Ridge Lane, Unit 203,
3   Las Vegas, Nevada 89145
    Landline Telephone:   702.341.1776
4   Cellular Telephone:   702.893.1776
    Email: pauldse@pauldsedwards.com
5   Plaintiff *pro se*

6

7                    **DISTRICT COURT,**

8              **CLARK COUNTY, NEVADA**

9

10  PAUL D.S. EDWARDS,

11                                          **CASE NO.:**        A-16-738174-C
                 **Plaintiff,**
12                                          **DEPT. NO.:**       **XX**
13           *vs.*

14  MICHAEL J. MULDOON,
    a/k/a MICHAEL JOSEPH MULDOON,
15  a/k/a, MICHAEL J. MULDOON, III,
    a/k/a, MICHAEL MULDOON,
16  and CHRISTOPHER JONES,                  **ARBITRATION EXEMPTION**
    a/k/a CHRIS JONES,                           **CLAIMED**
17  and BQ RESORTS, LLC,
18  d/b/a STARPOINT RESORT GROUP, INC.,
    a/k/a RESORT STAY INTERNATIONAL, LLC.,
19  a/d/b/a GETAWAYS RESORT MANAGEMENT,
    a/d/b/a GEOHOLIDAY CLUB,
20  d/b/a SAPPHIRE RESORTS, LLC,
    a/d/b/a SAPPHIRE RESORTS, GROUP,
21  a/k/a STAY SAPPHIRE, a/k/a SAPPHIRE,
    and DOES I-X,
22  and ROE CORPORATIONS XI-XX, et al.
23
                 **Defendants.**
24

25

26               **COMPLAINT FOR DAMAGES,**
27                **INJUNCTIVE RELIEF,**
                        **AND**
28         **DEMAND FOR TRIAL BY JURY**

# I.
## INTRODUCTION

1.     This is an action for statutory damages, punitive damages, exemplary damages and injunctive relief brought by an individual consumer for Defendants' violations of, but not limited to—

> Nevada Revised Statutes (**"NRS"**), including, but not limited to, 41.600(e), 42.005, 201.255(2), 228.540-228.620, 597.812-597.818,598.0903-598.0999 (including, but not limited to 598.0915(15), 598.0916, 598.0918, 598.092, and 598.0923(3)), 598.0977, 599B.080-599B.145, 599B.270-599B.300 and 707.910(2)-707.920, as amended—

Plaintiff asserts, alleges and maintains that the above violations were perpetrated (either individually or in concert with others, and either directly or indirectly) by Defendants MICHAEL J. MULDOON, a/k/a MICHAEL JOSEPH MULDOON, a/k/a, MICHAEL J. MULDOON, III, a/k/a, MICHAEL MULDOON, and CHRISTOPHER JONES, a/k/a CHRIS JONES, and BQ RESORTS, LLC, d/b/a STARPOINT RESORT GROUP, INC., a/k/a RESORT STAY INTERNATIONAL, LLC., a/d/b/a GETAWAYS RESORT MANAGEMENT, a/d/b/a GEOHOLIDAY CLUB, d/b/a SAPPHIRE RESORTS, LLC, a/d/b/a SAPPHIRE RESORTS, GROUP, a/k/a STAY SAPPHIRE, a/k/a SAPPHIRE, and DOES I-X, and ROE CORPORATIONS XI-XX, et al. (**"collectively "Defendants"**)— with total disregard for the rights of the Plaintiff and by ignoring numerous Nevada state laws.

# II.
## JURISDICTION AND VENUE

2.     Jurisdiction is proper in Nevada state courts.

3.     Venue is proper in the above titled court because Defendants, and each of them, at all times relevant and material herein, transacted, and continues to transact business within the city of Las Vegas, the county of Clark, and the state of Nevada, and the conduct complained of herein occurred within one (1) or more of those venues.

### III.

### PARTIES

#### (Plaintiff)

4.     That at all times relevant and material herein, Plaintiff PAUL D.S. EDWARDS was and continues to be a natural person who resides in Las Vegas, Clark County, Nevada.

5.     That at all times relevant and material herein, Plaintiff PAUL D.S. EDWARDS was and continues to be a natural person who resides in Las Vegas, Clark County, Nevada, and is a "consumer" pursuant to NRS 599B.010(2).

6.     That at all times relevant and material herein, Plaintiff PAUL D.S. EDWARDS ("Plaintiff") is an "Older Person" as delineated within NRS 228.255.

#### (Defendants)

#### MICHAEL J. MULDOON, III, a/k/a MICHAEL JOSEPH MULDOON,
#### a/k/a MICHAEL J. MULDOON, a/k/a, MICHAEL MULDOON

7.     That at all times relevant and material herein, Plaintiff asserts, alleges and maintains that Defendant MICHAEL J. MULDOON, III, a/k/a MICHAEL JOSEPH MULDOON, a/k/a MICHAEL J. MULDOON, a/k/a, MICHAEL MULDOON ("MULDOON"), a natural person, held himself out as and continues to hold himself out as the Founder, President and CEO of Defendant BQ RESORTS, LLC.

8.     That at all times relevant and material herein, Plaintiff asserts, alleges and maintains that Defendant MULDOON, a natural person, [also] held himself out and continues to hold himself out as the Founder, President, CEO and Director of, by and for Defendant STARPOINT RESORT GROUP and Starpoint Resort Partners, Inc.

9.     That at all times relevant and material herein, Plaintiff asserts, alleges and maintains that Defendant MULDOON, a natural person, [also] held himself out and continues to hold himself out as the Founder, President, CEO and Director of, by and for Defendant GEOHOLIDAY CLUB.

. . .

. . .

-3-

10.     That at all times relevant and material herein, Plaintiff asserts, alleges and maintains that Defendant MULDOON— in his capacity as Founder, President and CEO of, by and for Defendants BQ RESORTS, LLC, d/b/a STARPOINT RESORT GROUP, a/d/b/a Defendant GEOHOLIDAY CLUB (a/d/b/a SAPPHIRE RESORTS, LLC,[1] a/d/b/a SAPPHIRE RESORTS, GROUP, a/k/a STAY SAPPHIRE, a/k/a SAPPHIRE), oversees and provides leadership, direction and guidance for all business activities, conduct and procedures of, by, for and on behalf of BQ RESORTS, LLC, d/b/a STARPOINT RESORT GROUP, a/d/b/a Defendant GEOHOLIDAY CLUB (a/d/b/a SAPPHIRE RESORTS, LLC, a/d/b/a SAPPHIRE RESORTS, GROUP, a/k/a STAY SAPPHIRE, a/k/a SAPPHIRE).

11.     That at all times relevant and material herein, Plaintiff asserts, alleges and maintains that Defendant MULDOON holds himself out as having his residence (usual place of abode) located at 8219 Round Hills Circle, Las Vegas, NV, and conducting his businesses from his residence located at 8219 Round Hills Circle, Las Vegas, NV.

## CHRISTOPHER JONES, a/k/a CHRIS JONES

12.     That at all times relevant and material herein, Plaintiff asserts, alleges and maintains that Defendant CHRISTOPHER JONES, a/k/a CHRIS JONES (**"JONES"**), a natural person, held himself out as Principal & General Counsel of, by and for Defendant RESORT STAY INTERNATIONAL, LLC.

13.     That at all times relevant and material herein, Plaintiff asserts, alleges and maintains that Defendant JONES, a natural person, held himself out as Secretary and Director of, by and for Defendant GEOHOLIDAY CLUB.

14.     That at all times relevant and material herein, Plaintiff asserts, alleges and maintains that Defendant JONES, a natural person, held himself out as Secretary of, by and for Defendant STARPOINT RESORT GROUP.

---

[1]Defendant SAPPHIRE RESORTS, LLC was formally known as Premiere Travel Club Group, LLC

-4-

15.     That at all times relevant and material herein, Plaintiff asserts, alleges and maintains that Defendant JONES— in his capacity as Principal & General Counsel of, by and for Defendant RESORT STAY INTERNATIONAL, LLC; Secretary and Director of, by and for Defendant GEOHOLIDAY CLUB (a/d/b/a SAPPHIRE RESORTS, LLC, a/d/b/a SAPPHIRE RESORTS, GROUP, a/k/a STAY SAPPHIRE, a/k/a SAPPHIRE); and Secretary of, by and for Defendant STARPOINT RESORT GROUP, oversees and provides leadership, direction and guidance for all business activities, conduct and procedures of, by, for and on behalf of Defendant RESORT STAY INTERNATIONAL, LLC; Defendant GEOHOLIDAY CLUB and Defendant STARPOINT RESORT GROUP.

## BQ RESORTS, LLC

16.     That at all times relevant and material herein, Plaintiff asserts, alleges and maintains that Defendant MICHAEL J. MULDOON, III, a/k/a MICHAEL JOSEPH MULDOON, a/k/a MICHAEL J. MULDOON, a/k/a, MICHAEL MULDOON (**"MULDOON"**) held himself out and continues to hold himself out as the Founder, President and CEO of Defendant BQ RESORTS, LLC.

17.     That at all times relevant and material herein, Plaintiff asserts, alleges and maintains that Defendant BQ RESORTS, LLC (**"BQ"**),[2] is a privately held company; focused on the timeshare business, and owns companies including, but not limited to, Defendant STARPOINT RESORT GROUP, INC., Defendant GEOHOLIDAY CLUB, Defendant GETAWAYS RESORT MANAGEMENT and Defendant SAPPHIRE RESORTS.[3]

18.     That at all times relevant and material herein, Plaintiff asserts, alleges and maintains that Defendant BQ holds itself out as the Manager of, by and for Defendant SAPPHIRE RESORTS, Defendant GETAWAYS RESORT MANAGEMENT, LLC and SRG, LLC.

---

[2] In April 2013 TZP Capital Partners I, L.P. (**"TZP"**), a private equity fund based in New York, completed an investment in [Defendant] BQ Resorts, LLC, thus becoming a partner with Defendant STARPOINT.

[3] On or about December 11, 2014 the Articles of Organization for Premiere Travel Club Group, LLC, was amended to [Defendant] SAPPHIRE RESORTS, LLC.

19.    That at all times relevant and material herein, Plaintiff asserts, alleges and maintains that, under Defendant BQ' ownership umbrella there are, but not limited to, four (4) timeshare clubs; 22 resorts under management; two resort and property management companies; and multiple [active] sales and marketing companies throughout Canada, Costa Rica, the U.S. and the Caribbean.

20.    That at all times relevant and material herein, Plaintiff asserts, alleges and maintains that Defendant BQ is a *foreign corporation* purportedly incorporated under the laws of the state of Deleware.

21.    That at all times relevant and material herein, Plaintiff asserts, alleges and maintains that Defendant BQ held and continues to hold itself out as having its corporate offices and mailing addresses located at various locations, including, but not limited to—

      **(i)**    3340 Topaz Street, Las Vegas, NV 89121;

      **(ii)**    P.O. Box 231300, Las Vegas, NV 89105;

      **(iii)**    2711 Centerville Road, Suite 400, Wilmington, DE 19808
              (Resident Agent address for Defendant BQ' LLC filing in Deleware); and,

      **(iv)**    235 East Warm Springs Road, Suite 107, Las Vegas, NV 89119.

22.    That at all times relevant and material herein, Plaintiff asserts, alleges and maintains that Defendant BQ was not licensed, nor is currently licensed, to conduct any type of business activities (within the County of Clark, or state of Nevada), including, but not limited to its telephone telemarketing[4] and solicitation[5] activities.

---

[4]The FCC defines "telemarketing" as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person." The FCC defines "advertisement" as "any material advertising the commercial availability or quality of any property, goods or services."

[5]The term "telephone solicitation" means the initiation of a telephone call or message for the purpose of encouraging the purchase...of...goods, or services, which is transmitted to any person.47 C.F.R. 64.1200(c). Pursuant to NRS 228.520 a "Telephone solicitor" is defined as a person who makes or causes another person or a machine to make an unsolicited telephone call for the sale of goods or services.
Pursuant to NRS 228.530 an Unsolicited telephone call for the sale of goods or services is defined as a "Unsolicited telephone call for the sale of goods or services" that means an unsolicited telephone call, other than a telephone call on behalf of a charitable organization, religious organization or political organization, to:

(continued...)

## STARPOINT RESORT GROUP, INC.

**23.**     That at all times relevant and material herein, Plaintiff asserts, alleges and maintains that Defendant MICHAEL J. MULDOON, III, a/k/a MICHAEL JOSEPH MULDOON, a/k/a MICHAEL J. MULDOON, a/k/a, MICHAEL MULDOON (**"MULDOON"**) held himself out and continues to hold himself out as the Founder, President, CEO and Director of, by and for Defendant STARPOINT RESORT GROUP.

**24.**     That at all times relevant and material herein, Plaintiff asserts, alleges and maintains that Defendant CHRISTOPHER JONES, a/k/a CHRIS JONES (**"JONES"**) held himself out and continues to hold himself out as the Secretary of, by and for Defendant STARPOINT RESORT GROUP.

**25.**     That at all times relevant and material herein, Plaintiff asserts, alleges and maintains that Defendant STARPOINT RESORT GROUP, INC. (**"STARPOINT"**) held itself out as a Nevada Corporation, formed under the laws of the State of Nevada and listing its corporate and mailing address as 235 East Warm Springs Road, Suite 107, Las Vegas, NV 89119.

**26.**     That at all times relevant and material herein, Plaintiff asserts, alleges and maintains that Defendant STARPOINT also conducts business under the names of GEOHOLIDAY CLUB (Defendant), SAPPHIRE RESORTS (Defendant) and ResortStay International, LLC.

**27.**     That at all times relevant and material herein, Plaintiff asserts, alleges and maintains that Defendant STARPOINT is a d/b/a for Defendant BQ.

**28.**     That at all times relevant and material herein, Plaintiff asserts, alleges and maintains that, pursuant to a business license issued by Clark County Business License Department, Clark County, Nevada, Defendant STARPOINT engages in the business as a Time Share Developer/Seller.

---

[5](...continued)
(a) Rent, lease, sell, exchange, promote or gift any good or service;
(b) Solicit any act described in paragraph (a);
(c) Seek or obtain a donation or contribution of money or anything else of value; or
(d) Seek or obtain information, including, without limitation, any document, intended to be used to facilitate any act described in paragraph (a), (b) or (c).

-7-

29.    That at all times relevant and material herein, Plaintiff asserts, alleges and maintains that, pursuant to a business license issued by Clark County Business License Department, Clark County, Nevada, Defendant STARPOINT conducts its business activities from the location of 3700 South Las Vegas Boulevard 2nd Floor, Las Vegas, NV 89109.

## RESORT STAY INTERNATIONAL, LLC

30.    That at all times relevant and material herein, Plaintiff asserts, alleges and maintains that Defendant RESORT STAY INTERNATIONAL, LLC.[6] ("RESORTSTAY") held itself out as a Nevada Corporation, formed under the laws of the State of Nevada and listing its corporate and mailing address as P.O. BOX 231200, Las Vegas, NV 89105.[7]

31.    That at all times relevant and material herein, Plaintiff asserts, alleges and maintains that Defendant RESORTSTAY held itself out as being managed by Defendant BQ (P.O. Box 231300, Las Vegas, NV 89105) and Meath Holdings, LLC, (P.O. Box 231806, Las Vegas, NV 89105).

32.    That at all times relevant and material herein, Plaintiff asserts, alleges and maintains that Defendant RESORTSTAY is a d/b/a utilized by Defendant STARPOINT.

## GETAWAYS RESORT MANAGEMENT

33.    That at all times relevant and material herein, Plaintiff asserts, alleges and maintains that Defendant GETAWAYS RESORT MANAGEMENT ("GETAWAYS") held itself out as a *foreign corporation* formed under the laws of the State of Deleware and listing its corporate and mailing address as 2711 Centerville Road, Wilmington, DE 19808 (Resident Agent address for Defendant BQ' LLC filing in Deleware).

34.    That at all times relevant and material herein, Plaintiff asserts, alleges and maintains that Defendant GETAWAYS held itself out as being managed by Defendant BQ (2711 Centerville Road, Wilmington, DE 19808 (Resident Agent address for Defendant BQ' LLC filing in Deleware)).

---

[6]Previously known as ResortStay Merger Co, LLC.

[7]Defendant RESORTSTAY also uses the mailing address of 235 East Warm Springs Road, Suite 100, Las Vegas, NV 89119.

35.     That at all times relevant and material herein, Plaintiff asserts, alleges and maintains that Defendant GETAWAYS held itself out as conducting its everyday business activities at the location[s] of 235 E. Warm Springs Rd, Suite 100, Las Vegas, NV 89119 and PO Box 231586, Las Vegas, Nevada.

36.     That at all times relevant and material herein, Plaintiff asserts, alleges and maintains that Defendant GETAWAYS held itself out as also conducting business as [Defendant] SAPPHIRE RESORTS.

37.     That at all times relevant and material herein, Plaintiff asserts, alleges and maintains that Defendant GETAWAYS held itself out as also conducting business as [Defendant] GEOHOLIDAY CLUB.

## GEOHOLIDAY CLUB

38.     That at all times relevant and material herein, Plaintiff asserts, alleges and maintains that Defendant GEOHOLIDAY CLUB (**"GEO"**) held itself out as a *nonprofit* corporation[8] formed under the laws of the State of Nevada and listing its corporate and mailing address as 3700 South Las Vegas Boulevard, 2nd Floor, Las Vegas, NV 89109.[9]

39.     That at all times relevant and material herein, Plaintiff asserts, alleges and believes that Defendant GEO [also] maintains a corporate headquarters in Toronto, Canada.

40.     That at all times relevant and material herein, Plaintiff asserts, alleges and maintains that Defendant GEO also utilizes the name GeoHoliday Vacation Club.

41.     That at all times relevant and material herein, Plaintiff asserts, alleges and maintains that Defendant SAPPHIRE RESORTS is a d/b/a for Defendant GEO.

---

[8]Plaintiff believes that Defendant GEOHOLIDAY' *nonprofit* corporation filing[s] are questionable. That Plaintiff holds, based upon Defendant GEOHOLIDAY' businesses and business practices, Defendant GEOHOLIDAY **does not qualify** as a *nonprofit* corporation—accordingly, Plaintiff will request the Secretary of State' office conduct an investigation into Defendant GEOHOLIDAY' corporate filings.

[9]Defendant GEO [also] holds itself out as having a mailing address of P.O. Box 231300, Las Vegas, NV 89105.

42.     That at all times relevant and material herein, Plaintiff asserts, alleges and maintains that Defendant GEO also utilizes the name of [Defendant] STARPOINT RESORT GROUP, INC., as a d/b/a.

43.     That at all times relevant and material herein, Plaintiff asserts, alleges and maintains that Defendant MULDOON is the President and a Director of, by and for Defendant GEO.

44.     That at all times relevant and material herein, Plaintiff asserts, alleges and maintains that Defendant CHRISTOPHER JONES, a/k/a CHRIS JONES is the Secretary and a Director of, by and for Defendant GEO.

45.     That at all times relevant and material herein, Plaintiff asserts, alleges and maintains that Defendant GEOHOLIDAY is a Canadian founded company with almost 30 years of experience in the vacation ownership industry. As a pioneer of credit based vacation ownership, GeoHoliday provides exclusive exchange, leisure travel, and reservation services for more than 25,000 Club Members.

### SAPPHIRE RESORTS, LLC, a/d/b/a SAPPHIRE RESORTS, GROUP, a/k/a STAY SAPPHIRE, a/k/a SAPPHIRE

46.     That at all times relevant and material herein, Plaintiff asserts, alleges and maintains that Defendant SAPPHIRE RESORTS, LLC,[10] a/d/b/a SAPPHIRE RESORTS, GROUP, a/k/a STAY SAPPHIRE, a/k/a SAPPHIRE **("SAPPHIRE")** held itself out as a Domestic Limited-Liability Company formed under the laws of the State of Nevada and listing its corporate and mailing address as PO Box 231300, Las Vegas, NV 89105; PO Box 93776, Las Vegas, NV 89193; and 235 E Warm Springs, Suite 100, Las Vegas, NV 89119..

47.     That at all times relevant and material herein, Plaintiff asserts, alleges and maintains that Defendant SAPPHIRE held itself out as being managed by Defendant BQ (PO Box 231300, Las Vegas, NV 89105).

---

[10]Defendant SAPPHIRE RESORTS, LLC was formally known as Premiere Travel Club Group. LLC.

-10-

48.     That at all times relevant and material herein, Plaintiff asserts, alleges and maintains that Defendant SAPPHIRE holds itself out as a truly unique idea in personal vacation ownership. Headquartered in Las Vegas, Nevada, Sapphire Resorts provides luxury accommodations in some of the most desired vacation destinations around the world.

49.     That at all times relevant and material herein, Plaintiff asserts, alleges and maintains that Defendant SAPPHIRE holds itself out as [also] conducting business under the names [Defendant] STARPOINT RESORT GROUP, INC. and [Defendant] GEOHOLIDAY RESORTS.

50.     That at all times relevant and material herein, Plaintiff asserts, alleges and maintains that Defendant SAPPHIRE (a multi-site timeshare club comprised of 21 resorts based in Las Vegas, Nevada) holds itself out as being developed by [Defendant] STARPOINT RESORT GROUP a subsidiary of Defendant BQ RESORTS LLC.

51.     That Plaintiff is unaware of the true names and legal capacities whether individual, corporate, associate or otherwise, of Defendants DOES I-X, and ROE CORPORATIONS XI-XX sued herein inclusive, and therefore sues those Defendants and any Co-Defendants by such fictitious names.

52.     That at all times relevant and material herein, Plaintiff asserts, alleges and maintains that Plaintiff is informed and believes, and thereon alleges that each of the Defendants MICHAEL J. MULDOON, a/k/a MICHAEL JOSEPH MULDOON, a/k/a, MICHAEL J. MULDOON, III, a/k/a, MICHAEL MULDOON, and CHRISTOPHER JONES, a/k/a CHRIS JONES, and BQ RESORTS, LLC, d/b/a STARPOINT RESORT GROUP, INC., a/k/a RESORT STAY INTERNATIONAL, LLC., a/d/b/a GETAWAYS RESORT MANAGEMENT, a/d/b/a GEOHOLIDAY CLUB, d/b/a SAPPHIRE RESORTS, LLC, a/d/b/a SAPPHIRE RESORTS, GROUP, a/k/a STAY SAPPHIRE, a/k/a SAPPHIRE, and DOES I-X, and ROE CORPORATIONS XI-XX, et al. (**"collectively "Defendants"**), or any Co-Defendants designated herein DOES I-X, and ROE CORPORATIONS XI-XX, are in some way legally responsible and liable for the events referred to hereinafter, and proximately caused the damages alleged herein.

-11-

53.     That at all times relevant and material herein, Plaintiff asserts, alleges and maintains that Defendants (and each of them, either individually or in concert with others, and either directly or indirectly) in doing the acts and omissions alleged herein, acted individually and/or through their officers, partners, directors, associates, agents, employees and co-conspirators, including, but not limited to the fictitious Defendants and any Co-Defendants named herein as DOES I-X and ROE CORPORATIONS XI-XX, each of whom was acting within the purpose and scope of that agency, employment and conspiracy, and said acts and omissions were known to, and authorized and ratified by, each of the other Defendants.

54.     That Plaintiff pray leave to insert said DOES I-X, and ROE CORPORATIONS XI-XX DOES' true names and legal capacities when ascertained.

**IV.**

**UNDISPUTABLE ALLEGATIONS**

Plaintiff repeats, realleges, and incorporates by reference paragraphs one through fifty-four as aforementioned.

55.     That at all times relevant and material herein, Plaintiff asserts, alleges and maintains that Plaintiff' landline telephone number (702.341.1776), and Plaintiff' wireless (cellular) telephone number (702.893.1776) has been on the National DO-NOT-CALL Registry [continuously] from June 28, 2003.[11] See **Exhibit 4** attached hereto and incorporated herein by reference.

. . .

. . .

. . .

---

[11]Calls prohibited to telephone numbers in registry...
    ...a telephone solicitor shall not intentionally make an unsolicited telephone
    call for the sale of goods or services to a telephone number in the currently
    effective version of the list of telephone numbers in the registry. NRS
    228.590(1).

-12-

1.     **First** *illegal, unauthorized, deceptive and unscrupulous* **telemarketing and solicitation telephone call to Plaintiff when no existing business relationship existed between the Plaintiff and any Defendants named herein,**[12] **and/or without first obtaining Plaintiff's** *written (or oral)* **consent to receive any calls by, for, or on behalf of the Defendants herein named:**

56.     That at all times relevant and material herein, Plaintiff asserts, alleges and maintains that on or about September 20, 2015@8:05 p.m., Defendants, and each of them (either individually or in concert with others, and either directly or indirectly)— were the causation of an *illegal, unauthorized, unscrupulous, deceptive and mendacious autodialed telemarketing and solicitation telephone call* to Plaintiff' landline telephone number (702.341.1776), when no existing business relationship existed between the Plaintiff and any Defendants named herein, or without first obtaining Plaintiff's *written (or oral)* consent to receive any *telemarketing and solicitation telephone calls* from Defendants.

57.     That at all times relevant and material herein, Plaintiff asserts, alleges and maintains that on or about September 20, 2015@8:05 p.m., Defendants, and each of them (either individually or in concert with others, and either directly or indirectly)— were the causation of an *illegal, unauthorized, unscrupulous, deceptive and mendacious autodialed telemarketing and solicitation telephone call* to Plaintiff' landline telephone number (702.341.1776), utilizing one (1) or more Automatic Telephone Dialing System[s] (**"ATDS"**)[13] (whose definition include a *"predictive*

---

[12]*See* NRS 228.600.

[13]**The term "AUTOMATIC TELEPHONE DIALING SYSTEM," "AUTODIALER," "PREDICTIVE DIALER," and "ROBOCALL" (collectively "ATDS"),** as those terms are used herein, refers to and means, but is not limited to, equipment which has the capacity— **(1)** to store or produce telephone numbers to be called, using a random or sequential number generator; **(2)** to dial such numbers; **(3)** hardware, when paired with certain software, has the capacity to store or produce numbers and dial those numbers at random, in sequential order, or from a database of numbers; **(4)** equipment that dials numbers and, when certain computer software is attached, also assists in predicting when an agent will be available to take calls; and, **(5)** a system that need not actually store, produce, or call randomly or sequentially generated telephone numbers, but only have the capacity to do it.
Also see, NRS 597.812 that describes a "Device for automatic dialing...." as a device that:
     Incorporates a storage capability of telephone numbers to be called and
     utilizes a random or sequential number generator producing telephone

(continued...)

1   *dialer*"[14]) to actuate the September 20, 2015 (8:05 p.m.) *illegal* solicitation and telemarketing

2   telephone call when no existing business relationship existed between the Plaintiff and any

3   Defendants named herein, or without first obtaining Plaintiff's *written (or oral)* consent to receive

4   any *telemarketing and solicitation telephone calls* from Defendants.

5       **58.**    That at all times relevant and material herein, Plaintiff asserts, alleges and maintains

6   that the September 20, 2015 (8:05 p.m.) *illegal, unauthorized, unscrupulous, deceptive and*

7   *mendacious telemarketing and solicitation telephone call* to Plaintiff' residential **("landline")**

8   telephone number (702.341.1776) was placed, or caused to be placed at the direction, authorization

9   and knowledge of, but not limited to Defendants MULDOON and JONES.

10      **59.**    That at all times relevant and material herein, Plaintiff asserts, alleges and maintains

11  that on or about September 20, 2015@8:05 p.m., Defendants MULDOON and JONES, in collusion

12  and concert with each other and DOE Defendants, conspired with the employees, agents or

13  representatives of, by, for and on behalf of, Defendants MULDOON, JONES, BQ RESORTS, LLC,

14  d/b/a STARPOINT RESORT GROUP, INC., a/k/a RESORT STAY INTERNATIONAL, LLC.,

15  a/d/b/a GETAWAYS RESORT MANAGEMENT, a/d/b/a GEOHOLIDAY CLUB, d/b/a SAPPHIRE

16  RESORTS, LLC, a/d/b/a SAPPHIRE RESORTS, GROUP, a/k/a STAY SAPPHIRE, a/k/a

17  SAPPHIRE to place and transmit, or cause to be placed and transmitted an *illegal, unauthorized,*

18  *unscrupulous, deceptive and mendacious telemarketing and solicitation telephone call* to Plaintiff'

19  landline telephone number (702.341.1776) when no existing business relationship existed between

20  the Plaintiff and any Defendants named herein, or without first obtaining Plaintiff's *written (or oral)*

21  consent to receive any *telemarketing and solicitation telephone calls* from Defendants.

22  ―――――――――――――――

23      [13](...continued)
    numbers to be called;

24  [14]The characteristic of utilizing a "predictive dialer" is the **delay** to get a response from the calling
    party. An automatic telephone dialing system that dials from a list    of numbers and turns the call over

25  to an agent when a human responds. It increases productivity in a call center, because the agents can
    spend their time talking rather than waiting for calls to go through as well as hanging up on busy

26  signals and answering machines. **The pause you often hear when you answer a call from a**

27  **telemarketer is the time it takes for the system to determine that you are a live person.**

28                              **-14-**

60.     That at all times relevant and material herein, Plaintiff asserts, alleges and maintains that the September 20, 2015 (8:05 p.m.) telephone call to Plaintiff's landline telephone number (702.341.1776) was displayed on Plaintiff's Caller ID (**"CID"**) as originating from UNAVAILABLE OUT OF AREA (No calling name or number was displayed).

61.     That at all times relevant and material herein, Plaintiff asserts, alleges and maintains that on or about September 20, 2015@8:05 p.m., Plaintiff received an *illegal, unauthorized, unscrupulous, deceptive and mendacious telemarketing and solicitation telephone call* to Plaintiff's landline telephone number (702.341.1776), and when Plaintiff answered the incoming telephone call, Plaintiff said "Hello" and a female ["Salesperson"[15]] (with an Asian accent[16]) said, in part, the following—

> "I'm looking for Paul Edwards...my name is Carmella Martinez...from Sapphire Resorts here in Las Vegas, Nevada[17]...the reason why I am calling you today is to simply inform you that you have an exclusive invite from our company...here in Nevada...for your time and effort attending here, you will be receiving a 2 round-trip airlines ticket plus a 4 night hotel accommodation...anywhere here in the US...no cost...you might wondering what is the catch and why we are giving this package to you...The reason why we are giving this package to you for no cost because right now our company here in Las Vegas needs to (unintelligible)...The only thing you have to do to claim the package is to attend the grand promotion here in...Las Vegas. We will introduce to you our newest facilities here...our growing family and our newest concept in travel that might benefit you...can I have your email so I can send you a letter...(Plaintiff asked what company is calling)...It's Sapphire Resorts. We are located between the Cosmopolitan Hotel, Bellagio and the Planet Hollywood. Let me give you the schedule for the presentation...Bring 2 forms of identification...a drivers license or a Nevada state ID...During the presentation...we will offer you like a membership program...and if you...see something beneficial on your part and you guys decide to become a member of our growing family the only form of payment that we do accept here is the form of a credit card...Do you have a major credit card?...Have you be been invited before by GEO HOLIDAY?...must be earning at least $60,000.00 every year...One of my conformation managers will get back to you within 5 to 10 minutes..."

---

[15]Salesperson" means any person— Employed or authorized by a seller to sell, or to attempt to sell, goods or services by telephone. NRS 599B.010(7)(a).

[16]Plaintiff maintains that these telemarketing calls are generated from the Philippines. That, to hide their *illegal activities* Defendants, and each of them, utilizes telemarketing businesses in the Philippines in their attempt to evade the laws and elude claims by consumers such as Plaintiff.

[17]Plaintiff advised the caller that the conversation was being recorded. Plaintiff will provide a copy of the recorded conversation if requested during the discovery process.

-15-

62.    That at all times relevant and material herein, Plaintiff asserts, alleges and maintains that on or about September 20, 2015@8:27 p.m., Plaintiff received a telephone call that was displayed on his CID as originating from UNAVAILABLE - OUT OF AREA (no calling name or telephone number was displayed, indicating the caller *intentionally blocked its calling number to avoid identification*).[18]

63.    That at all times relevant and material herein, Plaintiff asserts, alleges and maintains that when Plaintiff answered the September 20, 2015 (8:27 p.m.) incoming telephone call and said "Hello," a female [Salesperson] (with an Asian accent[19]) said, in part, the following—

> "Hello, Hi, I'm looking for Mr. Paul Edwards..my name is (unintelligible), I'm the reservations manager of Sapphire Resorts, located here in (umm) Las Vegas...Let me verify all the information you have here...This is your first time you have been invited to our company?...You are not a member of GeoHoliday or Sapphire Resorts?...What kind of card do you have, a credit or a debit?...We are here at the Jockey Club... ."

64.    That at all times relevant and material herein, Plaintiff asserts, alleges and maintains that on or about September 20, 2015@8:41 p.m., Plaintiff received a [combination] "Conformation Letter" and "Visitors Pass" from [Defendant] SAPPHIRE RESORTS to attend a sales presentation pertaining to, regarding and associated with the previous *illegal, unauthorized, unscrupulous, deceptive and mendacious telemarketing and solicitation telephone call* to Plaintiff's landline telephone number (702.341.1776). *See* #'s 56-64 *supra*. A copy of the "Conformation Letter" and "Visitors Pass" is attached hereto and incorporated herein as **Exhibit 1**.

65.    That at all times relevant and material herein, Plaintiff asserts, alleges and maintains that on or about September 21, 2015@3:32 p.m., Plaintiff received a telephone call that was displayed on his CID as originating from UNAVAILABLE - OUT OF AREA (no calling name or telephone number was displayed, indicating the caller intentionally *blocked* its calling number to avoid identification).

---

[18]Because Plaintiff approved this callback to further identify the caller[s], Plaintiff is not making any claims pertaining to this specific call.

[19]Plaintiff maintains that these telemarketing calls are generated from the Philippines. That, to hide their *illegal activities* Defendants, and each of them, utilizes telemarketing businesses in the Philippines in Defendants' attempt to evade the laws and elude claims by consumers, such as Plaintiff, against Defendants' *illegal acts*..

-16-

66.    That at all times relevant and material herein, Plaintiff asserts, alleges and maintains that when Plaintiff answered the September 21, 2015 (3:32 p.m.) [inbound] telephone call a female (with an Asian accent[20]) said, in part, the following—

"Hello Paul, how are you...it's me Patricia, from (ahh) SAPPHIRE RESORTS..."

67.    That at all times relevant and material herein, Plaintiff asserts, alleges and maintains that after the caller "Patricia" identified herself and who she represented, Plaintiff made, in pertinent part, the following statements to "Patricia"—

"...I'm going to have to cancel...and I will advise you to put me on the DO-NOT-CALL list."[21, 22]

2.    Second *illegal, unauthorized, deceptive and unscrupulous* telemarketing and solicitation telephone call to Plaintiff when no existing business relationship existed between the Plaintiff and any Defendants named herein,[23] and/or without first obtaining Plaintiff's *written (or oral)* consent to receive any calls by, for, or on behalf of the Defendants herein named— and subsequent to Plaintiff telling Defendants' "Salesperson" to put Plaintiff' telephone number on the callers company' DO-NOT-CALL List:

Plaintiff repeats, realleges, and incorporates by reference paragraphs one through sixty-seven as aforementioned.

68.    That at all times relevant and material herein, Plaintiff asserts, alleges and maintains that on or about October 1, 2015@5:41 p.m., Defendants, and each of them (either individually or in concert with others, and either directly or indirectly)— were the causation of an *illegal, unauthorized, unscrupulous, deceptive and mendacious autodialed telemarketing and solicitation telephone call* to Plaintiff' wireless (**"cell" or "cellular"**) telephone number (702.893.1776), when no existing business relationship existed between Plaintiff and any Defendants named herein, or without first obtaining Plaintiff's *written (or oral)* consent to receive any *telemarketing and*

---

[20]Plaintiff maintains that these telemarketing calls are generated from the Philippines. That, to hide their *illegal activities* Defendants, and each of them, utilizes telemarketing businesses in the Philippines in Defendants' attempt to evade the laws and elude claims by consumers, such as Plaintiff, against Defendants' *illegal acts..*

[21]Patricia responded by stating "Sure, sure, I'll, I'll do that for you."

[22]*See* NRS 228.600.

[23]*id.*

-17-

1  *solicitation telephone calls* from Defendants without first obtaining Plaintiff's (*written or oral*)

2  consent to receive any calls from Defendants.

3      **69.**    That at all times relevant and material herein, Plaintiff asserts, alleges and maintains

4  that on or about October 1, 2015@5:41 p.m., Defendants, and each of them (either individually or

5  in concert with others, and either directly or indirectly)— were the causation of an *illegal,*

6  *unauthorized, unscrupulous, deceptive and mendacious autodialed telemarketing and solicitation*

7  *telephone call* to Plaintiff cellular telephone number (702.893.1776), utilizing one (1) or more

8  Automatic Telephone Dialing System[s] (**"ATDS"**) (whose definition include a *"predictive dialer"*)

9  to actuate the October 1, 2015 (5:41 p.m.) *illegal* telemarketing call.

10      **70.**    That at all times relevant and material herein, Plaintiff asserts, alleges and maintains

11  that the October 1, 2015 (5:41 p.m.) *illegal, unauthorized, unscrupulous, deceptive and mendacious*

12  *telemarketing and solicitation telephone call* to Plaintiff cellular telephone number (702.893.1776)

13  was placed, or caused to be placed at the direction, authorization and knowledge of, but not limited

14  to Defendants MULDOON and JONES.

15      **71.**    That at all times relevant and material herein, Plaintiff asserts, alleges and maintains

16  that on or about October 1, 2015@5:41 p.m., Defendants MULDOON and JONES, in collusion and

17  concert with each other and DOE Defendants, conspired with the employees, agents and

18  representatives of, by, for and on behalf of Defendants MULDOON, JONES, BQ RESORTS, LLC,

19  d/b/a STARPOINT RESORT GROUP, INC., a/k/a RESORT STAY INTERNATIONAL, LLC.,

20  a/d/b/a GETAWAYS RESORT MANAGEMENT, a/d/b/a GEOHOLIDAY CLUB, d/b/a SAPPHIRE

21  RESORTS, LLC, a/d/b/a SAPPHIRE RESORTS, GROUP, a/k/a STAY SAPPHIRE, a/k/a

22  SAPPHIRE to place and transmit, or cause to be placed and transmitted an *illegal, unauthorized,*

23  *unscrupulous, deceptive and mendacious telemarketing and solicitation telephone call* to Plaintiff

24  cellular telephone number (702.893.1776)when no existing business relationship existed between

25  Plaintiff and any Defendants named herein; after Plaintiff had requested he be placed on the

26  Defendants DO-NOT-Call list; and without first obtaining Plaintiff's *written (or oral)* consent to

27  receive any calls by, for, from, or on behalf of Defendants.

28                                **-18-**

72.     That at all times relevant and material herein, Plaintiff asserts, alleges and maintains that the October 1, 2015 (5:41 p.m.) telephone call to Plaintiff's cellular telephone number (702.893.1776) was displayed on Plaintiff's CID as originating from BREA CA, and the calling telephone number as 1.714.332.3088.

73.     That at all times relevant and material herein, Plaintiff asserts, alleges and maintains that when Plaintiff answered the September 20, 2015 (8:05 p.m.) incoming call, Plaintiff said "Hello" but all Plaintiff heard was "dead air"[24] (for [approximately] seven (7) seconds), then the call disconnected.

3.     Third *illegal, unauthorized, deceptive and unscrupulous* telemarketing and solicitation telephone call to Plaintiff when no existing business relationship existed between the Plaintiff and any Defendants named herein,[25] and/or without first obtaining Plaintiff's *written (or oral)* consent to receive any calls by, for, or on behalf of the Defendants herein named— and subsequent to Plaintiff telling Defendants' "Salesperson"[26] to put Plaintiff' telephone number on the callers company' DO-NOT-CALL List:

Plaintiff repeats, realleges, and incorporates by reference paragraphs one through seventy-three as aforementioned.

74.     That at all times relevant and material herein, Plaintiff asserts, alleges and maintains that on or about October 1, 2015@5:41 p.m., Defendants, and each of them (either individually or in concert with others, and either directly or indirectly)— were the causation of an *illegal, unauthorized, unscrupulous, deceptive and mendacious autodialed telemarketing and solicitation telephone call* to Plaintiff wireless (**"cell" or "cellular"**) telephone number (702.893.1776),when no existing business relationship existed between Plaintiff and any Defendants named herein; after Plaintiff had requested he be placed on the Defendants DO-NOT-Call list; and without first obtaining Plaintiff's *written (or oral)* consent to receive any calls by, for, from, or on behalf of Defendants.

---

[24]A "dead air" or abandoned call will occur if a telemarketing representative is not available when the call is answered by the consumer. Generally, companies allow sufficient time between calls for a representative to be available; however, if the telemarketing representative is on another line longer than expected, the result is "dead air." An abandoned call is a call that is not answered by a telemarketing representative within two (2) seconds.

[25]*id.*

[26]*See n.15, supra.*

75. That at all times relevant and material herein, Plaintiff asserts, alleges and maintains that on or about October 1, 2015@5:41 p.m., Defendants, and each of them (either individually or in concert with others, and either directly or indirectly)— were the causation of an *illegal, unauthorized, unscrupulous, deceptive and mendacious autodialed telemarketing and solicitation telephone call* to Plaintiff cellular telephone number (702.893.1776), utilizing one (1) or more Automatic Telephone Dialing System[s] **("ATDS"**[27]) (whose definition include a "*predictive dialer*") to actuate the October 1, 2015 (5:41 p.m.) *illegal* telemarketing call.

76. That at all times relevant and material herein, Plaintiff asserts, alleges and maintains that the October 1, 2015 (5:41 p.m.) *illegal, unauthorized, unscrupulous, deceptive and mendacious telemarketing and solicitation telephone call* to Plaintiff cell phone telephone number (702.893.1776) were placed, or caused to be placed at the direction, authorization and knowledge of Defendants MULDOON and JONES.

77. That at all times relevant and material herein, Plaintiff asserts, alleges and maintains that on or about October 1, 2015@5:41 p.m., Defendants MULDOON and JONES, in collusion and concert with each other and DOE Defendants, conspired with the employees, agents or representatives of, by, for and on behalf of Defendants MULDOON and JONES to place and transmit, or cause to be placed and transmitted an *illegal, unauthorized, unscrupulous, deceptive and mendacious telemarketing and solicitation telephone call* to Plaintiff cellular telephone number (702.893.1776)when no existing business relationship existed between Plaintiff and any Defendants named herein; after Plaintiff had requested he be placed on the Defendants DO-NOT-Call list; and without first obtaining Plaintiff's *written (or oral)* consent to receive any calls by, for, from, or on behalf of Defendants.

78. That at all times relevant and material herein, Plaintiff asserts, alleges and maintains that the October 1, 2015 (5:41 p.m.) telephone call to Plaintiff's cellular telephone number (702.893.1776) was displayed on Plaintiff's CID as originating from BREA CA, and the calling telephone number as 1.714.332.3088.

---

[27]*See n's. 13 & 14, supra.*

-20-

79.    That at all times relevant and material herein, Plaintiff asserts, alleges and maintains that when Plaintiff answered the September 20, 2015 (8:05 p.m,) incoming call, Plaintiff said "Hello" but all Plaintiff heard was "dead air" (for [approximately] seven (7) seconds), then the call disconnected.[28]

4.    **Fourth *illegal, unauthorized, deceptive and unscrupulous* telemarketing and solicitation telephone call to Plaintiff when no existing business relationship existed between the Plaintiff and any Defendants named herein,[29] and/or without first obtaining Plaintiff's *written (or oral)* consent to receive any calls by, for, or on behalf of the Defendants herein named— and subsequent to Plaintiff telling Defendants' "Salesperson"[30] to put Plaintiff' telephone number on the callers company' DO-NOT-CALL List:**

Plaintiff repeats, realleges, and incorporates by reference paragraphs one through seventy-nine as aforementioned.

80.    That at all times relevant and material herein, Plaintiff asserts, alleges and maintains that on or about October 1, 2015@6:55 p.m., Defendants, and each of them (either individually or in concert with others, and either directly or indirectly)— were the causation of an *illegal, unauthorized, unscrupulous, deceptive and mendacious autodialed telemarketing and solicitation telephone call* to Plaintiff' cellular telephone number (702.893.1776),when no existing business relationship existed between Plaintiff and any Defendants named herein; after Plaintiff had requested he be placed on the Defendants DO-NOT-Call list; and without first obtaining Plaintiff's *written (or oral)* consent to receive any calls by, for, from, or on behalf of Defendants.

81.    That at all times relevant and material herein, Plaintiff asserts, alleges and maintains that on or about October 1, 2015@6:55 p.m., Defendants, and each of them (either individually or in concert with others, and either directly or indirectly)— were the causation of an *illegal, unauthorized, unscrupulous, deceptive and mendacious autodialed telemarketing and solicitation telephone call* to Plaintiff' cellular telephone number (702.893.1776), utilizing one (1) or more ATDS (whose definition include a *"predictive dialer"*) to actuate the October 1, 2015 (6:55 p.m.) *illegal* telemarketing call.

---

[28]*See n. 24, supra.*

[29]*id.*

[30]*See n.15, supra.*

82.    That at all times relevant and material herein, Plaintiff asserts, alleges and maintains that the October 1, 2015 (6:55 p.m.) *illegal, unauthorized, unscrupulous, deceptive and mendacious telemarketing and solicitation telephone call* to Plaintiff' cell phone telephone number (702.893.1776) was placed, or caused to be placed at the direction, authorization and knowledge of Defendants MULDOON and JONES.

83.    That at all times relevant and material herein, Plaintiff asserts, alleges and maintains that on or about October 1, 2015@6:55 p.m., Defendants MULDOON and JONES, in collusion and concert with each other and DOE Defendants, conspired with the employees, agents or representatives of, by, for and on behalf of Defendants MULDOON, JONES, BQ RESORTS, LLC, d/b/a STARPOINT RESORT GROUP, INC., a/k/a RESORT STAY INTERNATIONAL, LLC., a/d/b/a GETAWAYS RESORT MANAGEMENT, a/d/b/a GEOHOLIDAY CLUB, d/b/a SAPPHIRE RESORTS, LLC, a/d/b/a SAPPHIRE RESORTS, GROUP, a/k/a STAY SAPPHIRE, a/k/a SAPPHIRE to place and transmit, or cause to be placed and transmitted an *illegal, unauthorized, unscrupulous, deceptive and mendacious telemarketing and solicitation telephone call* to Plaintiff' cellular telephone number (702.893.1776)when no existing business relationship existed between Plaintiff and any Defendants named herein; after Plaintiff had requested he be placed on the Defendants DO-NOT-Call list; and without first obtaining Plaintiff's *written (or oral)* consent to receive any calls by, for, from, or on behalf of Defendants.

84.    That at all times relevant and material herein, Plaintiff asserts, alleges and maintains that the October 1, 2015 (6:55 p.m.) telephone call to Plaintiff's cellular telephone number (702.893.1776) was displayed on Plaintiff's CID as originating from BREA CA, and the calling telephone number as 1.714.332.3088.[31]

85.    That at all times relevant and material herein, Plaintiff asserts, alleges and maintains that when Plaintiff answered the October 1, 2015 (6:55 p.m.) incoming call, Plaintiff said "Hello" (five (5) times) but all Plaintiff heard were two (2) undistinguishable words then "dead air" (for [approximately] nineteen (19) seconds), then the call disconnected.

---

[31] The information displayed on Plaintiff' CID is identical to the "dead air" call Plaintiff received on September 20, 2015@8:05 p.m. *See* #'s 76-81, *supra*.

86.     That at all times relevant and material herein, Plaintiff asserts, alleges and maintains that immediately following the "dead air" October 1, 2015 (6:55 p.m.) telephone call, Plaintiff placed a outbound call to the calling number 1.714.332.3088. That when Plaintiff's outbound call was answered, Plaintiff listened to a pre-recorded message that stated, in part, the following—

> "Thank you for calling our reservations center. Currently we are either on another call or our offices are closed for the day..."

5.     **Fifth *illegal, unauthorized, deceptive and unscrupulous* telemarketing and solicitation telephone call to Plaintiff when no existing business relationship existed between the Plaintiff and any Defendants named herein,[32] and/or without first obtaining Plaintiff's *written (or oral)* consent to receive any calls by, for, or on behalf of the Defendants herein named— and subsequent to Plaintiff telling Defendants' "Salesperson"[33] to put Plaintiff' telephone number on the callers company' DO-NOT-CALL List:**

Plaintiff repeats, realleges, and incorporates by reference paragraphs one through eighty-six as aforementioned.

87.     That at all times relevant and material herein, Plaintiff asserts, alleges and maintains that on or about October 1, 2015@7:00 p.m., Defendants, and each of them (either individually or in concert with others, and either directly or indirectly)— were the causation of an *illegal, unauthorized, unscrupulous, deceptive and mendacious autodialed telemarketing and solicitation telephone call* to Plaintiff' cellular telephone number (702.893.1776),when no existing business relationship existed between Plaintiff and any Defendants named herein; after Plaintiff had requested he be placed on the Defendants DO-NOT-Call list; and without first obtaining Plaintiff's *written (or oral)* consent to receive any calls by, for, from, or on behalf of Defendants.

88.     That at all times relevant and material herein, Plaintiff asserts, alleges and maintains that on or about October 1, 2015@7:00 p.m., Defendants, and each of them (either individually or in concert with others, and either directly or indirectly)— were the causation of an *illegal, unauthorized, unscrupulous, deceptive and mendacious autodialed telemarketing and solicitation telephone call* to Plaintiff' cellular telephone number (702.893.1776), utilizing one (1) or more

---

[32]*id.*

[33]*See n.15, supra.*

-23-

1   ATDS (whose definition include a *predictive dialer*) to actuate the October 1, 2015 (7:00 p.m.)

2   *illegal* telemarketing call.

3       **89.**    That at all times relevant and material herein, Plaintiff asserts, alleges and maintains

4   that the October 1, 2015 (7:00 p.m.) *illegal, unauthorized, unscrupulous, deceptive and mendacious*

5   *telemarketing and solicitation telephone call* to Plaintiff' cell phone telephone number

6   (702.893.1776) was placed, or caused to be placed at the direction, authorization and knowledge of

7   Defendants MULDOON and JONES.

8       **90.**    That at all times relevant and material herein, Plaintiff asserts, alleges and maintains

9   that on or about October 1, 2015@7:00 p.m., Defendants MULDOON and JONES, in collusion and

10   concert with each other and DOE Defendants, conspired with the employees, agents or

11   representatives of, by, for and on behalf of Defendants MULDOON, JONES, BQ RESORTS, LLC,

12   d/b/a STARPOINT RESORT GROUP, INC., a/k/a RESORT STAY INTERNATIONAL, LLC.,

13   a/d/b/a GETAWAYS RESORT MANAGEMENT, a/d/b/a GEOHOLIDAY CLUB, d/b/a SAPPHIRE

14   RESORTS, LLC, a/d/b/a SAPPHIRE RESORTS, GROUP, a/k/a STAY SAPPHIRE, a/k/a

15   SAPPHIRE to place and transmit, or cause to be placed and transmitted an *illegal, unauthorized,*

16   *unscrupulous, deceptive and mendacious telemarketing and solicitation telephone call* to Plaintiff'

17   cellular telephone number (702.893.1776)when no existing business relationship existed between

18   Plaintiff and any Defendants named herein; after Plaintiff had requested he be placed on the

19   Defendants DO-NOT-Call list; and without first obtaining Plaintiff's *written (or oral)* consent to

20   receive any calls by, for, from, or on behalf of Defendants.

21       **91.**    That at all times relevant and material herein, Plaintiff asserts, alleges and maintains

22   that the October 1, 2015 (7:00 p.m.) telephone call to Plaintiff's cellular telephone number

23   (702.893.1776) was displayed on Plaintiff's CID as originating from BREA CA, and the calling

24   telephone number as 1.714.332.3088.[34]

25

26   ───────────────

27   [34]The information displayed on Plaintiff' CID is identical to the "dead air" call Plaintiff received on
September 20, 2015@8:05 p.m., & October 1@6:55 p.m., *supra*.

28

92.     That at all times relevant and material herein, Plaintiff asserts, alleges and maintains that when Plaintiff answered the October 1, 2015 (7:00 p.m.) incoming call, Plaintiff said "Hello" but all Plaintiff heard was "dead air" (for [approximately] four (4) seconds), then the call disconnected.

93.     That at all times relevant and material herein, Plaintiff asserts, alleges and maintains that immediately following the "dead air" October 1, 2015 (7:00 p.m.) telephone call, Plaintiff placed a outbound call to the calling number 1.714.332.3088. That when Plaintiff' outbound call was answered, Plaintiff listened to a pre-recorded message that stated, in part, the following—

"Thank you for calling our reservations center. Currently we are either on another call or our offices are closed for the day..."

6.     **Sixth *illegal, unauthorized, deceptive and unscrupulous* telemarketing and solicitation telephone call to Plaintiff when no existing business relationship existed between the Plaintiff and any Defendants named herein,[35] and/or without first obtaining Plaintiff's *written (or oral)* consent to receive any calls by, for, or on behalf of the Defendants herein named— and subsequent to Plaintiff telling Defendants' "Salesperson"[36] to put Plaintiff' telephone number on the callers company' DO-NOT-CALL List:**

Plaintiff repeats, realleges, and incorporates by reference paragraphs one through ninety-three as aforementioned.

94.     That at all times relevant and material herein, Plaintiff asserts, alleges and maintains that on or about October 1, 2015@7:43 p.m., Defendants, and each of them (either individually or in concert with others, and either directly or indirectly)— were the causation of an *illegal, unauthorized, unscrupulous, deceptive and mendacious autodialed telemarketing and solicitation telephone call* to Plaintiff' cellular telephone number (702.893.1776),when no existing business relationship existed between Plaintiff and any Defendants named herein; after Plaintiff had requested he be placed on the Defendants DO-NOT-Call list; and without first obtaining Plaintiff's *written (or oral)* consent to receive any calls by, for, from, or on behalf of Defendants.

[35]*id.*

[36]*See n.15, supra.*

-25-

95.    That at all times relevant and material herein, Plaintiff asserts, alleges and maintains that on or about October 1, 2015@7:43 p.m., Defendants, and each of them (either individually or in concert with others, and either directly or indirectly)— were the causation of an *illegal, unauthorized, unscrupulous, deceptive and mendacious autodialed telemarketing and solicitation telephone call* to Plaintiff' cellular telephone number (702.893.1776), utilizing one (1) or more ATDS (whose definition include a *"predictive dialer"*) to actuate the October 1, 2015 (7:43 p.m.) *illegal* telemarketing call.

96.    That at all times relevant and material herein, Plaintiff asserts, alleges and maintains that the October 1, 2015 (7:43 p.m.) *illegal, unauthorized, unscrupulous, deceptive and mendacious telemarketing and solicitation telephone call* to Plaintiff' cell phone telephone number (702.893.1776) was placed, or caused to be placed at the direction, authorization and knowledge of Defendants MULDOON and JONES.

97.    That at all times relevant and material herein, Plaintiff asserts, alleges and maintains that on or about October 1, 2015@7:43 p.m., Defendants MULDOON and JONES, in collusion and concert with each other and DOE Defendants, conspired with the employees, agents or representatives of, by, for and on behalf of Defendants MULDOON, JONES, BQ RESORTS, LLC, d/b/a STARPOINT RESORT GROUP, INC., a/k/a RESORT STAY INTERNATIONAL, LLC., a/d/b/a GETAWAYS RESORT MANAGEMENT, a/d/b/a GEOHOLIDAY CLUB, d/b/a SAPPHIRE RESORTS, LLC, a/d/b/a SAPPHIRE RESORTS, GROUP, a/k/a STAY SAPPHIRE, a/k/a SAPPHIRE to place and transmit, or cause to be placed and transmitted an *illegal, unauthorized, unscrupulous, deceptive and mendacious telemarketing and solicitation telephone call* to Plaintiff' cellular telephone number (702.893.1776) without first obtaining Plaintiff's *written (or oral)* consent to receive any calls from Defendants.

. . .

. . .

. . .

-26-

**98.** That at all times relevant and material herein, Plaintiff asserts, alleges and maintains that the October 1, 2015 (7:43 p.m.) telephone call to Plaintiff's cellular telephone number (702.893.1776) was displayed on Plaintiff's CID as originating from BREA CA, and the calling telephone number as 1.714.332.3088.[37]

**99.** That at all times relevant and material herein, Plaintiff asserts, alleges and maintains that on or about October 1, 2015@7:43 p.m., Plaintiff received an *illegal, unauthorized, unscrupulous, deceptive and mendacious telemarketing and solicitation telephone call* to Plaintiff's wireless telephone number (702.893.1776), and when Plaintiff answered the incoming telephone call, Plaintiff said "Hello" and a female (with an Asian accent[38]) said, in part, the following—

> "...My name is (unintelligible) and I'm one of the managers here in SAPPHIRE RESORTS...I'm calling on behalf of SAPPHIRE RESORTS...We are right here at the Las Vegas Boulevard...The reason why I called you today is because we will be inviting you to be one of our guests here in our open house...our company SAPPHIRE RESORTS we are one of the largest travel companies...we need publicity here in the area. OK. Because we have an office located in California...We are going to showcase the amenities of our company (unintelligible)..."

— (Plaintiff was [then] handed over to a "Reservations Manager"). A conversation took place, however the "Reservation Manager" was difficult to understand. Nevertheless, after asking several questions and advising that Plaintiff will have to bring a credit card with him for identification, the "Reservations Manager" emailed a reservation conformation.

**100.** That at all times relevant and material herein, Plaintiff asserts, alleges and maintains that on or about October 1, 2015@7:57 p.m., a call was placed to Plaintiff' cellular telephone number (702.893.1776), Plaintiff's CID displayed the inbound call as originating from BREA CA, and the calling telephone number as 1.714.332.3088.[39]

---

[37]The information displayed on Plaintiff' CID is identical to the "dead air" calls Plaintiff received on September 20, 2015@8:05 p.m., October 1@6:55 p.m. & October 1, 7:00 p.m., *supra.*

[38]Plaintiff maintains that these telemarketing calls are generated from the Philippines. That, to hide their *illegal activities* Defendants, and each of them, utilizes telemarketing businesses in the Philippines in their attempt to evade the laws and elude claims by consumers such as Plaintiff.

[39]The information displayed on Plaintiff' CID is identical to the "dead air" calls Plaintiff received on September 20, 2015@8:05 p.m., October 1@6:55 p.m., October 1, 7:00 p.m. & October 1,

(continued...)

1    **101.**    That at all times relevant and material herein, Plaintiff asserts, alleges and maintains

2    that when Plaintiff answered the October 1, 2015 (7:57 p.m.) incoming call, Plaintiff said "Hello"

3    five (5) times, but all Plaintiff heard was "dead air" (for [approximately] 11 (11) seconds), then the

4    call disconnected.

5    **102.**    That at all times relevant and material herein, Plaintiff asserts, alleges and maintains

6    that when Plaintiff answered the October 1, 2015 (7:57 p.m.) incoming call, and after Plaintiff said

7    "Hello, a male voice (with an Asian accent[40]), identified himself as "Matt, one of the conformation

8    managers for SAPPHIRE RESORTS...".

9    **103.**    That at all times relevant and material herein, Plaintiff asserts, alleges and maintains

10    that after the caller identified himself as "Matt, one of the conformation managers for SAPPHIRE

11    RESORTS..."[41] the following conversation, in-part, went as followed—

12        Matt:        This number that we're calling right now, this is your cell phone number?

13        Plaintiff:    Which number did you call?

14        Matt:        893.1776

15        Plaintiff:    Yeh. That's my cell.

16    **104.**    That at all times relevant and material herein, Plaintiff asserts, alleges and maintains

17    that on or about October 2, 2015@5:19 p.m., a call was placed to Plaintiff' landline telephone

18    number (702.341.1776), Plaintiff's CID displayed the inbound call as originating from HONEY

19    ARVESU, and the telephone number 1.562.363.6406.

20    . . .

21    . . .

22

23    [39](...continued)
    2016@7:43 p.m., *supra.*

24    [40]Plaintiff maintains that these telemarketing calls are generated from the Philippines. That, to hide
    their *illegal activities* Defendants, and each of them, utilizes telemarketing businesses in the

25    Philippines in their attempt to evade the laws and elude claims by consumers such as Plaintiff.

26    [41]On October 1, 2015@8:20 p.m., Plaintiff received SAPPHIRE RESORTS LETTER OF
    GUARANTEE! and a Pass. A copy of each is attached hereto and incorporated herein as **Exhibit**

27    **2.**

28                                -28-

105.   That at all times relevant and material herein, Plaintiff asserts, alleges and maintains that when Plaintiff answered the October 2, 2015 (5:19 p.m.) telephone call and said "Hello," a female voice (with an Asian accent[42]) said "...this is Sam...everything is all set for tomorrow, right? Plaintiff advised the caller ("Sam") that he will not be attending the sales presentation.

106.   That at all times relevant and material herein, Plaintiff asserts, alleges and maintains that during the October 2, 2015 (5:19 p.m.) conversation with SAPPHIRE RESORTS' representative "Sam," Plaintiff further advised Sam that he had received calls prior and had requested to be put on the companies DO-NOT-CALL list - that Plaintiff' telephone numbers were on the National DO-NOT-CALL database. When Plaintiff asked if the caller's company had a DO-NOT-CALL Policy, Sam acknowledged that there is a policy. Plaintiff requested a copy of that policy, and was told it would be emailed to him. As of the February 19, 2016, no DO-NOT-CALL Policy has been received by Plaintiff from Defendants.

7.   Seventh *illegal, unauthorized, deceptive and unscrupulous* telemarketing and solicitation telephone call to Plaintiff when no existing business relationship existed between the Plaintiff and any Defendants named herein,[43] and/or without first obtaining Plaintiff's *written (or oral)* consent to receive any calls by, for, or on behalf of the Defendants herein named— and subsequent to Plaintiff telling Defendants' "Salesperson"[44] to put Plaintiff' telephone number on the callers company' DO-NOT-CALL List:

Plaintiff repeats, realleges, and incorporates by reference paragraphs one through one hundred and six as aforementioned.

107.   That at all times relevant and material herein, Plaintiff asserts, alleges and maintains that on or about October 2, 2015@7:37 p.m., Defendants, and each of them (either individually or in concert with others, and either directly or indirectly)— were the causation of an *illegal, unauthorized, unscrupulous, deceptive and mendacious autodialed telemarketing and solicitation telephone call* to Plaintiff' cellular telephone number (702.893.1776),when no existing business

---

[42]Plaintiff maintains that these telemarketing calls are generated from the Philippines. That, to hide their *illegal activities* Defendants, and each of them, utilizes telemarketing businesses in the Philippines in their attempt to evade the laws and elude claims by consumers such as Plaintiff.
[43]*id.*
[44]*See n.15, supra.*

-29-

1   relationship existed between Plaintiff and any Defendants named herein; after Plaintiff had requested

2   he be placed on the Defendants DO-NOT-Call list; and without first obtaining Plaintiff's *written (or*

3   *oral)* consent to receive any calls by, for, from, or on behalf of Defendants.

4        **108.**    That at all times relevant and material herein, Plaintiff asserts, alleges and maintains

5   that on or about October 2, 2015@7:37 p.m., Defendants, and each of them (either individually or

6   in concert with others, and either directly or indirectly)— were the causation of an *illegal,*

7   *unauthorized, unscrupulous, deceptive and mendacious autodialed telemarketing and solicitation*

8   *telephone call* to Plaintiff' cellular telephone number (702.893.1776), utilizing one (1) or more

9   ATDS (whose definition include a *"predictive dialer"*) to actuate the October 2, 2015 (7:37 p.m.)

10   *illegal* telemarketing call.

11        **109.**    That at all times relevant and material herein, Plaintiff asserts, alleges and maintains

12   that the October 2, 2015 (7:37 p.m.) *illegal, unauthorized, unscrupulous, deceptive and mendacious*

13   *telemarketing and solicitation telephone call* to Plaintiff' cell phone telephone number

14   (702.893.1776) was placed, or caused to be placed at the direction, authorization and knowledge of

15   Defendants MULDOON and JONES.

16        **110.**    That at all times relevant and material herein, Plaintiff asserts, alleges and maintains

17   that on or about October 2, 2015@7:37 p.m., Defendants MULDOON and JONES, in collusion and

18   concert with each other, conspired with the employees, agents or representatives of, by, for and on

19   behalf of Defendants MULDOON, JONES, BQ RESORTS, LLC, d/b/a STARPOINT RESORT

20   GROUP, INC., a/k/a RESORT STAY INTERNATIONAL, LLC., a/d/b/a GETAWAYS RESORT

21   MANAGEMENT, a/d/b/a GEOHOLIDAY CLUB, d/b/a SAPPHIRE RESORTS, LLC, a/d/b/a

22   SAPPHIRE RESORTS, GROUP, a/k/a STAY SAPPHIRE, a/k/a SAPPHIRE to place and transmit,

23   or cause to be placed and transmitted an *illegal, unauthorized, unscrupulous, deceptive and*

24   *mendacious telemarketing and solicitation telephone call* to Plaintiff' cellular telephone number

25   (702.893.1776) when no existing business relationship existed between Plaintiff and any Defendants

26   named herein; after Plaintiff had requested he be placed on the Defendants DO-NOT-Call list; and

27   without first obtaining Plaintiff's *written (or oral)* consent to receive any calls by, for, from, or on

28   behalf of Defendants.

111.    That at all times relevant and material herein, Plaintiff asserts, alleges and maintains that the October 2, 2015 (7:37 p.m.) telephone call to Plaintiff's cellular telephone number (702.893.1776) was displayed on Plaintiff's CID as originating from BREA CA, and the calling telephone number as 1.714.332.3088.[45]

112.    That at all times relevant and material herein, Plaintiff asserts, alleges and maintains that on or about October 2, 2015@7:37 p.m., Plaintiff received an *illegal, unauthorized, unscrupulous, deceptive and mendacious telemarketing and solicitation telephone call* to Plaintiff's wireless telephone number (702.893.1776), and when Plaintiff answered the incoming telephone call, Plaintiff said "Hello" and a female (with an Asian accent[46]) said, in part, the following—

> "...this is Andrea Garcia calling from SAPPHIRE RESORTS...(Plaintiff advised the caller that the conversation was recorded)...you have been pre-selected to be one of our VIP guests in our open house celebration...attend and finish our 90 minute open house celebration which we will showcase to you the amenity services in our membership program...We are located here on Las Vegas Boulevard...I have my reservations manager here...((Male) Reservations Manager came online(had Asian accent))...Just to give you a quick-recap to what's going on...the bottom line of the tour is we would like to introduce you to our company, that would be SAPPHIRE RESORTS, we're actually the newest travel club here in Las Vegas...(Reservations Manager put Plaintiff on hold)...Paul, I actually check out on our database...You told my associate earlier that...to put your telephone number on the DO-NOT-CALL list...I actually updated the number...you will never be called anymore..." then the Reservations Manager disconnected the call.

. . .

. . .

. . .

---

[45]The information displayed on Plaintiff' CID is identical to the calls Plaintiff received on September 20, 2015@8:05 p.m., October 1@6:55 p.m., October 1, 7:00 p.m., October 1, 7:43 p.m. October 1, 7:57 p.m. and October 1, 7:58 p.m., *supra*.

[46]Plaintiff maintains that these telemarketing calls are generated from the Philippines. That, to hide their *illegal activities* Defendants, and each of them, utilizes telemarketing businesses in the Philippines in their attempt to evade the laws and elude claims by consumers such as Plaintiff.

8.   **Eighth** *illegal, unauthorized, deceptive and unscrupulous* **telemarketing and solicitation telephone call to Plaintiff when no existing business relationship existed between the Plaintiff and any Defendants named herein,**[47] **and/or without first obtaining Plaintiff's** *written (or oral)* **consent to receive any calls by, for, or on behalf of the Defendants herein named— and subsequent to Plaintiff telling Defendants' "Salesperson"**[48] **to put Plaintiff' telephone number on the callers company' DO-NOT-CALL List:**

Plaintiff repeats, realleges, and incorporates by reference paragraphs one through one hundred and twelve as aforementioned.

113.   That at all times relevant and material herein, Plaintiff asserts, alleges and maintains that on or about November 18, 2015@2:54 p.m., Defendants, and each of them (either individually or in concert with others, and either directly or indirectly)— were the causation of an *illegal, unauthorized, unscrupulous, deceptive and mendacious autodialed telemarketing and solicitation telephone call* to Plaintiff' landline telephone number (702.341.1776),when no existing business relationship existed between Plaintiff and any Defendants named herein; after Plaintiff had requested he be placed on the Defendants DO-NOT-Call list; and without first obtaining Plaintiff's *written (or oral)* consent to receive any calls by, for, from, or on behalf of Defendants.

114.   That at all times relevant and material herein, Plaintiff asserts, alleges and maintains that on or about November 18, 2015@2:54 p.m., Defendants, and each of them (either individually or in concert with others, and either directly or indirectly)— were the causation of an *illegal, unauthorized, unscrupulous, deceptive and mendacious autodialed telemarketing and solicitation telephone call* to Plaintiff' landline telephone number (702.341.1776), utilizing one (1) or more ATDS (whose definition include a *"predictive dialer"*) to actuate the November 18, 2015 (2:54 p.m.) *illegal* telemarketing call.

. . .

. . .

. . .

---

[47]*id.*

[48]*See n.15, supra.*

-32-

115. That at all times relevant and material herein, Plaintiff asserts, alleges and maintains that the November 18, 2015 (2:54 p.m.) *illegal, unauthorized, unscrupulous, deceptive and mendacious telemarketing and solicitation telephone call* to Plaintiff' landline telephone number (702.341.1776) was placed, or caused to be placed at the direction, authorization and knowledge of Defendants MULDOON and JONES.

116. That at all times relevant and material herein, Plaintiff asserts, alleges and maintains that on or about November 18, 2015@2:54 p.m., Defendants MULDOON and JONES, in collusion and concert with each other and DOE Defendants, conspired with the employees, agents or representatives of, by, for and on behalf of Defendants MULDOON, JONES, BQ RESORTS, LLC, d/b/a STARPOINT RESORT GROUP, INC., a/k/a RESORT STAY INTERNATIONAL, LLC., a/d/b/a GETAWAYS RESORT MANAGEMENT, a/d/b/a GEOHOLIDAY CLUB, d/b/a SAPPHIRE RESORTS, LLC, a/d/b/a SAPPHIRE RESORTS, GROUP, a/k/a STAY SAPPHIRE, a/k/a SAPPHIRE to place and transmit, or cause to be placed and transmitted an *illegal, unauthorized, unscrupulous, deceptive and mendacious telemarketing and solicitation telephone call* to Plaintiff' landline telephone number (702.341.1776) when no existing business relationship existed between Plaintiff and any Defendants named herein; after Plaintiff had requested he be placed on the Defendants DO-NOT-Call list; and without first obtaining Plaintiff's *written (or oral)* consent to receive any calls by, for, from, or on behalf of Defendants.

117. That at all times relevant and material herein, Plaintiff asserts, alleges and maintains that the November 18, 2015 (2:54 p.m.) telephone call to Plaintiff's landline telephone number (702.341.1776) was displayed on Plaintiff's CID as originating from UNAVAILABLE - OUT OF AREA.

. . .

. . .

. . .

-33-

118.    That at all times relevant and material herein, Plaintiff asserts, alleges and maintains that on or about November 18, 2015@2:54 p.m., Plaintiff received an *illegal, unauthorized, unscrupulous, deceptive and mendacious telemarketing and solicitation telephone call* to Plaintiff's landline telephone number (702.341.1776), and when Plaintiff answered the incoming telephone call, Plaintiff said "Hello" and a male (with an Asian accent[49]) said, in part, the following—

> "...my name is Kevin, I'm calling from SAPPHIRE RESORTS, here in Las Vegas...(Plaintiff advised the caller that the conversation is recorded)...you have been lucky selected by our company to be one of our VIP guests...we're having an open house celebration of our brand new office here in Vegas...I have here my...manager beside me...he will be the one to reserve your travel package...This is Darwin, one of the...officers from SAPPHIRE RESORTS here on South Las Vegas Boulevard...attend and finish our presentation for only 90 minutes and allow us to showcase (Unintelligible)...I want to send you a black & white copy regarding the gift...and invitation so you have something to read...(Plaintiff provided his email address)...I'll go ahead and give you the address...so please write it down. The company is called SAPPHIRE RESORTS...3700 South Las Vegas Boulevard...If you have any questions...our toll-free number is 1.888.296.1429...[50]

119.    That at all times relevant and material herein, Plaintiff asserts, alleges and maintains that on or about November 18, 2015@3:16 p.m., Plaintiff received a telephone call to Plaintiff's landline telephone number (702.341.1776), and when Plaintiff answered the incoming telephone call, Plaintiff said "Hello" and a female (with an Asian accent[51]) said, in part, the following—

> "...I'm calling for Paul Edwards...(Plaintiff advised the caller that the conversation is recorded)...My name is Christina, I'm the conformation officer here at SAPPHIRE RESORTS...Is this the first time you will be attending the presentation here in SAPPHIRE RESORTS or GEOHOLIDAY for the past 12 months...? Kindly bring also at least 1 major credit card...make sure that will be a regular credit card...To be honest with you, we are actually requiring that you bring with you a major credit card...during the 90 minute presentation (unintelligible)...be a member of our company...that is the only time your going to use your credit card...that will be the method of payment here if you want to be a member...If you don't like the offer you can decline it...if your going to buy or not the vacation package will still be yours..."

---

[49]Plaintiff maintains that these telemarketing calls are generated from the Philippines. That, to hide their *illegal activities* Defendants, and each of them, utilizes telemarketing businesses in the Philippines in their attempt to evade the laws and elude claims by consumers such as Plaintiff.

[50]A copy of the Visitors Pass and Conformation are attached hereto and incorporated herein as **Exhibit 3.**

[51]Plaintiff maintains that these telemarketing calls are generated from the Philippines. That, to hide their *illegal activities* Defendants, and each of them, utilizes telemarketing businesses in the Philippines in their attempt to evade the laws and elude claims by consumers such as Plaintiff.

9.      Ninth *illegal, unauthorized, deceptive and unscrupulous* telemarketing and solicitation telephone call to Plaintiff when no existing business relationship existed between the Plaintiff and any Defendants named herein,[52] and/or without first obtaining Plaintiff's *written (or oral)* consent to receive any calls by, for, or on behalf of the Defendants herein named— and subsequent to Plaintiff telling Defendants' "Salesperson"[53] to put Plaintiff' telephone number on the callers company' DO-NOT-CALL List:

Plaintiff repeats, realleges, and incorporates by reference paragraphs one through one hundred and nineteen as aforementioned.

120.    That at all times relevant and material herein, Plaintiff asserts, alleges and maintains that on or about November 20, 2015@5:03 p.m., Defendants, and each of them (either individually or in concert with others, and either directly or indirectly)— were the causation of an *illegal, unauthorized, unscrupulous, deceptive and mendacious autodialed telemarketing and solicitation telephone call* to Plaintiff' landline telephone number (702.341.1776),when no existing business relationship existed between Plaintiff and any Defendants named herein; after Plaintiff had requested he be placed on the Defendants DO-NOT-Call list; and without first obtaining Plaintiff's *written (or oral)* consent to receive any calls by, for, from, or on behalf of Defendants.

121.    That at all times relevant and material herein, Plaintiff asserts, alleges and maintains that on or about November 20, 2015@5:03 p.m., Defendants, and each of them (either individually or in concert with others, and either directly or indirectly)— were the causation of an *illegal, unauthorized, unscrupulous, deceptive and mendacious autodialed telemarketing and solicitation telephone call* to Plaintiff' landline telephone number (702.341.1776), utilizing one (1) or more ATDS (whose definition include a "*predictive dialer*") to actuate the November 20, 2015 (5:03 p.m.) *illegal* telemarketing call.

. . .

. . .

. . .

[52]*id.*

[53]*See n.15, supra.*

-35-

122.    That at all times relevant and material herein, Plaintiff asserts, alleges and maintains that the November 20, 2015 (5:03 p.m.) *illegal, unauthorized, unscrupulous, deceptive and mendacious telemarketing and solicitation telephone call* to Plaintiff' landline telephone number (702.341.1776) was placed, or caused to be placed at the direction, authorization and knowledge of Defendants MULDOON and JONES.

123.    That at all times relevant and material herein, Plaintiff asserts, alleges and maintains that on or about November 20, 2015@5:03 p.m., Defendants MULDOON and JONES, in collusion and concert with each other and DOE Defendants, conspired with the employees, agents and representatives of, by, for and on behalf of Defendants MULDOON, JONES, BQ RESORTS, LLC, d/b/a STARPOINT RESORT GROUP, INC., a/k/a RESORT STAY INTERNATIONAL, LLC., a/d/b/a GETAWAYS RESORT MANAGEMENT, a/d/b/a GEOHOLIDAY CLUB, d/b/a SAPPHIRE RESORTS, LLC, a/d/b/a SAPPHIRE RESORTS, GROUP, a/k/a STAY SAPPHIRE, a/k/a SAPPHIRE to place and transmit, or cause to be placed and transmitted an *illegal, unauthorized, unscrupulous, deceptive and mendacious telemarketing and solicitation telephone call* to Plaintiff' landline telephone number (702.341.1776) when no existing business relationship existed between Plaintiff and any Defendants named herein; after Plaintiff had requested he be placed on the Defendants DO-NOT-Call list; and without first obtaining Plaintiff's *written (or oral)* consent to receive any calls by, for, from, or on behalf of Defendants.

124.    That at all times relevant and material herein, Plaintiff asserts, alleges and maintains that the November 20, 2015 (5:03 p.m.) telephone call to Plaintiff's landline telephone number (702.341.1776) was displayed on Plaintiff's CID as originating from UNAVAILABLE - OUT OF AREA.

. . .

. . .

. . .

125.   That at all times relevant and material herein, Plaintiff asserts, alleges and maintains that on or about November 20, 2015@5:03 p.m., Plaintiff received an *illegal, unauthorized, unscrupulous, deceptive and mendacious telemarketing and solicitation telephone call* to Plaintiff's landline telephone number (702.341.1776), and when Plaintiff answered the incoming telephone call, Plaintiff said "Hello" and a female (with an Asian accent[54]) said, in part, the following—

> "Hi Paul, how are you doing...It's Barbara from SAPPHIRE RESORTS...(Plaintiff advised the caller the conversation is recorded)...Are we good to go tomorrow at 2 o'clock in the afternoon...?

| | |
|---|---|
| Plaintiff: | No we're not. This is about the fourth (4th) time I told somebody I'm supposed to be on a DO-NOT-CALL List. |
| Barbara: | Oh, sorry for the inconvenience. |
| Plaintiff: | Yeh. I also asked for the company's DO-NOT-CALL Policy. I'd like that copy of the Policy sent to my email address which you have. |
| Barbara: | Yes sir, I do understand that...We'll take not that you are on the DO-NOT-CALL List. |
| Plaintiff: | Yeh, but I told them before and I keep getting calls, and I also ask for a copy of the company's DO-NOT-CALL Policy and I'm still waiting for it. |
| Barbara: | Ah, you already told them before. I will take note of that one and I will remind my officer here. |
| Plaintiff: | ...Where are you located? Your not in Vegas. Where are you located. |
| Barbara: | ...We are located here in California... |
| Plaintiff: | And what company do you work for? |
| Barbara: | ...We are calling on behalf of SAPPHIRE... |
| Plaintiff: | ...I understand that. You work for a telemarketing company. What's the name of your company?... |
| Barbara: | (Put me on Hold) - Never came back online. |

. . .

. . .

---

[54]Plaintiff maintains that these telemarketing calls are generated from the Philippines. That, to hide their *illegal activities* Defendants, and each of them, utilizes telemarketing businesses in the Philippines in their attempt to evade the laws and elude claims by consumers such as Plaintiff.

-37-

1    **126.**    That at all times relevant and material herein, Plaintiff asserts, alleges and maintains

2    that on or about November 20, 2015@5:09 p.m., Plaintiff received a *telephone call* to Plaintiff's

3    landline telephone number (702.341.1776), and when Plaintiff answered the incoming telephone call,

4    Plaintiff said "Hello," "Hello," and a female (with an Asian accent[55]) said, in part, the following—

5    "Yes Paul, sorry...we were disconnected a while ago...I already talk to my
     manager...he wants to talk to you...I'm going to transfer the call to my
6    manager...(Plaintiff advised the caller the conversation is recorded)...(Manager) My
     name is James (last name unintelligible)...

7

8    | | | |
     |---|---|---|
     | Plaintiff: | I would really like to know the name of the company you work for. You're a telemarketing company. |

9    Plaintiff:    I would really like to know the name of the company you work for. You're
                   a telemarketing company.

9    James:    ...Yes. It's going to be Global Communications Incorporated.

10   Plaintiff:    Where are they located?

11   James:    We're actually based in Manila...

12   Plaintiff:    Where are you at?

13   James:    Where exactly in Makati City...

14   Plaintiff:    So your not here in the US.

15   James:    Some of the agents are actually in the US...

16   Plaintiff:    Does your company have an office here in the US?

17   James:    We actually have an office in US.

18   Plaintiff:    Can you tell me where.

19   James:    It's actually in California.

20   Plaintiff:    Can you give me an address, or a phone number?

21   James:    The phone number in California, hold on a quick second...(changed subject)...

22   Plaintiff:    I've asked at least 4 times to be put on a DO-NOT-CALL List and I've also
                   asked for the company's DO-NOT-CALL Policy. I keep getting phone calls
23                 and I haven't received a copy of the company's DO-NOT-CALL Policy.

24   James:    Ahh, OK.

25   _____

26   [55]Plaintiff maintains that these telemarketing calls are generated from the Philippines. That, to hide
     their *illegal activities* Defendants, and each of them, utilizes telemarketing businesses in the
27   Philippines in their attempt to evade the laws and elude claims by consumers such as Plaintiff.

28

| | | |
|---|---|---|
| 1 | Plaintiff: | ...You have my email address and I would also like to know who I can contact from your company in the United States. |
| 2 | James: | ...We are actually going to provide you with all the details... |
| 3 | Plaintiff: | ...All I'm asking for now is a copy of the company's DO-NOT-CALL Policy and a contact address and/or a phone number for your company in the United States... |
| 4 | | |
| 5 | James: | ...To be honest with you I'm so sad for what has happened... |
| 6 | Plaintiff: | ...All I would like is a copy of the DO-NOT-CALL Policy and a contact name and telephone number...for your company in the United States. |
| 7 | | |
| 8 | James: | ...I know what will happen next...Just last month I already experience that one with one of my agents...She actually called one of the guests on the DO-NOT-CALL List...We paid like $7,000.00... |
| 9 | | |

James disconnected the call.

**10.   Tenth *illegal, unauthorized, deceptive and unscrupulous* telemarketing and solicitation telephone call to Plaintiff when no existing business relationship existed between the Plaintiff and any Defendants named herein,[56] and/or without first obtaining Plaintiff's *written (or oral)* consent to receive any calls by, for, or on behalf of the Defendants herein named— and subsequent to Plaintiff telling Defendants' "Salesperson"[57] to put Plaintiff' telephone number on the callers company' DO-NOT-CALL List:**

Plaintiff repeats, realleges, and incorporates by reference paragraphs one through one hundred and twenty-six as aforementioned.

127.   That at all times relevant and material herein, Plaintiff asserts, alleges and maintains that on or about November 22, 2015@6:21 p.m., Defendants, and each of them (either individually or in concert with others, and either directly or indirectly)— were the causation of an *illegal, unauthorized, unscrupulous, deceptive and mendacious autodialed telemarketing and solicitation telephone call* to Plaintiff' landline telephone number (702.341.1776),when no existing business relationship existed between Plaintiff and any Defendants named herein; after Plaintiff had requested he be placed on the Defendants DO-NOT-Call list; and without first obtaining Plaintiff's *written (or oral)* consent to receive any calls by, for, from, or on behalf of Defendants.

---

[56]*id.*

[57]*See n.15, supra.*

128.   That at all times relevant and material herein, Plaintiff asserts, alleges and maintains that on or about November 22, 2015@6:21 p.m., Defendants, and each of them (either individually or in concert with others, and either directly or indirectly)— were the causation of an *illegal, unauthorized, unscrupulous, deceptive and mendacious autodialed telemarketing and solicitation telephone call* to Plaintiff landline telephone number (702.341.1776), utilizing one (1) or more ATDS (whose definition include a *"predictive dialer"*) to actuate the November 22, 2015 (6:21 p.m.) *illegal* telemarketing call.

129.   That at all times relevant and material herein, Plaintiff asserts, alleges and maintains that the November 22, 2015 (6:21 p.m.) *illegal, unauthorized, unscrupulous, deceptive and mendacious telemarketing and solicitation telephone call* to Plaintiff landline telephone number (702.341.1776) was placed, or caused to be placed at the direction, authorization and knowledge of Defendants MULDOON and JONES.

130.   That at all times relevant and material herein, Plaintiff asserts, alleges and maintains that on or about November 22, 2015@6:21 p.m., Defendants MULDOON and JONES, in collusion and concert with each other and DOE Defendants, conspired with the employees, agents and representatives of, by, for and on behalf of Defendants MULDOON, JONES, BQ RESORTS, LLC, d/b/a STARPOINT RESORT GROUP, INC., a/k/a RESORT STAY INTERNATIONAL, LLC., a/d/b/a GETAWAYS RESORT MANAGEMENT, a/d/b/a GEOHOLIDAY CLUB, d/b/a SAPPHIRE RESORTS, LLC, a/d/b/a SAPPHIRE RESORTS, GROUP, a/k/a STAY SAPPHIRE, a/k/a SAPPHIRE to place and transmit, or cause to be placed and transmitted an *illegal, unauthorized, unscrupulous, deceptive and mendacious telemarketing and solicitation telephone call* to Plaintiff landline telephone number (702.341.1776) when no existing business relationship existed between Plaintiff and any Defendants named herein; after Plaintiff had requested he be placed on the Defendants DO-NOT-Call list; and without first obtaining Plaintiff's *written (or oral)* consent to receive any calls by, for, from, or on behalf of Defendants.

. . .

. . .

-40-

1    **131.**    That at all times relevant and material herein, Plaintiff asserts, alleges and maintains

2    that the November 22, 2015 (6:21 p.m.) telephone call to Plaintiff's landline telephone number

3    (702.341.1776) was displayed on Plaintiff's CID as originating from SEATTLE WA and the

4    telephone number 1.206.777.1088.

5    **132.**    That at all times relevant and material herein, Plaintiff asserts, alleges and maintains

6    that on or about November 22, 2015@6:21 p.m., Plaintiff received an *illegal, unauthorized,*

7    *unscrupulous, deceptive and mendacious telemarketing and solicitation telephone call* to Plaintiff's

8    landline telephone number (702.341.1776), and when Plaintiff answered the incoming telephone call,

9    Plaintiff said "Hello" and a male (with an Asian accent[58]) said, in part, the following—

10   "Hello...my name is Kevin and I'm calling on behalf of SAPPHIRE
     RESORTS...(Plaintiff advised the caller that the conversation is recorded)...You have
11   been selected by our company to be one of our VIP guests...in our open house
     celebration...Our company right now, SAPPHIRE RESORTS is doing word-of-
12   mouth advertising...SAPPHIRE RESORTS, we are a newly opened vacation
     ownership club...we will show you how you can save money when it comes to your
13   future vacations...I'll give you our direct office address...Our company's name is
     SAPPHIRE RESORTS, we are located at 3700 South Las Vegas Boulevard...Here's
14   my direct telephone number...888.232.1533...My name is Kevin Reyes...

15   The call was terminated.

16   . . .

17   . . .

18   . . .

19

20

21

22

23

24

25   _____

26   [58]Plaintiff maintains that these telemarketing calls are generated from the Philippines. That, to hide
     their *illegal activities* Defendants, and each of them, utilizes telemarketing businesses in the
27   Philippines in their attempt to evade the laws and elude claims by consumers such as Plaintiff.

28                                          -41-

11.    **Eleventh** *illegal, unauthorized, deceptive and unscrupulous* **telemarketing and solicitation telephone call to Plaintiff when no existing business relationship existed between the Plaintiff and any Defendants named herein, and/or without first obtaining Plaintiff's** *written* **(or** *oral***) consent to receive any calls by, for, or on behalf of the Defendants herein named— and subsequent to Plaintiff telling Defendants' "Salesperson"[59] to put Plaintiff' telephone number on the callers company' DO-NOT-CALL List:**

Plaintiff repeats, realleges, and incorporates by reference paragraphs one through one hundred and thirty-two as aforementioned.

133.    That at all times relevant and material herein, Plaintiff asserts, alleges and maintains that on or about January 28, 2016@6:46 p.m., Defendants, and each of them (either individually or in concert with others, and either directly or indirectly)— were the causation of an *illegal, unauthorized, unscrupulous, deceptive and mendacious autodialed telemarketing and solicitation telephone call* to Plaintiff' landline telephone number (702.341.1776),when no existing business relationship existed between Plaintiff and any Defendants named herein; after Plaintiff had requested he be placed on the Defendants DO-NOT-Call list; and without first obtaining Plaintiff's *written* (or *oral*) consent to receive any calls by, for, from, or on behalf of Defendants.

134.    That at all times relevant and material herein, Plaintiff asserts, alleges and maintains that on or about January 28, 2016@6:46 p.m., Defendants, and each of them (either individually or in concert with others, and either directly or indirectly)— were the causation of an *illegal, unauthorized, unscrupulous, deceptive and mendacious autodialed telemarketing and solicitation telephone call* to Plaintiff' landline telephone number (702.341.1776), utilizing one (1) or more ATDS (whose definition include a "*predictive dialer*") to actuate the January 28, 2016 (6:46 p.m.) *illegal* telemarketing call.

. . .

. . .

. . .

---

[59]*See n.15, supra.*

135.   That at all times relevant and material herein, Plaintiff asserts, alleges and maintains that the January 28, 2016 (6:46 p.m.) *illegal, unauthorized, unscrupulous, deceptive and mendacious telemarketing and solicitation telephone call* to Plaintiff' landline telephone number (702.341.1776) was placed, or caused to be placed at the direction, authorization and knowledge of Defendants MULDOON and JONES.

136.   That at all times relevant and material herein, Plaintiff asserts, alleges and maintains that on or about January 28, 2016@6:46 p.m., Defendants MULDOON and JONES, in collusion and concert with each other and DOE Defendants, conspired with the employees, agents or representatives of, by, for and on behalf of Defendants MULDOON, JONES, BQ RESORTS, LLC, d/b/a STARPOINT RESORT GROUP, INC., a/k/a RESORT STAY INTERNATIONAL, LLC., a/d/b/a GETAWAYS RESORT MANAGEMENT, a/d/b/a GEOHOLIDAY CLUB, d/b/a SAPPHIRE RESORTS, LLC, a/d/b/a SAPPHIRE RESORTS, GROUP, a/k/a STAY SAPPHIRE, a/k/a SAPPHIRE to place and transmit, or cause to be placed and transmitted an *illegal, unauthorized, unscrupulous, deceptive and mendacious telemarketing and solicitation telephone call* to Plaintiff' landline telephone number (702.341.1776) when no existing business relationship existed between Plaintiff and any Defendants named herein; after Plaintiff had requested he be placed on the Defendants DO-NOT-Call list; and without first obtaining Plaintiff's *written (or oral)* consent to receive any calls by, for, from, or on behalf of Defendants.

137.   That at all times relevant and material herein, Plaintiff asserts, alleges and maintains that the January 28, 2016 (6:46 p.m.) telephone call to Plaintiff's landline telephone number (702.341.1776) was displayed on Plaintiff's CID as originating from ARCADIA CA and the telephone number 1.626.244.7302.

. . .

. . .

. . .

138.    That at all times relevant and material herein, Plaintiff asserts, alleges and maintains that on or about January 28, 2016@6:46 p.m., Plaintiff received an *illegal, unauthorized, unscrupulous, deceptive and mendacious telemarketing and solicitation telephone call* to Plaintiff's landline telephone number (702.341.1776), and when Plaintiff answered the incoming telephone call, Plaintiff said "Hello" and a male (with an Asian accent[60]) said, in part, the following—

> "...I'm looking for a Paul...Hi sir. This is Michael from SAPPHIRE RESORTS here in Las Vegas Boulevard..(Plaintiff advise the caller that the conversation is recorded)...Our company is doing our grand anniversary celebration and we are inviting couples to be our guests...We will be sending you a conformation letter within 24 hours...since we are governed by the Better Business Bureau...(caller put his manager on the phone)...Good evening to you my friend, this is Darwin, one of the (unintelligible) officers from the SAPPHIRE RESORTS...the only think we are asking from you is that you attend and finish or presentation for only 90 minutes...(Plaintiff provided his email address for Darwin to send the conformation to attend the 90 minute presentation)...Please write down our company name...SAPPHIRE RESORTS...3700 South Las Vegas Boulevard...We are inside the Jockey Club...If you have any question, please don't hesitate to call us back. My toll free number will be 1.888.296.1429...

No email or follow-up telephone call was received by Plaintiff.

## V.

### FACTUAL ALLEGATIONS

### (First Set)

Plaintiff repeats, realleges, and incorporates by reference paragraphs one through one hundred and thirty-eight as aforementioned.

139.    That at all times relevant and material herein, Plaintiff asserts, alleges and maintains that since June 28, 2003, Plaintiff' landline telephone number (702.341.1776) and Plaintiff' wireless (cellular) telephone number (702.893.1776) have been on the National DO-NOT-CALL Registry.[61]

140.    That at all times relevant and material herein, Plaintiff asserts, alleges and maintains that, to the best of his knowledge and belief he has **never contacted** any of the Defendants named herein regarding, pertaining to, or associated with Defendants' products and services.

---

[60]Plaintiff maintains that these telemarketing calls are generated from the Philippines. That, to hide their *illegal activities* Defendants, and each of them, utilizes telemarketing businesses in the Philippines in their attempt to evade the laws and elude claims by consumers such as Plaintiff.

[61]*See* **Exhibit 4** attached hereto and incorporated herein.

-44-

141.    That at all times relevant and material herein, Plaintiff asserts, alleges and maintains that, to the best of his knowledge and belief he has **never provided any of the Defendants named herein with consent** (expressed, specific, or implied) to cause, place, or transmit telemarketing and solicitation telephone calls to Plaintiff' wireless and landline telephone numbers regarding, pertaining to, or associated with Defendants' products and services.

142.    That at all times relevant and material herein, Plaintiff asserts, alleges and maintains that [with the exceptions noted, *supra*] on [a minimum of] nine (9) different and distinct dates Plaintiff requested and demanded that his telephone numbers (702.341.1776 & 702.893.1776) be placed on Defendants' DO-NOT-CALL list[s].

143.    That at all times relevant and material herein, Plaintiff asserts, alleges and maintains that on [a minimum of] seven (7) different and distinct dates Plaintiff requested and demanded that Defendants provide to Plaintiff, a copy of Defendants' DO-NOT-CALL Policy[ies].

144.    That at all times relevant and material herein, Plaintiff asserts, alleges and maintains that Defendants, and each of them (either individually or in concert with others, and either directly or indirectly) continued to place, or cause to be placed their *illegal, unauthorized, unscrupulous, deceptive and mendacious telemarketing and solicitation telephone calls* to Plaintiff' landline and wireless telephone numbers **subsequent** to Plaintiff requesting that Defendants, and each of them, to cease from any further telephone calls to Plaintiff' telephone numbers.

145.    That at all times relevant and material herein, Plaintiff asserts, alleges and maintains that Defendants, and each of them (either individually or in concert with others, and either directly or indirectly) utilized one (1) or more ATDS to call landline and wireless telephone numbers of thousands of consumers (from a pre-selected list), including, but not limited to Plaintiff' landline telephone number (702.347.1776) and cellular telephone number (702.893.1776), when no existing business relationship existed between Plaintiff and any Defendants named herein; after Plaintiff had requested he be placed on the Defendants DO-NOT-Call list; and without first obtaining Plaintiff's *written (or oral)* consent to receive any calls by, for, from, or on behalf of Defendants.

146.    That at all times relevant and material herein, Plaintiff asserts, alleges and maintains that Defendants, and each of them (either individually or in concert with others, and either directly or indirectly) engaged in a pattern and practice of initiating and transmitting, or causing the initiating and transmission of *illegal, deceptive and annoying telemarketing and solicitation autodialed, pre-recorded telephone calls* to telephone number[s] listed on the National DO NOT CALL Registry—violative of, but not limited to Nevada Revised Statutes **("NRS")** including, but not limited to 41.600(e), 42.005, 201.255(2), 228.540-228.620, 597.812-597.818, 598.0903-598.0999 (including, but not limited to 598.0915(15), 598.0916, 598.0918, 598.092, and 598.0923(3)), 598.0977, 599B.080-599B.145, 599B.270-599B.300 and 707.910(2)-707.920, as amended.

147.    That at all times relevant and material herein, Plaintiff asserts, alleges and maintains that Defendants, and each of them (either individually or in concert with others, and either directly or indirectly) placed and transmitted, or caused to be placed and transmitted *autodialed telemarketing and solicitation telephone calls* to residential and wireless telephone numbers, such as Plaintiff's, located within the City of Las Vegas, the County of Clark, and within the state of Nevada, and did so without first obtaining the called party[ies] *written (or oral)* "prior express consent."

## FACTUAL ALLEGATIONS

### (Second Set)

Plaintiff repeats, realleges, and incorporates by reference paragraphs one through one hundred and forty-seven as aforementioned.

148.    That at all times relevant and material herein, Plaintiff asserts, alleges and maintains that Defendant BQ— by, through and with the assistance and cooperation of its subsidiaries, affiliates, officers, directors, managers, employees, representatives, agents and telemarketers—conspired and authorized the utilization of *illegal, unauthorized, unscrupulous, deceptive and mendacious telemarketing and solicitation* business practices, activities and techniques to induce Plaintiff [and others] into purchasing Defendants' products and services.

-46-

149.    That at all times relevant and material herein, Plaintiff asserts, alleges and maintains that Defendant BQ— by, through and with the assistance, collaboration and in concert with its subsidiaries, affiliates, officers, directors, managers, employees, representatives, agents and telemarketers--- earns[ed] hundreds-of-thousands of dollars a year by engaging in *illegal, unauthorized, unscrupulous, deceptive and mendacious telemarketing and solicitation telephone calls* without [first] obtaining the written/oral consent of the called party[ies].

150.    That at all times relevant and material herein, Plaintiff asserts, alleges and maintains that Defendant BQ conducted, engaged-in and carried-out (either individually or in concert with others, and either directly or indirectly) *illegal, unauthorized, unscrupulous, deceptive and mendacious telemarketing and solicitation* business practices, activities and techniques (within the County of Clark and state of Nevada) without first obtaining the required business license[s] and in violation of Nevada state and Clark County, Nevada' statutes or regulations relating to the sale of goods or services. *See* NRS 598.0923(1) & (3).

151.    That at all times relevant and material herein, Plaintiff asserts, alleges and maintains that Defendant BQ *completely failed* to apply for and/or obtain the mandated business license[s] to conduct any type of business or business activities within the state of Nevada; the county of Clark; and the city of Las Vegas.

152.    That at all times relevant and material herein, Plaintiff asserts, alleges and maintains that Defendant BQ is (either individually or in concert with others, and either directly or indirectly) *vicariously liable* for the *illegal and deceptive acts and practices* of Defendant BQ' employee[s], agent[s] and representative[s], because Defendant BQ both authorized and benefitted from each *illegal, unauthorized, unscrupulous, deceptive and mendacious telemarketing and solicitation telephone call* to Plaintiff's landline telephone number (702.341.1776) and wireless telephone number (702.893.1776).[62]

---

[62]*See Meyer v. Holley,* 537 U.S. 280, 285, 123 S.Ct. 824, 154 L.Ed.2d 753 (2003) ("It is well established that traditional vicarious liability rules ordinarily make principals or employers (continued...)

1     **153.**    That at all times relevant and material herein, Plaintiff asserts, alleges and maintains

2    that Defendant BQ (either individually or in concert with others, and either directly or indirectly)

3    failed to take appropriate measures to prevent violations as those complained of herein.

4                              **FACTUAL ALLEGATIONS**

5                                  **(Third Set)**

6       Plaintiff repeats, realleges, and incorporates by reference paragraphs one through one hundred

7    and fifty-three as aforementioned.

8     **154.**    That at all times relevant and material herein, Plaintiff asserts, alleges and maintains

9    that Defendant STARPOINT— by, through and with the assistance and cooperation of its

10    subsidiaries, affiliates, officers, directors, managers, employees, representatives, agents and

11    telemarketers— conspired and authorized the utilization of *illegal, unauthorized, unscrupulous,*

12    *deceptive and mendacious telemarketing and solicitation* business practices, activities and

13    techniques to induce Plaintiff [and others] into purchasing Defendants' products and services.

14     **155.**    That at all times relevant and material herein, Plaintiff asserts, alleges and maintains

15    that Defendant STARPOINT— by, through and with the assistance, collaboration and in concert

16    with its subsidiaries, affiliates, officers, directors, managers, employees, representatives, agents and

17    telemarketers— earns[ed] hundreds-of-thousands of dollars a year by engaging in *illegal,*

18    *unauthorized, unscrupulous, deceptive and mendacious telemarketing and solicitation telephone*

19    *calls* without [first] obtaining the written/oral consent of the called party[ies].

20

21       [62](...continued)
    vicariously liable for acts of their agents or employees in the scope of their authority or

22    employment."); RESTATEMENT (SECOND) OF AGENCY § 219(1) "(1957). *Also see Lary v. Tom*
    *Taylor Agency*, 878 So.2d 1165, 1167 (Ala.Civ.App.2003); *LLC v. Verizon Wireless Personal*

23    *Communications, L.P.*, 329 F.Supp.2d 789, 806 (M.D.La.2004); *Bridgeview Health Care v. Jerry*
    *Clark, D/B/A Affordable Digital Hearing*, No. 09-CV-05601 (N.D.Ill. 09/30/2011). *Also see Charvat*

24    *v. EchoStar Satellite, LLC*, 630 F.3d 459 (6th Cir. 2010); *United States v. DISH Network, L.L.C.*,
    2011 WL 475067 (C.D. Ill. Feb. 4, 2011); FCC Declaratory Ruling (May 9, 2013).

25    See *In the Matter of the Joint Petition Filed by Dish Network, LLC*, 28 F.C.C.R. 6574, 6587 (2013).

26    *Also see Palm Beach Golf Center-Boca, Inc. v. Sarris*, No. 13-14013 (11th Cir.); *Charvat v. Echostar*
    *and United States v. Dish Network* matters (FCC-13-54A1 (Dec. Ruling)); *United States v. Dish*

27    *Network LLC*, 667 F. Supp. 2d 952, 956 (C.D. Ill. 2009).

28                              **-48-**

1    **156.** That at all times relevant and material herein, Plaintiff asserts, alleges and maintains

2    that Defendant STARPOINT conducted, engaged-in and carried-out (either individually or in concert

3    with others, and either directly or indirectly) *illegal, unauthorized, unscrupulous, deceptive and*

4    *mendacious telemarketing and solicitation* business practices, activities and techniques (within the

5    County of Clark and state of Nevada) without first obtaining the required business license[s] and in

6    violation of Nevada state and Clark County, Nevada statutes or regulations relating to the sale of

7    goods or services. *See* NRS 598.0923(1) & (3).

8    **157.** That at all times relevant and material herein, Plaintiff asserts, alleges and maintains

9    that Defendant STARPOINT *completely failed* to apply for and/or obtain the mandated business

10   license[s] to conduct any type of business or business activities within the state of Nevada; the

11   county of Clark; and the city of Las Vegas.

12   **158.** That at all times relevant and material herein, Plaintiff asserts, alleges and maintains

13   that Defendant STARPOINT has maintained a substantial course of trade or business in marketing

14   goods or services via the telephone, in or affecting commerce, as "commerce" is defined in Section

15   4 of the FTC Act, 15 U.S.C. § 44.

16   **159.** That at all times relevant and material herein, Plaintiff asserts, alleges and maintains

17   that Defendant STARPOINT is (either individually or in concert with others, and either directly or

18   indirectly) *vicariously liable* for the *illegal and deceptive acts and practices* of Defendant BQ'

19   employee[s], agent[s] and representative[s], because Defendant BQ both authorized and benefitted

20   from each *illegal, unauthorized, unscrupulous, deceptive and mendacious telemarketing and*

21   *solicitation telephone call* to Plaintiff's landline telephone number (702.341.1776) and wireless

22   telephone number (702.893.1776).

23   **160.** That at all times relevant and material herein, Plaintiff asserts, alleges and maintains

24   that Defendant STARPOINT was and continue to be aware that telemarketing and solicitation

25   telephone calls are *illegal* and violative of NRS' unless the caller first obtains the *written* prior

26   express consent from the called party. See NRS 228.600

27

28                                                    **-49-**

161.    That at all times relevant and material herein, Plaintiff asserts, alleges and maintains that Defendant BQ (either individually or in concert with others, and either directly or indirectly) failed to take appropriate measures to prevent violations as those complained of herein.

## FACTUAL ALLEGATIONS

### (Fourth Set)

Plaintiff repeats, realleges, and incorporates by reference paragraphs one through one hundred and sixty-one as aforementioned.

162.    That at all times relevant and material herein, Plaintiff asserts, alleges and maintains that Defendant RESORTSTAY— by, through and with the assistance and cooperation of its subsidiaries, affiliates, officers, directors, managers, employees, representatives, agents and telemarketers— conspired and authorized the utilization of *illegal, unauthorized, unscrupulous, deceptive and mendacious telemarketing and solicitation* business practices, activities and techniques to induce Plaintiff [and others] into purchasing Defendants' products and services.

163.    That at all times relevant and material herein, Plaintiff asserts, alleges and maintains that Defendant RESORTSTAY— by, through and with the assistance, collaboration and in concert with its subsidiaries, affiliates, officers, directors, managers, employees, representatives, agents and telemarketers— earns[ed] hundreds-of-thousands of dollars a year by engaging in *illegal, unauthorized, unscrupulous, deceptive and mendacious telemarketing and solicitation telephone calls* without [first] obtaining the mandated written/oral consent of the called party[ies].

164.    That at all times relevant and material herein, Plaintiff asserts, alleges and maintains that Defendant RESORTSTAY conducted, engaged-in and carried-out (either individually or in concert with others, and either directly or indirectly) *illegal, unauthorized, unscrupulous, deceptive and mendacious telemarketing and solicitation* business practices, activities and techniques (within the County of Clark and state of Nevada) without first obtaining the required business license[s] and in violation of Nevada state and Clark County, Nevada' statutes or regulations relating to the sale of goods or services. *See* NRS 598.0923(1) & (3).

**165.** That at all times relevant and material herein, Plaintiff asserts, alleges and maintains that Defendant RESORTSTAY *completely failed* to apply for and/or obtain the mandated business license[s] to conduct any type of business or business activities within the state of Nevada; the county of Clark; and the city of Las Vegas.

**166.** That at all times relevant and material herein, Plaintiff asserts, alleges and maintains that Defendant RESORTSTAY has maintained a substantial course of trade or business in marketing goods or services via the telephone, in or affecting commerce, as "commerce" is defined in Section 4 of the FTC Act, 15 U.S.C. § 44.

**167.** That at all times relevant and material herein, Plaintiff asserts, alleges and maintains that Defendant RESORTSTAY is (either individually or in concert with others, and either directly or indirectly) *vicariously liable* for the *illegal and deceptive acts and practices* of Defendant BQ' employee[s], agent[s] and representative[s], because Defendant BQ both authorized and benefitted from each *illegal, unauthorized, unscrupulous, deceptive and mendacious telemarketing and solicitation telephone call* to Plaintiff's landline telephone number (702.341.1776) and wireless telephone number (702.893.1776).

**168.** That at all times relevant and material herein, Plaintiff asserts, alleges and maintains that Defendant RESORTSTAY was and continue to be aware that telemarketing and solicitation telephone calls are *illegal* and violative of the NRS unless the caller first obtains the *written* prior express consent from the called party. See NRS 228.590 - 228.600.

**169.** That at all times relevant and material herein, Plaintiff asserts, alleges and maintains that Defendant RESORTSTAY (either individually or in concert with others, and either directly or indirectly) failed to take appropriate measures to prevent violations as those complained of herein.

· · ·

· · ·

· · ·

## FACTUAL ALLEGATIONS

### (Fifth Set)

Plaintiff repeats, realleges, and incorporates by reference paragraphs one through one hundred and sixty-nine as aforementioned.

170.    That at all times relevant and material herein, Plaintiff asserts, alleges and maintains that Defendant GETAWAYS— by, through and with the assistance and cooperation of its subsidiaries, affiliates, officers, directors, managers, employees, representatives, agents and telemarketers— conspired and authorized the utilization of *illegal, unauthorized, unscrupulous, deceptive and mendacious telemarketing and solicitation* business practices, activities and techniques to induce Plaintiff [and others] into purchasing Defendants' products and services.

171.    That at all times relevant and material herein, Plaintiff asserts, alleges and maintains that Defendant GETAWAYS— by, through and with the assistance, collaboration and in concert with its subsidiaries, affiliates, officers, directors, managers, employees, representatives, agents and telemarketers— earns[ed] hundreds-of-thousands of dollars a year by engaging in *illegal, unauthorized, unscrupulous, deceptive and mendacious telemarketing and solicitation telephone calls* without [first] obtaining the mandated written/oral consent of the called party[ies].

172.    That at all times relevant and material herein, Plaintiff asserts, alleges and maintains that Defendant GETAWAYS conducted, engaged-in and carried-out (either individually or in concert with others, and either directly or indirectly) *illegal, unauthorized, unscrupulous, deceptive and mendacious telemarketing and solicitation* business practices, activities and techniques (within the County of Clark and state of Nevada) without first obtaining the required business license[s] and in violation of Nevada state and Clark County, Nevada' statutes or regulations relating to the sale of goods or services. *See* NRS 598.0923(1) & (3).

173.    That at all times relevant and material herein, Plaintiff asserts, alleges and maintains that Defendant GETAWAYS *completely failed* to apply for and/or obtain the mandated business license[s] to conduct any type of business or business activities within the state of Nevada; the county of Clark; and the city of Las Vegas.

174.    That at all times relevant and material herein, Plaintiff asserts, alleges and maintains that Defendant GETAWAYS has maintained a substantial course of trade or business in marketing goods or services via the telephone, in or affecting commerce, as "commerce" is defined in Section 4 of the FTC Act, 15 U.S.C. § 44.

175.    That at all times relevant and material herein, Plaintiff asserts, alleges and maintains that Defendant GETAWAYS is (either individually or in concert with others, and either directly or indirectly) *vicariously liable* for the *illegal and deceptive acts and practices* of Defendant BQ' employee[s], agent[s] and representative[s], because Defendant BQ both authorized and benefitted from each *illegal, unauthorized, unscrupulous, deceptive and mendacious telemarketing and solicitation telephone call* to Plaintiff's landline telephone number (702.341.1776) and wireless telephone number (702.893.1776).

176.    That at all times relevant and material herein, Plaintiff asserts, alleges and maintains that Defendant GETAWAYS was and continue to be aware that telemarketing and solicitation telephone calls are *illegal* and violative of the NRS unless the caller first obtains the *written* prior express consent from the called party. See NRS 228.590 - 228.600.

177.    That at all times relevant and material herein, Plaintiff asserts, alleges and maintains that Defendant GETAWAYS (either individually or in concert with others, and either directly or indirectly) failed to take appropriate measures to prevent violations as those complained of herein.

## FACTUAL ALLEGATIONS

### (Sixth Set)

Plaintiff repeats, realleges, and incorporates by reference paragraphs one through one hundred and seventy-seven as aforementioned.

178.    That at all times relevant and material herein, Plaintiff asserts, alleges and maintains that Defendant GEO by, through and with the assistance and cooperation of its subsidiaries, affiliates, officers, directors, managers, employees, representatives, agents and telemarketers— conspired and authorized the utilization of *illegal, unauthorized, unscrupulous, deceptive and mendacious telemarketing and solicitation* business practices, activities and techniques to induce Plaintiff [and others] into purchasing Defendants' products and services.

-53-

1   **179.**   That at all times relevant and material herein, Plaintiff asserts, alleges and maintains

2   that Defendant GEO— by, through and with the assistance, collaboration and in concert with its

3   subsidiaries, affiliates, officers, directors, managers, employees, representatives, agents and

4   telemarketers— earns[ed] hundreds-of-thousands of dollars a year by engaging in *illegal,*

5   *unauthorized, unscrupulous, deceptive and mendacious telemarketing and solicitation telephone*

6   *calls* without [first] obtaining the mandated written/oral consent of the called party[ies]. See **Exhibit**

7   **5** attached hereto and incorporated herein.

8       **180.**   That at all times relevant and material herein, Plaintiff asserts, alleges and maintains

9   that Defendant GEO conducted, engaged-in and carried-out (either individually or in concert with

10  others, and either directly or indirectly) *illegal, unauthorized, unscrupulous, deceptive and*

11  *mendacious telemarketing and solicitation* business practices, activities and techniques (within the

12  County of Clark and state of Nevada) without first obtaining the required business license[s] and in

13  violation of Nevada state and Clark County, Nevada' statutes or regulations relating to the sale of

14  goods or services. *See* NRS 598.0923(1) & (3).

15      **181.**   That at all times relevant and material herein, Plaintiff asserts, alleges and maintains

16  that Defendant GEO *completely failed* to apply for and/or obtain the mandated business license[s]

17  to conduct any type of business or business activities within the state of Nevada; the county of Clark;

18  and the city of Las Vegas.

19      **182.**   That at all times relevant and material herein, Plaintiff asserts, alleges and maintains

20  that Defendant GEO has maintained a substantial course of trade or business in marketing goods or

21  services via the telephone, in or affecting commerce, as "commerce" is defined in Section 4 of the

22  FTC Act, 15 U.S.C. § 44.

23      **183.**   That at all times relevant and material herein, Plaintiff asserts, alleges and maintains

24  that Defendant GEO is (either individually or in concert with others, and either directly or indirectly)

25  *vicariously liable* for the *illegal and deceptive acts and practices* of Defendant BQ' employee[s],

26  agent[s] and representative[s], because Defendant BQ both authorized and benefitted from each

27  *illegal, unauthorized, unscrupulous, deceptive and mendacious telemarketing and solicitation*

28                                           -54-

1   *telephone call* to Plaintiff's landline telephone number (702.341.1776) and wireless telephone

2   number (702.893.1776).

3       **184.**    That at all times relevant and material herein, Plaintiff asserts, alleges and maintains

4   that Defendant GEO was and continue to be aware that telemarketing and solicitation telephone calls

5   are *illegal* and violative of the NRS unless the caller first obtains the *written* prior express consent

6   from the called party. See NRS 228.590 - 228.600.

7       **185.**    That at all times relevant and material herein, Plaintiff asserts, alleges and maintains

8   that Defendant GEO (either individually or in concert with others, and either directly or indirectly)

9   failed to take appropriate measures to prevent violations as those complained of herein.

10                                    **<u>FACTUAL ALLEGATIONS</u>**

11                                    **(Seventh Set)**

12       Plaintiff repeats, realleges, and incorporates by reference paragraphs one through one hundred

13   and eighty-five as aforementioned.

14       **186.**    That at all times relevant and material herein, Plaintiff asserts, alleges and maintains

15   that Defendant SAPPHIRE by, through and with the assistance and cooperation of its subsidiaries,

16   affiliates, officers, directors, managers, employees, representatives, agents and telemarketers—

17   conspired and authorized the utilization of ***illegal, unauthorized, unscrupulous, deceptive and***

18   ***mendacious telemarketing and solicitation*** business practices, activities and techniques to induce

19   Plaintiff [and others] into purchasing Defendants' products and services.

20       **187.**    That at all times relevant and material herein, Plaintiff asserts, alleges and maintains

21   that Defendant SAPPHIRE— by, through and with the assistance, collaboration and in concert with

22   its subsidiaries, affiliates, officers, directors, managers, employees, representatives, agents and

23   telemarketers— earns[ed] hundreds-of-thousands of dollars a year by engaging in *illegal,*

24   *unauthorized, unscrupulous, deceptive and mendacious telemarketing and solicitation telephone*

25   *calls* without [first] obtaining the mandated written/oral consent of the called party[ies].

26   . . .

27   . . .

28                                 **-55-**

**188.** That at all times relevant and material herein, Plaintiff asserts, alleges and maintains that Defendant SAPPHIRE conducted, engaged-in and carried-out (either individually or in concert with others, and either directly or indirectly) *illegal, unauthorized, unscrupulous, deceptive and mendacious telemarketing and solicitation* business practices, activities and techniques (within the County of Clark and state of Nevada) without first obtaining the required business license[s] and in violation of Nevada state and Clark County, Nevada' statutes or regulations relating to the sale of goods or services. *See* NRS 598.0923(1) & (3).

**189.** That at all times relevant and material herein, Plaintiff asserts, alleges and maintains that Defendant SAPPHIRE *completely failed* to apply for and/or obtain the mandated business license[s] to conduct any type of business or business activities within the state of Nevada; the county of Clark; and the city of Las Vegas.

**190.** That at all times relevant and material herein, Plaintiff asserts, alleges and maintains that Defendant SAPPHIRE has maintained a substantial course of trade or business in marketing goods or services via the telephone, in or affecting commerce, as "commerce" is defined in Section 4 of the FTC Act, 15 U.S.C. § 44.

**191.** That at all times relevant and material herein, Plaintiff asserts, alleges and maintains that Defendant SAPPHIRE is (either individually or in concert with others, and either directly or indirectly) *vicariously liable* for the *illegal and deceptive acts and practices* of Defendant BQ' employee[s], agent[s] and representative[s], because Defendant BQ both authorized and benefitted from each *illegal, unauthorized, unscrupulous, deceptive and mendacious telemarketing and solicitation telephone call* to Plaintiff's landline telephone number (702.341.1776) and wireless telephone number (702.893.1776).

**192.** That at all times relevant and material herein, Plaintiff asserts, alleges and maintains that Defendant SAPPHIRE was and continue to be aware that telemarketing and solicitation telephone calls are *illegal* and violative of the NRS unless the caller first obtains the *written* prior express consent from the called party. See NRS 228.590 - 228.600.

193.    That at all times relevant and material herein, Plaintiff asserts, alleges and maintains that Defendant SAPPHIRE (either individually or in concert with others, and either directly or indirectly) failed to take appropriate measures to prevent violations as those complained of herein.

## FACTUAL ALLEGATIONS

### (Eighth Set)

Plaintiff repeats, realleges, and incorporates by reference paragraphs one through one hundred and ninety-three as aforementioned.

194.    That at all times relevant and material herein, Plaintiff asserts, alleges and maintains that Defendant MULDOON— by, through and with the assistance and cooperation of his subsidiaries, affiliates, officers, directors, managers, employees, representatives, agents and telemarketers— conspired and authorized the utilization of *illegal, unauthorized, unscrupulous, deceptive and mendacious telemarketing and solicitation* business practices activities and techniques to induce Plaintiff [and others] into purchasing Defendants' products and services.

195.    That at all times relevant and material herein, Plaintiff asserts, alleges and maintains that Defendant MULDOON— by, through and with the assistance, collaboration and in concert with his subsidiaries, affiliates, officers, directors, managers, employees, representatives, agents and telemarketers— earns[ed] hundreds-of-thousands of dollars a year by engaging in *illegal, unauthorized, unscrupulous, deceptive and mendacious telemarketing and solicitation telephone calls* when no existing business relationship existed between Plaintiff and any Defendants named herein; after Plaintiff had requested he be placed on the Defendants DO-NOT-Call list; and without first obtaining Plaintiff's *written (or oral)* consent to receive any calls by, for, from, or on behalf of Defendants. See **Exhibits 5 & 6** attached hereto and incorporated herein.

196.    That at all times relevant and material herein, Plaintiff asserts, alleges and maintains that Defendant MULDOON conducted, engaged-in and carried-out (either individually or in concert with others, and either directly or indirectly) *illegal, unauthorized, unscrupulous, deceptive and mendacious telemarketing and solicitation* business practices, activities and techniques (within the County of Clark and state of Nevada) without first obtaining the required business license[s] and in

-57-

violation of Nevada state and Clark County, Nevada' statutes or regulations relating to the sale of goods or services. *See* NRS 598.0923(1) & (3).

197.    That at all times relevant and material herein, Plaintiff asserts, alleges and maintains that Defendant MULDOON *completely failed* to apply for and/or obtain the mandated business license[s] to conduct any type of business or business activities within the state of Nevada; the county of Clark; and the city of Las Vegas.

198.    That at all times relevant and material herein, Plaintiff asserts, alleges and maintains that Defendant MULDOON has maintained a substantial course of trade or business in marketing goods or services via the telephone, in or affecting commerce, as "commerce" is defined in Section 4 of the FTC Act, 15 U.S.C. § 44.

199.    That at all times relevant and material herein, Plaintiff asserts, alleges and maintains that Defendant MULDOON is (either individually or in concert with others, and either directly or indirectly) *vicariously liable* for the *illegal and deceptive acts and practices* of Defendants' employee[s], agent[s] and representative[s], because Defendant MULDOON both authorized and benefitted from each *illegal, unauthorized, unscrupulous, deceptive and mendacious telemarketing and solicitation telephone call* to Plaintiff's landline telephone number (702.341.1776) and wireless telephone number (702.893.1776).

200.    That at all times relevant and material herein, Plaintiff asserts, alleges and maintains that Defendant MULDOON was and continues to be aware that telemarketing and solicitation telephone calls are *illegal* unless an established business relationship existed and/or the caller first obtains the *written* prior express consent from the called party. See NRS 228.590 - 228.600.

201.    That at all times relevant and material herein, Plaintiff asserts, alleges and maintains that Defendant MULDOON (either individually or in concert with others, and either directly or indirectly) failed to take appropriate measures to prevent violations as those complained of herein.

. . .

. . .

## FACTUAL ALLEGATIONS

### (Ninth Set)

Plaintiff repeats, realleges, and incorporates by reference paragraphs one through two hundred and one as aforementioned.

202.    That at all times relevant and material herein, Plaintiff asserts, alleges and maintains that Defendant JONES— by, through and with the assistance and cooperation of his subsidiaries, affiliates, officers, directors, managers, employees, representatives, agents and telemarketers— conspired and authorized the utilization of *illegal, unauthorized, unscrupulous, deceptive and mendacious telemarketing and solicitation* business practices, activities and techniques to induce Plaintiff [and others] into purchasing Defendants' products and services.

203.    That at all times relevant and material herein, Plaintiff asserts, alleges and maintains that Defendant JONES— by, through and with the assistance, collaboration and in concert with his subsidiaries, affiliates, officers, directors, managers, employees, representatives, agents and telemarketers— earns[ed] hundreds-of-thousands of dollars a year by engaging in *illegal, unauthorized, unscrupulous, deceptive and mendacious telemarketing and solicitation telephone calls* when no existing business relationship existed between Plaintiff and any Defendants named herein; after Plaintiff had requested he be placed on the Defendants DO-NOT-Call list; and without first obtaining Plaintiff's *written (or oral)* consent to receive any calls by, for, from, or on behalf of Defendants.

204.    That at all times relevant and material herein, Plaintiff asserts, alleges and maintains that Defendant JONES conducted, engaged-in and carried-out (either individually or in concert with others, and either directly or indirectly) *illegal, unauthorized, unscrupulous, deceptive and mendacious telemarketing and solicitation* business practices, activities and techniques (within the County of Clark and state of Nevada) without first obtaining the required business license[s] and in violation of state and federal statutes or regulations relating to the sale of goods or services. *See* NRS 598.0923(1) & (3).

205.   That at all times relevant and material herein, Plaintiff asserts, alleges and maintains that Defendant JONES *completely failed* to apply for and/or obtain the mandated business license[s] to conduct any type of business or business activities within the state of Nevada; the county of Clark; and the city of Las Vegas.

206.   That at all times relevant and material herein, Plaintiff asserts, alleges and maintains that Defendant JONES has maintained a substantial course of trade or business in marketing goods or services via the telephone, in or affecting commerce, as "commerce" is defined in Section 4 of the FTC Act, 15 U.S.C. § 44.

207.   That at all times relevant and material herein, Plaintiff asserts, alleges and maintains that Defendant JONES is (either individually or in concert with others, and either directly or indirectly) *vicariously liable* for the *illegal and deceptive acts and practices* of Defendants' employee[s], agent[s] and representative[s], because Defendant MULDOON both authorized and benefitted from each *illegal, unauthorized, unscrupulous, deceptive and mendacious telemarketing and solicitation telephone call* to Plaintiff's landline telephone number (702.341.1776) and wireless telephone number (702.893.1776).

208.   That at all times relevant and material herein, Plaintiff asserts, alleges and maintains that Defendant JONES was and continues to be aware that telemarketing and solicitation telephone calls are *illegal* unless an established business relationship existed and/or the caller first obtains the *written* prior express consent from the called party. See NRS 228.590 - 228.600.

209.   That at all times relevant and material herein, Plaintiff asserts, alleges and maintains that Defendant JONES (either individually or in concert with others, and either directly or indirectly) failed to take appropriate measures to prevent violations as those complained of herein.

. . .

. . .

. . .

**FACTUAL ALLEGATIONS**

**(Tenth Set)**

Plaintiff repeats, realleges, and incorporates by reference paragraphs one through two hundred and nine as aforementioned.

210.    That at all times material and relevant hereto, Plaintiff asserts, alleges and maintains that Plaintiff owned, operated and controlled [landline] telephonic equipment with the assigned telephone number of 702.341.1776, that Defendants (either individually or in concert with others, and either directly or indirectly) placed, or caused to be placed *their illegal, unauthorized, unscrupulous, deceptive and mendacious [autodialed ]telemarketing and solicitation telephone calls* to— calls that were not for an emergency purposes and was transmitted lacking any established business relationship between the Defendants, and Defendants first obtaining Plaintiff' *written or oral* consent top receive any type of calls from Defendants.

211.    That at all times material and relevant hereto, Plaintiff asserts, alleges and maintains that Plaintiff owned, operated and controlled [cellular] telephonic equipment with the assigned telephone number of 702.893.1776, that Defendants (either individually or in concert with others, and either directly or indirectly) placed, or caused to be placed *their illegal, unauthorized, unscrupulous, deceptive and mendacious [autodialed ]telemarketing and solicitation telephone calls* to—calls that were not for an emergency purposes and was transmitted lacking any established business relationship between the Defendants, and Defendants first obtaining Plaintiff' *written or oral* consent top receive any type of calls from Defendants.

212.    That at all times material and relevant hereto, Plaintiff asserts, alleges and maintains that Defendants, and each of them (either individually or in concert with others, and either directly or indirectly) owned, operated, or controlled "customer premises equipment" as defined by the TCA. 47 U.S.C. § 153(16).

. . .

. . .

. . .

-61-

213.    That at all times material and relevant hereto, Plaintiff asserts, alleges and maintains that Defendants, and each of them (either individually or in concert with others, and either directly or indirectly) engaged in, or caused to be engaged in "[tele]communications" as defined by the TCA, 47 U.S.C. § 153(50).[63]

214.    That at all times material and relevant hereto, Plaintiff asserts, alleges and maintains that Defendants, and each of them (either individually or in concert with others, and either directly or indirectly) may have engaged in "interstate communications" as defined by the TCA, 47 U.S.C. § 153(22).

215.    That at all times material and relevant hereto, Plaintiff asserts, alleges and maintains that each of Defendants' telephone calls to Plaintiff' landline telephone number constituted a "communication" as defined by 47 U.S.C. § 227(b)(1)(A) of the TCPA.[64]

216.    That at all times material and relevant hereto, Plaintiff asserts, alleges and maintains that Defendants, and each of them (either individually or in concert with others, and either directly or indirectly) utilized, controlled, operated and authorized the utilization of one (1) or more "Automatic Telephone Dialing Systems" ("ATDS") as defined by, but not limited to NRS 597.812, 47 U.S.C. § § 227(a)(1), 227(a)(1)(A) & (B) and 47 C.F.R. 64.1200(f)(1)[65]— to place, or cause to

---

[63]*Also see Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946 (9th Cir. 06/19/2009).

[64]The FCC's interpretation of 47 U.S.C. § 227(b)(1)(A) is consistent with the dictionary's definition of call in that it is defined as "to communicate with or try to get into communication with a person by telephone." See *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946 (9th Cir. 06/19/2009).

[65]**The term "AUTOMATIC TELEPHONE DIALING SYSTEM," "AUTODIALER," "PREDICTIVE DIALER," and "ROBOCALL" (collectively "ATDS"), as those terms are used herein, refers to and means, but is not limited to,** equipment which has the capacity— **(1)** to store or produce telephone numbers to be called, using a random or sequential number generator; **(2)** to dial such numbers; **(3)** hardware, when paired with certain software, has the capacity to store or produce numbers and dial those numbers at random, in sequential order, or from a database of numbers; **(4)** equipment that dials numbers and, when certain computer software is attached, also assists in predicting when an agent will be available to take calls; and, **(5)** a system that need not actually store, produce, or call randomly or sequentially generated telephone numbers, but only have the capacity to do it. The Federal Communication Commission **("FCC")** has emphasized that the definition of "automatic telephone dialing system" covers any equipment that has the specified capacity to

(continued...)

be placed *illegal, unauthorized, unscrupulous, deceptive and mendacious **telemarketing and solicitation telephone calls*** to Plaintiff, when no existing business relationship existed between Plaintiff and any Defendants named herein; after Plaintiff had requested he be placed on the Defendants DO-NOT-Call list; and without first obtaining Plaintiff's *written (or oral)* consent to receive any calls by, for, from, or on behalf of Defendants.

217. That at all times relevant and material hereto, and while engaging in interstate activities, Plaintiff asserts, alleges and maintains that Defendants, and each of them (either individually or in concert with others, and either directly or indirectly), generated, or caused to be generated (by the utilization of sophisticated equipment generically known as autodialers) telephone calls to Plaintiff's landline telephone lacking the *mandated* "prior express consent" from the Plaintiff, therefore giving rise to liability under the Nevada Revised Statutes, as amended.

218. That at all times relevant and material herein, Plaintiff asserts, alleges and maintains that Defendants, and each of them (either individually or in concert with others, and either directly or indirectly) failed to maintain adequate procedures in maintaining an internal DO-NOT-CALL list pursuant to NRS Section 228 et seq.

219. Plaintiff asserts, alleges and maintains that upon information and belief Defendants, and each of them (either individually or in concert with others, and either directly or indirectly), neither maintained nor complied with procedures designed to comply NRS, as amended, *supra*.

220. Plaintiff asserts, alleges and maintains that the *illegal, deceptive and annoying* acts complained of herein were done (either individually or in concert with others, and either directly or indirectly) by, for, on behalf of and at the request and authorization of Defendants, Defendants' agents, Defendants' representative, or Defendants' employees.

---

[65](...continued)
generate numbers and dial them without human intervention whether or not the numbers called actually are randomly or sequentially generated or come from a calling list. As noted, the FCC has used "robocall" to refer both to calls placed using an automatic telephone dialing system and to prerecorded calls without reference to whether such prerecorded calls are made with an autodialer.

221.   Plaintiff asserts, alleges and maintains that the *illegal acts* complained of herein were done (either individually or in concert with others, and either directly or indirectly) by, for, on behalf of and at the authorization and request of Defendants, Defendants' agents, Defendants' representative, or Defendants' employees and perpetrated intentionally, purposefully and in reckless disregard of the rights of the Plaintiff and the laws of the state of Nevada and Clark County, Nevada.

222.   Plaintiff asserts, alleges and maintains that upon information and belief the acts complained of herein were done by, for, on behalf of, and at the request and authorization of Defendants, Defendants' agents, Defendants' representative, or Defendants' employees as part of a pattern and practice of failing to comply with the laws of the state of Nevada and Clark County, Nevada.

223.   That at all times material and relevant hereto, Plaintiff asserts, alleges and maintains that each and every act and omission of Defendants, and each of them, were undertaken wantonly, willfully, negligently, maliciously, intentionally, with malice and oppression, and gross and reckless disregard of the rights of the Plaintiff, and all applicable laws.

224.   That at all times material and relevant hereto, Plaintiff asserts, alleges and maintains that as a result of the acts and omissions of Defendants, and each of them; and in order to punish Defendants, and each of them, for their *malicious, deceptive and illegal conduct*, as well as to deter Defendants, and each of them, from committing similar acts in the future, Plaintiff is entitled to recover any statutory damages, actual damages, punitive damages and exemplary damages— in amounts to be determined at trial.

225.   That at all times material and relevant hereto, Plaintiff asserts, alleges and maintains that Defendants, and each of them (either individually or in concert with others, and either directly or indirectly) neither maintained nor maintains procedures designed to comply with the laws and regulations pursuant to Nevada Revised Statutes and Clark County, Nevada.

226.   That at all times material and relevant hereto, Plaintiff asserts, alleges and maintains that each and every act and omission of Defendants were undertaken wantonly, willfully, negligently, maliciously, intentionally, with malice and oppression, and gross and reckless disregard of the rights of the Plaintiff.

227.   That the sole purpose for each of the *autodialed solicitation and telemarketing telephone calls* that Defendants (either individually or in concert with others, and either directly or indirectly) were the causation of, were caused for the sole purpose of inducing Plaintiff to make a purchase of Defendants' products or services.

228.   Plaintiff asserts, alleges and maintains that as a result of the acts and omissions of Defendants, and in order to punish Defendants, and each of them, for their malicious and illegal conduct, as well as to deter Defendants, and each of them, from committing similar acts in the future, Plaintiff is entitled to recover, for Defendants' NRS and Clark County, Nevada' violations, any statutory, actual, punitive and exemplary damages, in amounts to be determined at trial.

229.   Plaintiff asserts, alleges and maintains that at all times relevant and material herein, Defendant' can be *vicariously liable* for the *illegal* acts complained of herein.[66]

230.   Plaintiff asserts, alleges and maintains that at all times relevant and material herein, Defendants MICHAEL J. MULDOON, III, a/k/a MICHAEL JOSEPH MULDOON, a/k/a MICHAEL J. MULDOON, a/k/a, MICHAEL MULDOON, and CHRISTOPHER JONES, a/k/a CHRIS JONES are each *liable and/or vicariously liable* for the *illegal acts* complained of herein.

231.   Plaintiff asserts, alleges and maintains that at all times relevant and material herein, Defendants BQ RESORTS, LLC, d/b/a STARPOINT RESORT GROUP, INC., a/k/a RESORT STAY INTERNATIONAL, LLC., a/d/b/a GETAWAYS RESORT MANAGEMENT, a/d/b/a GEOHOLIDAY CLUB, d/b/a SAPPHIRE RESORTS, LLC, a/d/b/a SAPPHIRE RESORTS, GROUP, a/k/a STAY SAPPHIRE, a/k/a SAPPHIRE, are each *liable and/or vicariously liable* for the *illegal acts* complained of herein.

---

[66]*See Meyer v. Holley,* 537 U.S. 280, 285, 123 S.Ct. 824, 154 L.Ed.2d 753 (2003) ("It is well established that traditional vicarious liability rules ordinarily make principals or employers vicariously liable for acts of their agents or employees in the scope of their authority or employment."); RESTATEMENT (SECOND) OF AGENCY § 219(1) "(1957). *Also see Lary v. Tom Taylor Agency,* 878 So.2d 1165, 1167 (Ala.Civ.App.2003); *LLC v. Verizon Wireless Personal Communications, L.P.,* 329 F.Supp.2d 789, 806 (M.D.La.2004); *Bridgeview Health Care v. Jerry Clark, D/B/A Affordable Digital Hearing,* No. 09-CV-05601 (N.D.Ill. 09/30/2011). *Also see Charvat v. EchoStar Satellite, LLC,* 630 F.3d 459 (6th Cir. 2010); *United States v. DISH Network, L.L.C.,* 2011 WL 475067 (C.D. Ill. Feb. 4, 2011); FCC Declaratory Ruling (May 9, 2013).

# VI.

## PLAINTIFF' FIRST CLAIMS FOR RELIEF

### (Defendants Violations of State Acts)

Plaintiff repeats, realleges, and incorporates by reference paragraphs one through two hundred and thirty-one as aforementioned.

232.    That at all times material and relevant hereto, Plaintiff asserts, alleges and maintains that Defendants, and each of them (either individually or in concert with others, and either directly or indirectly)  are violative of, but not limited to NRS 41.600(e), 42.005, 201.255(2), 228.500-228.620, 597.812-597.818,598.0903-598.0999 (including, but not limited to 598.0915(15), 598.0916, 598.0918, 598.092, and 598.0923(3)), 598.0977, 599B.080-599B.145, 599B.270-599B.300 and 707.910(2)-707.920 as amended— all of which, in whole or in-part, prohibits a business from engaging in "Deceptive Trade Practices."

233.    That at all times material and relevant hereto, Plaintiff asserts, alleges and maintains that Plaintiff, as a victim of consumer fraud, is entitled to relief pursuant to NRS 41.600, that, in pertinent part states:

> 1.    An action may be brought by any person who is a victim of consumer fraud.
>
> 2.    As used in this section, "consumer fraud" means:
> *       *       *
> (d)    A deceptive trade practice as defined in NRS 598.0915 to 598.0925, inclusive.

. . .

. . .

. . .

-66-

234.   That at all times material and relevant hereto, Plaintiff asserts, alleges and maintains that Defendants, and each of them (either individually or in concert with others, and either directly or indirectly) are violative of, but not limited to NRS 228.590-228.620, that states, in pertinent part:

NRS 228.590  Calls prohibited to telephone numbers in registry; limited use of information in registry.

1.  Except as otherwise provided in NRS 228.600, a telephone solicitor shall not intentionally make an unsolicited telephone call for the sale of goods or services to a telephone number in the currently effective version of the list of telephone numbers in the registry.[67]

\*          \*          \*

NRS 228.620  Violation constitutes deceptive trade practice.  A violation of a provision of NRS 228.500 to 228.640, inclusive, constitutes a deceptive trade practice for the purposes of NRS 598.0903 to 598.0999, inclusive.

235.   That at all times material and relevant hereto, Plaintiff asserts, alleges and maintains that Defendants, and each of them (either individually or in concert with others, and either directly or indirectly) are violative of NRS 598.0973, that states, in pertinent part:

NRS 598.0973 Civil penalty for engaging in deceptive trade practice directed toward elderly person or person with disability.

1.  Except as otherwise provided in NRS 598.0974, in any action brought pursuant to NRS 598.0979 to 598.099, inclusive, if the court finds that a person has engaged in a deceptive trade practice directed toward an elderly person or a person with a disability, the court may, in addition to any other civil or criminal penalty, impose a civil penalty of not more than $12,500 for each violation.

236.   That at all times material and relevant hereto, Plaintiff asserts, alleges and maintains that Defendants, and each of them (either individually or in concert with others, and either directly or indirectly) are violative of NRS 598.0977, that states, in pertinent part:

If an elderly...person suffers damage or injury as a result of a deceptive trade practice, he or his legal representative, if any, may commence a civil action against any person who engaged in the practice to recover the actual damages suffered by the elderly or disabled person, punitive damages, if appropriate, and reasonable attorney's fees.[68]

---

[67] **"Telephone solicitor"** means a person who makes or causes another person or a machine to make an unsolicited telephone call for the sale of goods or services. NRS 228.520(1).

[68] NRS 598.0933 "Elderly person" defined. "Elderly person" means a person who is 60 years of age or older.

237.   That at all times material and relevant hereto, Plaintiff asserts, alleges and maintains that Defendants, and each of them (either individually or in concert with others, and either directly or indirectly) are, in pertinent part, violative of, but not limited to NRS 598.0923(1) & (3), that in pertinent part states—

> A person engages in a "deceptive trade practice" when in the course of his or her business or occupation he or she knowingly:
>
>   1.   Conducts the business or occupation without all required state, county or city licenses.
>       *       *       *
>   3.   Violates a state or federal statute or regulation relating to the sale or lease of goods or services.

238.   Plaintiff asserts, alleges and maintains that Defendants, and each of them (either individually, or in concert with others, and either directly or indirectly) are violative of NRS 599B.080-599B.145, that states, in pertinent part—

> Registration required. [Effective July 1, 2015.] **It is unlawful** for any person to do business as a seller or salesperson in this State without being registered with the Division pursuant to the provisions of this chapter. For the purposes of this section, a person does business as a seller or salesperson in this State if he or she solicits or causes to be solicited a sale of goods or services or a donation from a location in this State or solicits persons in this State from a location outside this State.

239.   That at all times material and relevant hereto, Plaintiff asserts, alleges and maintains that the foregoing despicable conduct, acts, and omissions of Defendants, and each of them, were undertaken (either individually or in concert with others, and either directly or indirectly) wantonly, willfully, negligently, maliciously, intentionally and in gross, reckless and conscious disregard of the rights of the Plaintiff.

240.   That at all times material and relevant hereto, Plaintiff asserts, alleges and maintains that, as a result of the foregoing acts and omissions of each Defendants, and in order to punish each Defendant for their malicious conduct, as well as to deter each Defendant from committing similar acts in the future, Plaintiff is entitled to recover actual damages, punitive damages and exemplary damages from each Defendant, in an amount in excess of TWENTY-FIVE THOUSAND DOLLARS ($25,000.00), to be determined at trial.

-68-

## VII.

## PLAINTIFF' SECOND CLAIM FOR RELIEF

### (Injunctive Relief)

Plaintiff repeats and realleges and incorporates by reference paragraphs one through two hundred and forty as aforementioned.

241.    That at all times material and relevant hereto, Plaintiff asserts, alleges and maintains that Plaintiff requests an Order enjoining Defendants, and each of them, from continuing their harassing, disruptive, *illegal, unauthorized, unscrupulous, deceptive and mendacious [autodialed] telemarketing and solicitation telephone calls*, including those to Plaintiff' landline and cellular telephone numbers.[69]

## VIII.

## DEMAND FOR TRIAL BY JURY

Plaintiff repeats, realleges, and incorporates by reference paragraphs one through two hundred and forty-one as aforementioned.

242.    Please take notice that Plaintiff **DEMANDS TRIAL BY JURY** in this action.

**WHEREFORE**, Plaintiff respectfully prays that judgment be entered against Defendants, and each of them, jointly and severally, as follows:

(i)    For Injunctive relief;

(ii)    For Defendants' violations of Nevada state laws, Defendants to pay Plaintiff all exemplary damages in an amount in excess of $25,000.00— to be determined at trial;

(iii)    For all of Plaintiff's fees and costs;

. . .

. . .

. . .

_____

[69]*See* NRS 33.010.

-69-

**(iv)**     For such other and further relief as this Court deems just and proper.

DATED this 6th day of June 2016.

 

                                               PAUL D.S. EDWARDS,

 

                                            _[signature]_

Paul D.S. Edwards
713 Wheat Ridge Lane, Unit 203,
Las Vegas, NV 89145
Landline Telephone:   702.341.1776
Cellular Telephone:   702.893.1776
Email: pauldse@pauldsedwards.com
Plaintiff *pro se*

1

Print                                      https://us-mg4.mail.yahoo   n/neo/launch?.rand=dn3k5nkh5bfe6#20206...

| | |
|---|---|
| **Subject:** | SAPPHIRE RESORTS CONFIRMATION LETTER FOR Paul Edwards & Jeanette Nielson |
| **From:** | Morgana Aragom (vacationgiveaway2014@gmail.com) |
| **To:** | pauldsedwards@yahoo.com; |
| **Date:** | Sunday, September 20, 2015 8:41 PM |

REPLY IF YOU GET THIS:

VISITORS PASS. YOU MUST BRING THIS PASS WITH YOU TO RECEIVE YOUR GIFT!!!

# Claim Code: DCL-004

SAPPHIRE RESORTS

3700 S Las Vegas Blvd Las Vegas, NV 89109

Dear **Paul Edwards & Jeanette Nielson**

Your scheduled date and time for your sales presentation is

TUESDAY, SEPTEMBER 22, 2015 at 2:00 PM .

Congratulations, on your upcoming visit to **SAPPHIRE RESORTS**. We are pleased you have decided to visit us, and we want to take this opportunity to confirm your scheduled appointment, as well as to offer additional information. This is our way of saying "Thanks" for taking the time to learn more about our great products! We are happy to provide you with your choice of one of these exciting gifts:

## 5 Days & 4 Nights of Accommodations and Round-trip Airfare $ $100 DINING CARD

What to expect during your visit: You can expect to see something that is unique and revolutionary in the vacation industry. Our commitment to you is to treat you with professionalism and respect, and to provide you with a unique experience that will be both informative and entertaining. There is no obligation to purchase or join anything. Your personal tour and presentation of our facility will last approximately 90-120 minutes and no matter what the end result, you are guaranteed to receive the fabulous gift stated as above, providing you meet the qualifications below.

**There is absolutely no obligation to join or buy anything to receive your gift package.** The only thing required of you is your time and that you meet the requirements listed below:

-If you are married, or in a live in relationship - you must bring your spouse or partner.

-Your combined gross household income must exceed **$50,000** USD per year

-You must possess a valid credit card OR a Debit Card ( VISA, AMEX, MC, DISCOVER)

-You must present 2 forms of valid identification; a photo ID and the major credit card/debit card and couples must have at least one ID with a matching address:

   Guests must have matching government issued ID's (i.e. Drivers License, ID card, passport, Military ID, etc.)

   § The definition of matching is either surnames or addresses

   § Matching credit cards (a minimum of the first 10 digits on matching cards or online account/phone app view)

   § Joint bank accounts (a minimum of the first 10 digits on matching cards or online account/phone app view)

   § Matching insurance cards/accounts

· Home insurance: both guests listed on the policy (per the online account/phone app view)

· Health Insurance: both guests listed on the policy or the same member ID (first several numbers before the dash (-) or primary member name per the insurance card or online account/phone app view)

§ Vehicle insurance: both guests listed on the policy (per the ID card)

-Both of you must be between the ages of 25-72 years of age.

-You must not have participated in a Geo Holiday or Sapphire Resorts tour and presentation within the past 13 months.

This offer is limited to the above listed persons only and only 1 complimentary gift per family and vehicle permitted.

   **There is absolutely NO obligation to spend any money or purchase anything while on this tour.**

## Driving Directions to the Jockey Club

### From Henderson, Southwest, or Southeast

Take 215 Westbound to 15 Northbound, Exit Flamingo Rd East. Turn RIGHT ONTO Las Vegas Blvd (going south). Stay in the right hand lane, go through the light at Bellagio Drive and make the next immediate right hand turn into the driveway just in front of the Cosmopolitan. From here you have 2 options: You can continue down the driveway and park in the Jockey Club valet for a $5 fee, OR you can make a left hand turn into the Cosmopolitan self-parking garage and park on level B-3 at no charge. Park in the middle of section B-3 for Jockey Club parking. Take the elevator Marked JOCKEY CLUB (double doors at middle of garage) to JC2 which will bring you to the pool level. Walk straight across the pool deck to the opposite double doors. Once inside turn right to see the Sapphire Resorts™ sign and check in.

### From Summerlin, Northwest, or North Las Vegas

Take 15 Southbound. Exit Flamingo Rd East. Turn RIGHT ONTO Las Vegas Blvd (going south). Stay in the right hand lane, go through the light at Bellagio Drive and make the next immediate right hand turn into the driveway just in front of the Cosmopolitan. From here you have 2 options: You can continue down the driveway and park in the Jockey Club valet for a $5 fee, OR you can make a left hand turn into the Cosmopolitan self-parking garage and park on level B-3 at no charge. Park in the middle of section B-3 for Jockey Club parking. Take the elevator Marked JOCKEY CLUB (double doors at middle of garage) to JC2 which will bring you to the pool level. Walk straight across the pool deck to the opposite double doors. Once inside turn right to see the Sapphire Resorts™ sign and check in.

--
**Ms.Morgana Aragon**
**Reservation Manager**
**Reservation Center Inc.**

2

Print                                    https://us-mg4.mail.yahoo.cc    :o/launch?.rand=8p4bpfcf3ackt#5027453290

| | |
|---|---|
| Subject: | SAPPHIRE RESORTS LETTER OF GUARANTEE! |
| From: | Sam Wilson (vacations.reservation2009@gmail.com) |
| To: | paulrisedwards@yahoo.com; |
| Date: | Thursday, October 1, 2015 8:20 PM |

--
--

**Dear PAUL EDWARDS and JEANETTE NIELSON,**

Greetings!

Congratulations!

Attached herewith is your letter of Guarantee and Driving directions, as much as possible please print and bring the letter with you. Please come on time to avoid any inconvenience on your part and to receive an extra bonus gift. If you have any questions or clarifications simply email us back or call us at **1-888-240-6112.**

We will be looking forward to see both of you here.
God bless and Take care. Drive Safely!

**See you on Saturday at 1:00 P.M., OCTOBER 3, 2015**

**PLEASE ACKNOWLEDGE THAT YOU HAVE RECEIVED, READ AND UNDERSTAND THIS INVITATION.**

Thank you for your cooperation and consideration.
HAVE A GREAT DAY!

Thanks & Best Regards,

**Sam Wilson**
Reservations Manager

" Everything we become and all that we accomplish in life comes as a result of our interaction with others."

**VISITORS PASS. YOU MUST BRING THIS PASS WITH YOU TO RECEIVE YOUR GIFT!!!**

Claim Code: <u>DCL-1010</u>



# SAPPHIRE
## RESORTS

SAPPHIRE RESORTS

3700 S LAS VEGAS BLVD. LAS VEGAS, NV 89109

Dear PAUL EDWARDS and JEANETTE NIELSON,

Your scheduled date and time for your sales presentation is <u>SATURDAY, OCTOBER 3, 2015</u> at 1:00PM.

Congratulations, on your upcoming visit to *SAPPHIRE RESORTS*. We are pleased you have decided to visit us, and we want to take this opportunity to confirm your scheduled appointment, as well as to offer additional information. This is our way of saying "Thanks" for taking the time to learn more about our great products! We are happy to provide you with your choice of one of these exciting gifts:

### 5 Days & 4 Nights Hotel Accommodations and Roundtrip Airfare to

## OPEN CHOICE

### Plus $100 Restaurant.com

What to expect during your visit: You can expect to see something that is unique and revolutionary in the vacation industry. Our commitment to you is to treat you with professionalism and respect, and to provide you with a unique experience that will be both informative and entertaining. There is no obligation to purchase or join anything. Your personal presentation will last approximately 120 minutes and no matter what the end result, you are guaranteed to receive the fabulous gift stated as above, providing you meet the

**VISITORS PASS. YOU MUST BRING THIS PASS WITH YOU TO RECEIVE YOUR GIFT!!!**

**Claim Code: <u>DCL-1010</u>**

qualifications below.

**There is absolutely no obligation to join or buy anything to receive your gift package.** The only thing required of you is your time and that you meet the requirements listed below:

If you are married, or in a live in relationship - you must bring your spouse or partner.

Your combined gross household income must exceed $50,000 USD per year

You must possess a valid credit card OR a Debit Card (VISA, AMEX, MC, DISCOVER)

You must present 2 forms of valid identification: a photo ID and the major credit card/debit card and couples must have at least one ID with a matching address:

- Guests must have matching government issued ID's (i.e. Driver's License, ID card, passport, Military ID, etc.)
    - The definition of matching is either surnames or addresses
    - Matching credit cards (a minimum of the first 10 digits on matching cards or online account/phone app view)
    - Joint bank accounts (a minimum of the first 10 digits on matching cards or online account/phone app view)
    - Matching insurance cards/accounts
        - Home insurance: both guests listed on the policy (per the online account/phone app view)
        - Health Insurance: both guests listed on the policy or the same member ID (first several numbers before the dash (-) or primary member name per the insurance card or online account/phone app view)
    - Vehicle insurance: both guests listed on the policy (per the ID card)

Both of you must be between the ages of 25-72 years of age

You must not have participated in a Geo Holiday or Sapphire Resorts tour and presentation within the past 13 months.

This offer is limited to the above listed persons only and only 1 complimentary gift per family and vehicle permitted.

<u>**There is absolutely NO obligation to spend any money or purchase anything while on this tour.**</u>

**VISITORS PASS. YOU MUST BRING THIS PASS WITH YOU TO RECEIVE YOUR GIFT!!!**

Claim Code: <u>DCL-1010</u>

# <u>Driving Directions to the Jockey Club</u>

### <u>From Henderson, Southwest, or Southeast</u>

Take 215 Westbound to 15 Northbound, Exit Flamingo Rd East. Turn RIGHT ONTO Las Vegas Blvd (going south). Stay in the right hand lane, go through the light at Bellagio Drive and make the next immediate right hand turn into the driveway just in front of the Cosmopolitan. From here you have 2 options: You can continue down the driveway and park in the Jockey Club valet for a $5 fee, OR you can make a left hand turn into the Cosmopolitan self-parking garage and park on level B-3 at no charge. Park in the middle of section B-3 for Jockey Club parking. Take the elevator Marked JOCKEY CLUB (double doors at middle of garage) to JC2 which will bring you to the pool level. Walk straight across the pool deck to the opposite double doors. Once inside turn right to see the Sapphire Resorts™ sign and check in.

### <u>From Summerlyn, Northwest, or North Las Vegas</u>

Take 15 Southbound. Exit Flamingo Rd East. Turn RIGHT ONTO Las Vegas Blvd (going south). Stay in the right hand lane, go through the light at Bellagio Drive and make the next immediate right hand turn into the driveway just in front of the Cosmopolitan. From here you have 2 options: You can continue down the driveway and park in the Jockey Club valet for a $5 fee, OR you can make a left hand turn into the Cosmopolitan self-parking garage and park on level B-3 at no charge. Park in the middle of section B-3 for Jockey Club parking. Take the elevator Marked JOCKEY CLUB (double doors at middle of garage) to JC2 which will bring you to the pool level. Walk straight across the pool deck to the opposite double doors. Once inside turn right to see the Sapphire Resorts™ sign and check in.



Print                                               https://us-mg4.mail.yahoo     :/neo/launch?.rand=5qfiijgpq22m6s#51195...

| | |
|---|---|
| **Subject:** | CONFIRMATION LETTER FROM SAPPHIRE RESORTS |
| **From:** | Barbara Greene (bgmarketingdepartment@gmail.com) |
| **To:** | pauldsedwards@yahoo.com; |
| **Date:** | Wednesday, November 18, 2015 5:13 PM |

**Hi Paul and Jeanette,**

Good Day!

Attached herewith your invitation letter from **SAPPHIRE RESORTS.**

**Kindly email me back** to let us know that you have received it and that everything is clear.

You must bring this letter with you in order to receive your gifts.

## ADDRESS: 3700 S LAS VEGAS BLVD. LAS VEGAS, NV 89109

## CONFIRMATION CODE: STC08

Fell free to call me on this number **1-888-296-1429.**

Thank you so much and we'll see you here on Saturday, November 21, 2015, at 7:00 PM!

**Barbara Greene**
**Confirmation Officer**
**1-888-296-1429**

**Attachments**

- Sapphire Resorts Confirmation Letter_Paul Edwards and Jeanette Nielson.doc (62.00KB)

**VISITORS PASS. YOU MUST BRING THIS PASS WITH YOU TO RECEIVE YOUR GIFT!!!**



# SAPPHIRE RESORTS

# 3700 S LAS VEGAS BLVD. LAS VEGAS, NV 89109

Dear **Paul Edwards and Jeanette Nielson,**

Your scheduled date and time for your sales presentation is on <u>SATURDAY, NOVEMBER 21, 2015 at 2:00 PM.</u>

Congratulations, on your upcoming visit to *SAPPHIRE RESORTS*. We are pleased you have decided to visit us, and we want to take this opportunity to confirm your scheduled appointment, as well as to offer additional information. This is our way of saying "Thanks" for taking the time to learn more about our great products! We are happy to provide you with your choice of one of these exciting gifts:

## 5 Days & 4 Nights Hotel Accommodations and Roundtrip

## Airfare to Open Destination

## Plus $100 Casino Royal Slot Play OR

## $100 Restaurant.com

What to expect during your visit: You can expect to see something that is unique and revolutionary in the vacation industry. Our commitment to you is to treat you with professionalism and respect, and to provide you with a unique experience that will be both informative and entertaining. There is no obligation to purchase or join anything. Your personal presentation will last approximately 120 minutes and no matter what the end result, you are guaranteed to receive the fabulous gift stated as above, providing you meet the qualifications below.

**VISITORS PASS. YOU MUST BRING THIS PASS WITH YOU TO RECEIVE YOUR GIFT!!!**

**There is absolutely no obligation to join or buy anything to receive your gift package.** The only thing required of you is your time and that you meet the requirements listed below:

1. If you are married, or in a live in relationship - you must bring your spouse or partner.

2. Your combined gross household income must exceed $50,000 USD per year

3. You must possess a valid credit card OR a Debit Card (VISA, AMEX, MC, DISCOVER) Guests must have an annual household income of $60,000 or more per year

4. You must present 2 forms of valid identification: a photo ID and the major credit card/debit card and couples must have at least one ID with a matching address:

5. Guests must have matching government issued ID's (i.e. Driver's License, ID card, passport, Military ID, etc.)

   ▪ The definition of matching is either surnames or addresses or one of the following:

   ▪ Matching credit cards (a minimum of the first 6 (six) digits on matching cards or online account/phone app view)

   ▪ Joint bank accounts (a minimum of the first 6 (six) digits on matching cards or online account/phone app view)

   ▪ Matching insurance cards/accounts

      • Home insurance: both guests listed on the policy (per the online account/phone app view)

      • Health Insurance: both guests listed on the policy or the same member ID (first several numbers before the dash (-) or primary member name per the insurance card or online account/phone app view)

      • Vehicle insurance: both guests listed on the policy (per the ID card) or online account/phone app view)

6. Married or co-hab guests must be over the age of 25 and one must be under the age of 72 to be a qualified tour.

7. No children under the age of 7 years of age are allowed on the tour

8. You must not have participated in a Geo Holiday or Sapphire Resorts tour and presentation within the past 12

**VISITORS PASS. YOU MUST BRING THIS PASS WITH YOU TO RECEIVE YOUR GIFT!!!**

months.

9. Geo Holiday or Sapphire members are not eligible to tour through any program other than through the Jockey Club IH desk or the Owner Education department

10. This offer is limited to the above listed persons only and only 1 complimentary gift per family and vehicle permitted.

11. One primary guest on tour must understand, speak and read English fluently

12. Local Las Vegas area residents are not eligible from strip based OPC locations

<u>There is absolutely **NO** obligation to spend any money or purchase anything while on this tour.</u>

**VISITORS PASS. YOU MUST BRING THIS PASS WITH YOU TO RECEIVE YOUR GIFT!!!**

# Driving Directions to the Jockey Club

### From Henderson, Southwest, or Southeast

Take 215 Westbound to 15 Northbound, Exit Flamingo Rd East. Turn RIGHT ONTO Las Vegas Blvd (going south). Stay in the right hand lane, go through the light at Bellagio Drive and make the next immediate right hand turn into the driveway just in front of the Cosmopolitan. From here you have 2 options: You can continue down the driveway and park in the Jockey Club valet for a $5 fee, OR you can make a left hand turn into the Cosmopolitan self-parking garage and park on level B-3 at no charge. Park in the middle of section B-3 for Jockey Club parking. Take the elevator Marked JOCKEY CLUB (double doors at middle of garage) to JC2 which will bring you to the pool level. Walk straight across the pool deck to the opposite double doors. Once inside turn right to see the Sapphire Resorts™ sign and check in.

### From Summerlin, Northwest, or North Las Vegas

Take 15 Southbound. Exit Flamingo Rd East. Turn RIGHT ONTO Las Vegas Blvd (going south). Stay in the right hand lane, go through the light at Bellagio Drive and make the next immediate right hand turn into the driveway just in front of the Cosmopolitan. From here you have 2 options: You can continue down the driveway and park in the Jockey Club valet for a $5 fee, OR you can make a left hand turn into the Cosmopolitan self-parking garage and park on level B-3 at no charge. Park in the middle of section B-3 for Jockey Club parking. Take the elevator Marked JOCKEY CLUB (double doors at middle of garage) to JC2 which will bring you to the pool level. Walk straight across the pool deck to the opposite double doors. Once inside turn right to see the Sapphire Resorts™ sign and check in.

4

National Do Not Call Registry                    http://donotcall.gov/DNC/Register/R...px?702-8931776-20030628-121528-7254

## National Do Not Call Registry

**REGISTRATION COMPLETE**

You have registered the following telephone number in the National Do Not Call Registry:

Registry Home

Register A Phone Number

Verify A Registration

Delete A Registration

More Information

En Español

File A Complaint

Privacy and Security

702-893-1776

This registration will be effective until 6/29/2008.

Please print a copy of this page for your records.

**NATIONAL
DO NOT CALL
REGISTRY**

6/28/03 9:26 AM

National Do Not Call Registry                    http://donotcall.gov/DNC/Register/R.    !702-3411776-20030628-121528-2323

## National Do Not Call Registry

Registry Home

Register A Phone Number

Verify A Registration

Delete A Registration

More Information

En Español

File A Complaint

Privacy and Security

**REGISTRATION COMPLETE**

You have registered the following telephone number in the National Do Not Call Registry:

**702-341-1776**

This registration will be effective until 6/29/2008.

Please print a copy of this page for your records.

NATIONAL
DO NOT CALL
REGISTRY

6/28/03 9:26 AM

National Do Not Call Registry                    http://donotcall.gov/DNC/Register/R...   ?702-6831776-20030628-121529-1585

## National Do Not Call Registry

**REGISTRATION COMPLETE**

You have registered the following telephone number in the National Do Not Call Registry:

**702-683-1776**

This registration will be effective until 6/29/2008.

Please print a copy of this page for your records.

- Registry Home
- Register A Phone Number
- Verify A Registration
- Delete A Registration
- More Information
- En Español
- File A Complaint
- Privacy and Security

NATIONAL
**DO NOT CALL**
REGISTRY

6/28/03 9:27 AM

National Do Not Call Registry

i. _.//www.donotcall.gov/Register/Reg.aspx

## National Do Not Call Registry

Register → Check for Errors

### STEP TWO: MAKE SURE YOUR INFORMATION IS CORRECT

Please check your phone number(s) and email address below. If they are correct, click Register to continue. To make a correction, click Change.

Your email address MUST be correct to process your registration.

- Registry Home
- Register A Phone Number
- Verify A Registration
- Delete A Registration
- More Information
- En Espanol
- File A Complaint
- Privacy and Security

Area Code:   702   Phone:   893-1776
702                   341-1776
702                   683-1776

Email:   pdxe@lvcm.com

[Register]   [Change]

NATIONAL
DO NOT CALL
REGISTRY

1 of 1

6/28/03 8:27 AM

5

Home
Crimes
Criminals
Victims
Laws
Book Orders
Search
FAQ

# Geo Holiday Vacation Club Review -
# A Scam or Lifetime Timeshare Opportunity?

Online reports suggest that at least a few of the over 25,000 individuals who have done business with this Ontario-based enterprise feel that they have been wronged in some way, so I'd like to gather as much information on the company as possible so that the general public can make an informed decision about their business practices.

I have not formed an opinion of this privately-owned, family-run company and certainly welcome their input regarding these matters of public concern. I've even asked for their views on my collected material in August of 2010 but have never received a reply.

Any mention of any company or individual on this website is neither an endorsement nor a condemnation of their activities, merely a collection of carefully researched facts and fair comment based on those findings.

The Geo Group of Companies
40 Eglinton Ave. E.,
Suite 601, Toronto,
Ontario M4P 3A2
Ph: 416-490-0222
Toll Free: 1-877-GEO-CLUB(436-2582) 888-574-9134
Fax: 416-490-0155 Fax: 416-964-2439
Email: info@geogrp.com

Alex E. Burstein, CEO (born 1939)
Alan G. Walker, former Controller (joined 01/02) now at Stornoway Communications
Cecil Hendrix, former? Vice-President of Sales - sued company
Ms. Betty Eisenstadt, Club President - sister of Alex
(416) 490-0222 ext 263 Fx: (416) 490-0991 betty@geogrp.com
Helen Frim, GHL Promotions Inc./ VP of Operations at The Geo Group ext. 264
Contract Verification Officer - ?
Crystal Murin - GHME Marketing Ltd.
Paul Burstein - President of Geo Marketing Colorado Inc., possibly related to Alex, have incorporated businesses together, criminal lawyer based in Toronto
Lemos Manny - Accounting Manager GHL Promotions
Mike Muldoon, (Michael J. Muldoon III) - President of Starpoint Resort Group, Starpoint Resort Partners, Inc. (California corp.) and GeoHoliday Club (Nevada corp.)
Doris M. Azevedo, director of Tahoe Summit Village Timeshare Association, GeoHoliday employee
Alan Dickler - Chief Operating Officer at Starpoint Resort Group, Inc
Woody Cary - Secretary - GeoHoliday Club

Geo address formerly at

The Geo Group of Companies
2225 Sheppard Avenue East, 18th Floor,
Toronto Ontario M2J 5C2

Ph: 416-490-0222
Toll Free: 1-877-GEO-CLUB (436-2582) 877-436-2582
Fax: 416-490-0155

--

GH Marketing
51 International Blvd.
Etobicoke, ON M9W 6H3
Phone: 416-213-8960
gh@geoholiday.com

--

Richmond Hill location.
60 West Wilmot St., Unit #1
Richmond Hill, ON.

Ottawa sales office - current location unknown



older address of

Geo Holiday Resorts Membership / GeoHoliday International Inc.
251 Consumers Rd Suite 100 (Willowdale/North York)
Toronto, ON M2J 5C2 Canada
(timesharesonly.com/resort/5577)

In trying to determine whether GeoHolidays was anything but virtuous, as some online comments suggest, I did a Google Search and immediately came upon two of the company's own websites geoholidayscam.com and geoholiday-scam.net as well as a couple with blocked ownership data geoholidayclubscam.org and geoholidayclubcomplaints.com.

Is GeoHolidays a Scam? » Starpoint Resorts Geo Holidays
Despite rumors and mutterings of a Geo Holiday scam there are plenty of Geo ...... GH
Marketing Toronto · GHF Marketing · GHME Marketing · The Geo Group ...
:::::::::  www.geoholidayscam.com/?cat=53 - Cached - Similar

Geo Holiday Club Offers New Program "Debt Weasel" - Improve
Geo Holiday Club of a booking scam? scam is the industry because of the incredible amount of
packages that many buy their vacation, this is why ...
:::::::::::::::::::::: ······················

Geo Holiday Club Complaints Prevention Team Offers a Trusted Site ...
Geo Holiday Club Complaints Prevention Team, understands it helps to not surprise people to learn
that when solution provide leaves a greater excellent...
:::::::::::::::::::::::::::::::::::::::::::::

Geo Holiday Club Scam Prevention Squad Unveils This Initiative ...
Geo Holiday Club Scam Prevention Squad Prevention team helps you dot the itch and hotspot
develop powerful daylight, the powerful current to learn the ...
::::::::::::::::::::::::::::::::::::::::::::::::

Geo Holiday Club Scam Prevention Team Assures Newbie customers ...
Geo Holiday Club Scam prevention squad helps the holiday and reach saving, we all can save by
that up as it's easy to see article, a the joy of holiday people find...
:::::::::::::::::::::::::::::::::::::::::::::::::

Geo Holiday Club Warns Buyers Tips to Keep the Customer ...
Geo Holiday Club Registry point protects to service saying that our customer's always say
happen with pay you with as it might Excess our who does not that ...
:::::::::::::::::::::::::::::::::::::::::::::::::::

Clearly the very fact that the vacation club company requires the use of such websites with the words scam and complaints in the URL indicates that they have received news of at least some negative rumblings, however unfounded, which they felt compelled to dispute in a public forum. In fact, in their own words, mere rumours seemed to have expanded into many people having the belief that Geo Holidays is somehow a scam or fraud.

Based on the sites above, they apparently now have a "Scam Prevention Squad" and a "Scam Prevention Team" which I assume both have the same altruistic role of ensuring that their websites appear first in Google before any unwarranted complaints from resort customers who should know that "The customer is not always right."

   "While there are rumors of a Geo Holidays scam and/or a Geo Holiday fraud, there are
   many happy customers that will quickly tell you there is no validity to these claims about
   GeoHoliday Canada. Reassurance can also be found by reading through the many Geo
   Holiday testimonials."

   "While there are many who believe in a Geo Holiday scam there are plenty of satisfied
   customers to dispel those rumors rather quickly. "

   "you should decide for yourself whether or not you believe it is a scam based on personal
   research"

So, with their apparent blessing, I wish to compile my personal research into one central location so that you can, as they suggest, make an informed decision and clear up any "misconceptions". Legally, I would suspect that it would be somewhat unwarranted and unprofessional to sue me for defamation for asking the very same question they themselves pose to the general public. "Is Geo Holidays a Scam?"

Should they consider doing so, prior to doing their own research into my extensive legal background and expertise in Canadian defamation laws and Ontario Superior Court of Justice Civil Procedures, then I would certainly have to question their motives at that time, given the balanced and fair reporting in this report, their limited public figure status and the matter of public concern related to their marketing activities and a membership base of tens of thousands.

http://www.canlii.org/en/on/onsc/doc/2006/2006canlii32908/2006canlii32908.html

http://www.canlii.org/en/on/onsc/doc/2009/2009canlii43641/2009canlii43641.html

http://www.canlii.org/en/on/onsc/doc/2010/2010onsc149/2010onsc149.html

Their keyword optimized promotional site geoholidayscam.com really makes no effort to dispel any factual assertions that might have been made, since they give no examples. It simply overwhelms the senses with paragraphs of fantastic affordable holiday scenarios.

Some of the phrases they use and claims they make on their sites and promotional material:

- offers its members vacations to over 70 resorts located around the world
- an affordable method by which you can travel Europe.
- enjoy the experience of luxury accommodations around the world without the need to worry over quality or price.
- enjoy a lifetime of vacation adventures that will turn the neighbors green.
- amazing dream vacations year after year.
- the ability to stay in a few select resorts around the world and in the Caribbean without paying more in the future than you would pay for the same rooms today.
- a lifetime of excellent resort accommodations.
- By joining early you can begin enjoying the benefits of membership much more quickly and experience a much greater lifetime of savings.
- excellent choices for lodging in the UK, France, and Spain
- a much better bargain than the time shares our parents had
- often guaranteed a certain level of creature comforts during their travels as well.
- taking price, in many cases, out of the equation all together-at least when it comes to lodging in fabulous resorts around the world.
- constantly adding to their resort holdings.
- plenty of options when it comes to date and location when booking
- opportunity to set sail with select cruise packages
- imagine taking the same cruise in 10 years for the same price you're paying now
- enjoy a value far greater than any old-fashioned time-share offers.
- travel for a lifetime at the great rates of today
- the beauty of the UK, France, and Spain forever at today's prices
- North Mexico, locations in Cabo, San Lucas, Puerto Vallarta, Playa Del Carmen, Cozumel, Ixtapa, Cancun, and Acapulco
- Caribbean and Central America including Costa Rica and the Dominican Republic
- exciting accommodations in Park City, Utah; New York City; and Ontario and Quebec
- worth its weight in gold
- guaranteeing today's rates for your vacation stay
- ability to bequeath your ownership to friends and family
- Geo Holiday Vacations are Awesome
- a heaven for vacationers.

GeoHoliday Vacation Club describe themselves as "an innovative Credits-based reservations and exchange system, affording Members extraordinary flexibility and leisure-travel opportunities. Club Member privileges include: reservations throughout the Club system of resorts; enrollment in Resort Condominiums International (RCI), offering vacation exchange options at more than 3,700 resorts worldwide; and access to additional exchange properties in the exclusive GeoOptions program."

GeoHoliday Vacation Club Timeshare Resorts

They also state that "The Club has also created travel partnerships with distinctive leaders in the travel industry, providing Members with a unique selection of affiliated resort options. Affiliation agreements have been established with: Royal Holiday Club (Mexico), Club La Costa (Spain), Carnival Cruise Lines, Royal Caribbean Cruise Lines, Seasons Holidays (UK & Europe), Royal Resorts (Asia), Wyndham Resorts."

Surprisingly, the list of company moniker, dba's and aka's is quite extensive, leading one to wonder why any timeshare style membership company needs to operate under a multitude of other names. Their own sites list most of the following permutations.

- GeoHoliday, GeoHolidays, Geo Holiday, Geo Holidays,
- Geo Holidays Services Inc., Geo Holiday Services Toronto
- GeoHolidays Services Inc., GeoHolidays Services,
- Geo Holidays Canada, GeoHoliday Canada *, Geo Holiday Canada *
- GeoHolidays International Inc. *
- Geo Holiday Resorts Membership
- Geo Holidays Vacation Club, GeoHolidays Club, GeoHolidays Vacation Club, Geo Holiday Vacation Club, Geo Royal Holiday Club
- Fairfield Family, Fairfield Vacation Club *, Fairfield Affiliate *, Fairfield Geo Group *
- GHF Marketing Inc. group of companies *

Is Geo Holiday Vacation Club a Scam and GeoHoli      imeshare Membe...      http://www.crimes-of-pe      ion.com/Crimes/InPerson/MajorPerson/is-...

- GHME Marketing, Inc *
- GH Marketing Inc.*
- GHL Promotions Incorporation *
- GHW Marketing *(Geo Holiday Wigamog?)
- GHS Promotions
- Club GeoPremiere *, Club Geo Premiere * GeoPremiere Resorts
- Geo Premiere Vacations Inc.
- The Geo Group, The Geo Group of Companies, Geo Enterprises
- Geo Marketing Colorado Inc. *, Geo Development Colorado, Inc.*
- Family Vacation Club
- Starpoint Resort Group Inc.
- Starpoint Resort Partners, Inc
- ResortStay International LLC
- GeoPremiere Nevada, Inc.
- Haliburton Heights Club
- GH Corp.
- Montex Financial Services Inc
- Geo Developments Inc
- Club Seasons Canada

This particular Geo Group is not to be confused with the publicly traded American entity by the name of Geo Group, Inc. based in Florida since they happen to privately run prison and detention-related facilities. Now wouldn't that make a terrible vacation story if you signed up for the wrong one?

Also notable about the website is the inclusion of numerous other links to undisputedly related sites with corporate branding variants such as:

- geoholiday.com *, geoholiday.org *(GeoHoliday Club), geoholiday.ws (Geo Holiday Services Inc. ), geoholiday.info *, geoholiday.tv *
- geoholidays.ca * (GeoHolidays Canada ), geoholidays.org * (GeoHolidays Services Inc.), geoholidays.net * (GeoHolidays Vacation Club )
- geoholidaytoronto.ca, geoholidaystoronto.ca
- geoholidayservices.org * (Geo Holiday Services Inc. ), geoholidayservices.net *
- geoholidayguanabay.com *, geoholidayclubfuntropicale.com *, geoholidaypuebloreal.com *, geoholidayimperialakes.com *, geoholidayhaliburtonheights.com * geoholidayparkregency.com, geoholidaytoronto.ca, geoholidayjockeyclub.com, geoholidaytahoesummitvillage.com, geoholidayturtlereef.com,
- geoholidayclubgeopremiere.com *
- geoholidayclub.ca *
- geo-holidayclub.net
- geoholiday-club.org
- geo-holiday-club.com / geo-holiday-club.org
- geoholidayclubtoday.net
- geoholidayclubtop10.org
- geoholidayclubnews.net / geoholidayclubnews.org
- geoholidayblog.ca *
- geovacationclub.com *
- geoholidayclubonline.org / geoholidayclubonline.net
- geoholidayvacationclub.ca *
- travelwithgeo.ca *, geoholidayheights.com *
- clubgeopremiere.com *(Club Geo Premiere), clubgeopremiere.ca * Club GeoPremiere - Canada, geopremiereclub.com
- geoholidaysscam.com * Geo Holiday Vacation Club - Geo Holiday Scam, geoholiday-scam.net *
- thegeogroup.org * (The Geo Group - Richmond Hill - Geo Holidays aka Fairfield )
- geogroupofcompanies.com * (Geo Group of Companies)
- geogrp.com * (The Geo Group of Companies)
- geogroup.us * (The Geo Group)
- ghmarketing.ca * (GH Marketing Inc. )
- ghfmarketing.ca * (GHF Marketing Inc. - Canada )
- ghmemarketing.ca * (GHME Marketing Inc. )
- ghlpromotions.com * (GHL Promotions Inc.)
- ghspromotions.com *(GHS Promotions- Geo Holiday Services Promotions) forwarded to geoholiday.com
- clubseasonscanada.ca (Club Seasons Canada)

### Whois Record

Reverse Whois:  "The Geo Group" owns about  25 other domains.

Email Search:  webmaster@geogrp.com  is associated with about 40 domains.

Several cross-links and replication of promotional material also appear on several obscure sites. There are also keyword optimized glowing examples of flowery praise by "satisfied customers".

geoholidaybulletin.iloveblog.com/2010/05/
geoholidayinfo.wecarth.com/tag/geoholiday/
breenxt.net/wpmu/wpmu/geoholidayresources/
blurbosphere.net/2007/11/21/put-a-little-geoholiday-in-your-vacations/
moneyschool.co.za/?p=183 (also posted 11/07)
aboutmytalk.com/t22540/s&.html
mylot.com/GeoHolidays
geoholidays.blogspot.com/
just-blogs.info/?tag=geo-holiday-resort
geoholidayservices.wloger.com/

The company lists its headquarters as being in Toronto, Ontario, Canada with sales and marketing locations in Toronto; Las Vegas, Nevada; Lake Tahoe, Nevada; and Park City, Utah. Therefore, it only seems fair that all reports related to GeoHoliday coming from these locations on forums or BBB files should be attributed to the business principles, direction and oversight of the Canadian mothership.

They openly list their corporate divisions as being the following, but official documents and their own internal payment procedures and promotional efforts list a host of others as well.

GeoHoliday Services Inc.
GH Marketing Inc
Montex Financial Services Inc
Geo Developments Inc

> By pre-paying the accommodation portion of their annual vacations TODAY, GeoHoliday Members enjoy access to all present and future vacations at today's prices, effectively stopping inflation in its tracks.

By all accounts the company simply appears to be promoting the inflation-beating aspect of paying a substantial lump sum now for the "opportunity" to pay today's prices for something you will hopefully use in the future, in this case hotel, resort and cruise accommodations.

Does this mean you pay now and travel for free later? Not really. In addition to the points you redeem, (which do not accumulate since they expire each year and then start fresh) you appear to still have to pay for any accommodation or seasonal choice upgrades, meal plans, annual maintanance fees, plus transportation which is not included, nor price-protected, in the membership.

**How it Works** (According to their website)

> A member purchases a set of credits that are renewable every year (Annual Membership) or every other year (Biennial Membership). These credits are deposited into your account for use at any of the locations within the Club. The size of unit can range from a standard Studio unit up to a 3 bedroom unit, depending on the resort you choose. The member simply "withdraws" the credits from his/her account and redeems them according to the credit values set by the Club. The credit values will vary depending on the resort, the season and unit size.
>
> (geovacationclub.com/credit_info.html)

Now I'm just speculating here, but lets say your room was valued at the equivalent of $200/night this year but rose to $400 a night ten years from now. It sounds like you'd only pay the equivilent of $200 per night out of that year's credits for the future trip. Think of it, perhaps, like an insurance policy for inflation.

However, unlike most insurance policies where you pay a small amount over time to potentially receive a large amount, here you seem to pay a large lump sum, plus additional fees, in the hopes of getting the benefit of smaller payouts over time in the form of rate increase differentials.

If that is the case then, one should first determine what the potential benefit of essentially prepaying what that increase in room rates will be, based on what you could lose by just keeping your membership fee in the bank and using it, and the interest it earned over the years, to offset any future increases in room rates.

Assume for a moment that you travel for two weeks a year exclusively to this firm's resorts for the next forty years and their posted room rate doubles every ten years. Let's deal with dollars instead of points since the average mind, mine anyway, can't grasp the concept of paying tens of thousands of points for anything unless they are already familiar with the concept.

First ten years at $100/night = 14 days x $100 x 10 years = $14,000.

Next ten years at $200/night = 14 x 200 x 10 = $28k

Wow, you could save $14k if you had only paid the initial rates. You do, since you wisely splurged on a membership, whatever that might have cost. If, however, it cost anywhere near a rumoured $14,000, plus yearly maintenance fees, then you would have just now broken even, maybe.

Next ten years at $400/night = 14 x 400 x 10 = $56k Saved $42k

Hey, vacations are sure getting expensive for the other poor suckers staying here but you are said to be saving bundles checking in at only $100 a night. Still, I wonder how many company names and websites the promoters are using by this time? They must surely have cornered the market, it's such a good idea.

Next ten years at $800/night = 14 x 800 x 10 = $112k Saved $98k

By now you can hardly enjoy your holiday you are so embarrassed to be paying so little. Then again, tips in the future may cost more than your locked-in accommodation rate and the airfare, in a Mad Max world devoid of fossil fuels, could cost you the balance of your retirement savings. A shame if the facility you honeymooned in might not be as fresh as it was forty years ago, but with your eyesight fading you don't much care, as long as you are saving on the room rate.

So, after forty years of traveling to the same family of luxury resorts and their affiliates, based on any restrictions they may have for traveling when and where you want to go, you could theoretically save $154,000 in hotel accommodations if all the variables in the assumption hold true.

Strange, but to me it sounds suspiciously like what a hyperactive financial advisor might suggest when they throw figures around. "Invest now, I get paid a big commission, and you can retire wealthy beyond imagining, some year far from now. I promise. Millions!"

To put things into more of a personal perspective you could try to figure out how much you've actually spent on hotel accommodations in the past ten years, then key that into a hypothetical calculator of potential savings.

Also give some thought as to how much room rates have actually changed over the past ten years based on your own experiences. Try to compare the offer to some other product or service. For example, would you have paid $1000, or any amount, ten years ago for the privilege of drinking a few cases of a soda you've never tasted for fifty cents a can today instead of a dollar?

I also wonder just who determines what "today's rates" are based on, since I've stayed in hotels paying the yearly average rate of $150 a night when the card on the back of the door listed the maximum allowable rate by law of $1000. If I was locking in that inflated rate for the rest of my life just imagine how long it would take to reflect true market pricing.

Somewhere in the life-long equation you have to figure out what you are actually paying for a night's stay at one of the resorts in actual cash. The only way to do that is to somehow divide the unknown years of actual future use and the total points in your specific plan into the total lump sum you pay upfront, plus all the yearly fees times the 45 odd years of use and non-use. Stumped for an answer? I hear that Cray makes a pretty fast computer for dealing with such things.

One thing that is not hard to figure out is the fact that the less you actually take advantage of any membership over its lifespan, the more it costs in actual spent dollars per night. One hundred dollars for one hundred apples works out to a dollar an apple. If you pay for them all, but only eat two, they now effectively cost $50 each.

A lot of timeshare and vacation club premises and promises are also entirely contingent upon the sponsoring company remaining to be in business for as long as you still live and have the physical ability or desire to travel. Given the constant turnover and closure of travel industry operations over the years I'd venture to say that any company you deal with should be at least as stable as any fitness membership or exercise club out there.

For some obvious reasons, such as the classic "grab the cash and then go bankrupt" in that other "lifestyle enhancement industry", fitness clubs are now forbidden by law to offer lengthy "lifetime" membership periods. So, why should any aspect of the bankruptcy-plagued travel industry be any exception?

This Geo Group of Companies does not appear to be in any hurry to close up shop though. Boasting 25 years of experience, over 350 employees, and an extensive list of charitable donations, they appear not to be the typical high-pressure timeshare sales operation with aggressive back-office collection department that you might imagine, or have read about.

### GeoHoliday Timeshare Sales Presentation

Home to two unique clubs, "GeoHoliday" (a multi-destination points-based club) and "GeoPremiere" (a multi-destination 'floating week' club), The Geo Group and its marketing partners have successfully introduced over 10,000 Member families to its program and now facilitates over 50,000 vacations per year.

Surely, if they have over 25,000 members (husbands/wives/partners), as they state, the mere volume of verifiable complaints would be higher if something was truly wrong. And everyone knows that neither the police nor any government consumer protection agency would allow a multi-million dollar timeshare scam to operate for decades without stepping in to protect the public.



Still, there is that matter of all the confusing company names and the apparent need to bury negative comments, however unfounded, in the search engines using techniques such as domain link overload and what I perceive to be blog spamming of shill-like accolades.

Just try searching for any one of their company names along with the word scam and see what pops up; beyond their own sites that is. This could just be a perfectly legitimate means of promoting ones company but their motivation could also be misunderstood when the words "scam and fraud" are overused.

I'm not suggesting that they would ever stoop to threatening legal action for someone posting negative comments online, but I do find it strange that there aren't more people either writing about their great value dream vacations or else complaining about the seemingly high cost of membership (potentially $40,000 but generally $12-18k) and ongoing maintenance fees (approx. $400) which they take on contractually for the next 45 years of their life. Given the volumes of timeshare-related complaints posted online, surely someone has had second thoughts about such a wise decision made on the spur of the moment.

### GeoHoliday vacation club membership resales.

Regardless, since the membership benefits appear to only cover accommodation related expenses, and not airfare, you should take into account that your future savings do not apply to the cost of actually getting to these select hotels and cruise departures.

Not unusual with timeshares, but I suspect that if you've ever booked a vacation you surely know that you can usually get better flight and room package combinations than by attempting to book them separately. My own experience suggests that I can generally save about a third of the price on package deals versus paying for both features separately. That's just my experience though.

While the Geo Group profess to be adding additional properties to their extensive list of resort accommodations, it appears that unfettered in-house membership-related savings and benefits are currently linked to just those hotels and resorts within their portfolio, and just in certain countries as listed above, certainly not every possible hotel in the world. They do, however, have affiliations with other timeshare groups such as Fairfield and RCI which could dramatically expand your choices for an additional fee.

"Geo Holiday is the parent of one of North America's very successful membership-based vacation clubs, The Geo Group continues to earn international acclaim as one of the

preeminent leaders in the global vacation ownership industry. Founded in 1984 by CEO **Alex Burstein**, The Geo Group has evolved into a multifaceted vacation services organization with more than 300 employees providing club management, resort development, member services, sales, marketing and capital services."

"The Geo Group's corporate growth has been fueled by a series of creative licensing and joint ventures that have resulted in record sales of The Geo Group's programs. The company also holds the exclusive rights to offer Fairfield's "FairShare Plus™" program in Canada, successfully marketing the program at one of its corporately owned presentation centres in Ontario. Despite its steady corporate growth, The Geo Group has never lost track of its original mandate: to provide exceptional customer service and a range of exciting vacation opportunities to its members."

"Geoholiday are always excited by the dozens of families that continue to join Geo's award-winning vacation clubs each month, we are truly indebted to the legions of loyal Geo Members who have been with us for many years. (Some Geo Members have been with us for over 20 years!) "

"During your refresher course, we will discuss - in detail - how our program works and the various types of resort experiences available to you. We will also walk you through some of the truly great features and benefits of your membership, including acceleration, Credit rollover, RCI requests/banking and more!"

One thing I wondered about was whether this operation actually owned any of the resorts. While I may yet find that they own some properties outright, I have discovered that several resorts are not owned by them at all. In fact, their relationships with several started with a sales and marketing contract which led to them holding a significant number of intervals.

In one case the Starpoint Resort Group was retained in 2003 to be the timeshare associations exclusive sales representative, and to market and sell the association's delinquent intervals to the general public. In 2006, the focus shifted when reports state that Starpoint conveyed a number of these delinquent intervals to a multi-location vacation club known as GeoHoliday Club, which Starpoint had developed.

Recently GeoHoliday / Starpoint have taken steps to have their nominees elected to the board of directors of various timeshare associations, whose resorts they promote, through the solicitation of proxies as well as the influence they hold as the apparent managers of both the intervals and the corresponding voting rights. This leads me to wonder whether the person buying a membership from them related to any specific interval actually has ownership of the deed itself.

Somewhat reassuring is the fact that they have the in-house expertise of timeshare industry icon Woody Cary who is also the president of Tricom Management, Inc., a company which manages timeshare resort properties on behalf of timeshare owner's associations, as well as a timeshare exchange company named Platinum Interchange out of California. I'm not sure if there is a potential conflict of interest in having him placed as a director of an association or not, given that he might want to send business his own way if he didn't abstain from voting on such issues.

Also on board is Brian Hurley the founder and current president and chief executive officer of InterCity Capital Corp. and InterCity Escrow Services which together are known as Stewart Vacation Ownership. Both are referred to as highly successful industry experts.

As for whether the prices any vacation club charges are reasonable for the accommodations listed, one must first compare their offerings with other luxury holiday clubs. For example, the company run by the very rich Steve Case of AOL fame, Exclusive Resorts start their membership plans at $160,000 with a minimum $10,000 yearly maintenance fee based on "just under $1000 per day" with the minimum ten day plan. Figure on paying over $550,000 for their sixty-day plan the first year. Their properties are described as luxurious million dollar facilities and appear to surpass the offerings of GeoHoliday.

A bit out of my price bracket even with a 75% refund policy, but then again so is $40,000 non-refundable upfront. To each his own I suppose, but I think for now I'll just travel when I want, to where I want, when I can afford to pay for just the vacation itself (and not some salesman's lifestyle) after carefully evaluating whether it's a good deal or not.

If you search online classifieds you can find out what people are reselling their Geoholiday Vacation Club Memberships for. This alone should give some perspective of the benefits in belonging to such clubs.

It should also be noted that website links which originally went to the Fairfield Fairshare Plus - Thru Geoholiday Group, now redirect to Wyndham Vacation Resorts. Fairfield originally stated they had over 80 International Resorts through Fairfield Resorts plus RCI and boasted that. FairShare Plus is the

third largest timeshare exchange network in the world (behind RCI and Interval International), and members can use their points both for resort stays and a wide variety of travel/leisure products including airfare, cruises, accommodations and specialized leisure activities and attractions.

Franz Hanning CEO/President Fairfield Resorts (407) 370-5202

Geo Group Promotional Brochure

(arda.org/AM/Template.cfm?Section=GEO)

Responding to both new consumers and its existing base of more than 15,000 owners/members is something that The Geo Group seems to do best. Starting with GeoPremiere, a floating time/floating space, multi-destination vacation club, The Geo Group was one of the first companies in North America to introduce a points-based club with the advent of GeoHoliday in 1991.

In addition, The Geo Group provides fee-simple ownership at one of its corporately owned resorts. Geo's most recent innovation is GeoPlus/GeoUltra; a unique enhancement that allows GeoHoliday members to directly redeem their holiday credits toward the various vacation opportunities offered through the RCI Points program.

About The Geo Group

(October 2001)

Resort Condominiums International, LLC (RCI) and The Geo Group, one of Canada's largest timeshare developers, today announced an agreement to affiliate GeoHoliday, The Geo Group's multi-destination points-based vacation club, with RCI Points, RCI's worldwide points-based exchange system.

An RCI affiliate since 1988, GeoHoliday is a timeshare vacation club in which consumers pay a one-time fee to purchase "credits" that are made available each year for a term of 45 years, as compared with traditional timeshare where consumers typically purchase deeded weeklong ownership interests in resorts. GeoHoliday credits can be redeemed each year for a variety of vacation choices providing consumers with tremendous flexibility in the selection of resorts, types of accommodations, time of year and length of stay within the GeoHoliday resort network.

The Geo Group of Companies is a multi-faceted organization dedicated to providing a comprehensive range of products and services to its international consumer base. Primarily involved in the development, management and sale of leisure products and properties, 17 years of award-winning success have encouraged The Geo Group to continue its expansion into finance, marketing infrastructures and international trade sectors.

Geo was one of the first organizations in the world to embrace the 'vacation club' system and is widely recognized as one of the leaders in the global vacation ownership industry. The Geo Group and its marketing partners have successfully introduced over 10,000 member families to its program and now facilitates over 50,000 vacations per year. All Geo members' vacations are custom-designed and personally arranged by a team of professional vacation counselors utilizing the industry's most sophisticated computer network.

Promotional material has been printed by Epoct Graphics, Toronto, 905-940-4004.

Alex Burstein, Alex E. Burstein, the founder and driving force behind the Geo Group of Companies is, by all accounts, a very successful and reputable businessman with interests and ties to Ontario, Manitoba and Florida.

Is Geo Holiday Vacation Club a Scam and GeoHolic'   imeshare Membe...   http://www.crimes-of-pe      ion.com/Crimes/InPerson/MajorPerson/is-...



**Alex E. Burstein**
Chief Executive Officer

Some of Alex Burstein and family's many accomplishments include the creation of these corporate entities.

**Geoflorida, Inc.** - Incorporated by Alex E Burstein, Geoflorida, Inc. is located at 251 Consumers Rd # 100 Willowdale, ON M2J. Geoflorida, Inc. was incorporated on Monday, January 27, 1992 in the State of FL and is **currently not active**. Henry B Handler represents Geoflorida, Inc. as their registered agent.

**Palm-Aire Corp.** - Incorporated by Alex E Burstein, Gilles Leroux, Yvan Charron, Regency at Palm-Aire Corp. is located at 251 Consumers Rd # 100 Willowdale, ON. Regency at Palm-Aire Corp. was incorporated on Monday, May 03, 1993 in the State of FL and is **currently not active**. Henry Handler represents Regency at Palm-Aire Corp. as their registered agent.

**Ghd Properties (Florida), Inc.** - Incorporated by Alex E Burstein, Peter M Ashton, Ghd Properties (Florida), Inc. is located at PO Box F42683 FREEPORT, BAHAMAS,. Ghd Properties (Florida), Inc. was incorporated on Monday, August 31, 1992 in the State of FL and is **currently not active**. David A Beyer represents Ghd Properties (Florida), Inc. as their registered agent.

**Geo Investments of Florida, Inc.** - Incorporated by Alex Burstein, Gerald J Eberhardt, Geo Investments of Florida, Inc. is located at 2255 Glades Rd Ste 218A Boca Raton, FL 33431. Geo Investments of Florida, Inc. was incorporated on Friday, February 06, 1998 in the State of FL and is **currently not active**. Corporation Service Company represents Geo Investments of Florida, Inc. as their registered agent.

**Geoholiday Properties (Florida), Inc** - Incorporated by Alex E Burstein, Paul Burstein, Geoholiday Properties (Florida), Inc. is located at 2225 Sheppard Ave E Fl 18 Toronto, ON. Geoholiday Properties (Florida), Inc. was incorporated on Tuesday, July 23, 1991 in the State of FL and is **currently active**. Bspa Corporate Services, Inc. represents Geoholiday Properties (Florida), Inc. as their registered agent.

**Geopremier Properties (Florida), Inc.** - Incorporated by Alex E Burstein, Paul Burstein, Geopremier Properties (Florida), Inc. is located at 2225 Sheppard Ave E Fl 18 Toronto Ontario, CA. Geopremier Properties (Florida), Inc. was incorporated on Sunday, May 16, 1993 in the State of FL and is **currently active**. Bspa Corporate Services, Inc. represents Geopremier Properties (Florida), Inc. as their registered agent.

40 EGLINTON AVE EAST, SUITE 601
TORONTO, ONTARIO CA M4P 3A2

----------------------------------------

MEADOW OAKS CONDOMINIUM ASSOCIATION, INC.
5950 IMPERIALAKES BLVD, MULBERRY FL 33860

Title PD

BURSTEIN, ALEX
2225 SHEPPARD AVE E. 18TH FLOOR
TORONTO, ONTARIO, CANADA CA M2J 5C2

----------------------------------------

1/1/2016 5:33 PM

Is Geo Holiday Vacation Club a Scam and GeoHolic      imeshare Membe...      http://www.crimes-of-pe      ion.com/Crimes/InPerson/MajorPerson/is-...

GEO MARKETING COLORADO, INC.

This information is current as of January 6, 2010.

Entity Name:    GEO MARKETING COLORADO, INC.
Status:          Active                                    File Date      06/13/2002
Entity Type:     Domestic Corporation        File Number    C14969-2002
Annual List Due                              List Fees Due   $125.00 (Estimate)
Entity Age:      8 Years, 2 Months

Registered       Doris Azevedo
Agent:
                 750 Wells Fargo Ln
                 Stateline, NV 89449

Number Shares:   78,000                  Capital Amount:  $6.00

Paul Burstein
711 S Carson #4
Carson City, NV 89701

Helen Frim
711 S Carson #4
Carson City, NV 89701

Betty Eisenstadt
711 S Carson #4
Carson City, NV 89701

Paul Burstein
P.O. Box 4924
Stateline, NV 89449

Geo Marketing Colorado Inc., Paul Burstein, Betty Eisenstadt, Helen Frim

**GEO DEVELOPMENT COLORADO, INC.**

This information is current as of January 6, 2010.

Entity Name: GEO DEVELOPMENT COLORADO, INC.

Status:       Active              File Date:   06/13/2002

Entity Type:  Domestic Corporation File Number: C14969-2002

Entity Age:   8 Years, 1 Month

Registered Agent:  Doris Azevedo

                 750 Wells Fargo Ln
                 Stateline, NV 89449
                 Phone:      Fax:

President

Paul Burstein
711 S Carson #4
Carson City, NV 89701

Secretary

Helen Frim
711 S Carson #4
Carson City, NV 89701

Treasurer

Betty Eisenstadt
711 S Carson #4
Carson City, NV 89701

TAHOE SUMMIT VILLAGE TIMESHARE ASSOCIATION - Nevada corporation

President - ALEX E BURSTEIN
Address 1: 2225 SHEPPARD AVE E 18TH FLR Address 2:
City: TORONTO ONT
Zip Code: M2J5C2

Secretary - BETTY EISENSTADT
Address 1: 2225 SHEPPARD AVE E 18TH FLR
City: TORONTO ONT
Zip Code: M2J5C2

Director - STEVEN KENDALL
Address 1: PO BOX 5373
City: WALNUT CREEK State: CA
Zip Code: 94596-5373 Country:

Treasurer - HELEN FRIM
Address 1: 2225 SHEPPARD AVE E 18TH FLR Address 2:
City: TORONTO ONT :
Zip Code: M2J5C2

Director - DORIS M AZEVEDO
Address 1:PO BOX 1946Address 2:
City:      MINDEN      State:      NV
Zip Code: 89423      Country: USA
Status:   Active

PAULMAR NEVADA, INC. - Nevada Corporation

President - ALEX E BURSTEIN
PO BOX 4917
City: STATELINE State: NV
Zip Code: 89449 Country: US

Secretary - MARCIA BURSTEIN
PO BOX 4917
City: STATELINE State: NV
Zip Code: 89449 Country: US

Director - PAUL BURSTEIN
40 EGLINTON AVE. EAST, SUITE 601
City: TORONTO M4P 3A2

Treasurer - BETTY EISENSTADT
40 EGLINTON AVE. EAST, SUITE 601
City: TORONTO ON M4P 3A2

# GEOHOLIDAY CLUB

Nevada Corporation

Secretary - WOODY CARY (ASSISTANT SECRETARY)
P.O. BOX 4184
STATELINE NV 89449

Secretary/ Director- BETTY EISENSTADT
2225 SHEPPARD AVE. EAST 18TH FL
TORONTO ONTARIO M2J5C2

Treasurer / Director - ARTHUR EVANS
2225 SHEPPARD AVE EAST 18TH FL
TORONTO ONTARIO M2J 5C2

Director - BRIAN HURLEY
6210 STONEBRIDGE MALL RD: STE 140
PLEASANTON CA: 94588

President - MICHAEL J MULDOON
8219 ROUND HILLS CIRCLE
LAS VEGAS NV: 89113

Is Geo Holiday Vacation Club a Scam and GeoHolic ... Timeshare Membe...   http://www.crimes-of-pe    ion.com/Crimes/InPerson/MajorPerson/is-...

Director - MICHAEL J MULDOON (Mike Muldoon)
P.O. BOX 4184
STATELINE NV 89449

Brian W. Hurley, President,



The InterCity Companies
6210 Stoneridge Mall Road, Suite 140
Pleasanton, CA 94588
925.734.9900 phone
925.734.9901 fax
bhurley@stewart.com
www.stewart.com/vacationownership

Stewart Vacation Ownership offers complete title and escrow services for deeded and non-deeded developments. Stewart Vacation Ownership offers timeshare developers complete title and closing services. We continually implement title, inventory, foreclosure and registration strategies that enable us to streamline back-office operations, while allowing you to concentrate on marketing, sales and enhancing the customer experience.

The InterCity Companies joined Stewart Information Services Corp. (NYSE-STC) in 2002. InterCity Capital Corp. has serviced, administered, brokered and sold vacation ownership receivables since 1983. InterCity Escrow Services has handled timeshare escrow closings since 1987.

Stewart Title Company's timeshare industry subsidiaries, InterCity Capital Corporation and InterCity Escrow Services, are known together as Stewart Vacation Ownership

10/05 - Brian Hurley was a founder and is currently president and chief executive officer of InterCity Capital Corp. and InterCity Escrow Services, two Stewart companies specializing in **timeshare** escrow, title, deed-in-lieu, foreclosure, portfolio management and development consulting services. Under Hurley's leadership, the companies have closed more than 80,000 **timeshare** escrows and serviced more than $100 million in **timeshare** receivables since 1983.

Geo Holiday
920 E. University Drive
Tempe, AZ 85281
800-918-4224
434-878-9976

BBB rating of F for Geo Holiday in Arizona

GeoHoliday Royal Resort
99 Convention Center Dr.
Las Vegas, NV 89109
(702) 699-5323

BBB rating of F for GeoHoliday Royal Resort

No BBB rating for GeoHoliday Vacation Club

Additional DBA Names: GHW Marketing

Sweetwater Lift Lodge/Geo Holiday Club
Phone: (435) 645-5782
Address: PO Box 680356

1/1/2016 5:33 PM

Park City, UT 84068
Website: www.geoholiday.com
Principal: Mr. Andrew Wunder
Customer Contact: Mr. Andrew Wunder - (435) 645-5782
File Open Date: June 2008
Type of Business: Timeshare Companies, Vacation Time Share Companies
BBB Accreditation: Sweetwater Lift Lodge/Geo Holiday Club is not a BBB Accredited business.
Additional DBA Names: GeoHoliday, Geo Partners Resort Group, Geo Holiday Club

GEOPREMIERE NEVADA, INC. revoked Nevada corp.

President - ALEX E BURSTEIN
2225 SHEPARD AVE EAST 18TH FL
TORONTO ONTARIO M2J 5C2

Secretary - MARCIA BURSTEIN
2225 SHEPPARD AVE EAST 18TH FL
TORONTO ONTARIO M2J 5C2

Treasurer - HELEN FRIM
2225 SHEPPARD AVE EAST 18TH FL
TORNOTO ONTARIO M2J 5C2

Other references to the Geo Group of Companies and its related parties, entities or operations, past or present.

# STARPOINT RESORT GROUP, INC.

### Business Entity Information

| | | | |
|---|---|---|---|
| Status: | Active | File Date: | 7/29/2002 |
| Type: | Domestic Corporation | Entity Number: | C18899-2002 |
| Qualifying State: NV | | List of Officers Due: | 7/31/2011 |
| Managed By: | | Expiration Date: | |
| NV Business ID: NV20021381993 | | Business License Exp: | |

### Registered Agent Information

| | | | |
|---|---|---|---|
| Name: | ALLISON, MACKENZIE, PAVLAKIS, WRIGHT & FAGAN, LTD. | Address 1: | 402 NORTH DIVISION STREET |
| Address 2: | | City: | CARSON CITY |
| State: | NV | Zip Code: | 89703 |
| Phone: | | Fax: | |
| Mailing Address 1: | P O BOX 646 | Mailing Address 2: | |
| Mailing City: | CARSON CITY | Mailing State: | NV |
| Mailing Zip Code: | 89702 | | |
| Agent Type: | Commercial Registered Agent - Corporation | | |
| Jurisdiction: | NEVADA | Status: | Active |

### Financial Information

No Par Share Count: 2,500.00 Capital Amount: $ 0
**No stock records found for this company**

### Officers

Secretary - MICHAEL MULDOON
Address 1: PO BOX 4184 Address 2:
City:     STAtELINE     State:     NV

Is Geo Holiday Vacation Club a Scam and GeoHolic… Timeshare Membe…     http://www.crimes-of-pe…     …ion.com/Crimes/InPerson/MajorPerson/is-…

Zip Code: 89449        Country:
Status:     Active        Email:

President - MICHAEL MULDOON
Address 1: PO BOX 4184 Address 2:
City:        STAtELINE     State:        NV
Zip Code: 89449        Country:
Status:     Active        Email:

Treasurer - MICHAEL MULDOON
Address 1: PO BOX 4184 Address 2:
City:        STAtELINE     State:        NV
Zip Code: 89449        Country:
Status:     Active        Email:

Director - MICHAEL MULDOON
Address 1: PO BOX 4184 Address 2:
City:        STAtELINE     State:        NV
Zip Code: 89449        Country:
Status:     Active        Email:

**Starpoint Resort Group**

(702) 650-0861 *
3340 Topaz St Ste 210
Las Vegas, NV 89121-3907
702-699-5323

702-650-3251

same address as Resort Stay International aka Resort Stay Travel which offers prizes to attend presentation at The Jockey Club.

Resort Stay Travel - Suite 170

**3340 Topaz St Ste 210**
Las Vegas, NV 89121
702-733-4980 * was theirs, now a private number it seems.

Resortstay International LLC is a Nevada Corporation registered by Starpoint Resort Group.

Also the same address found for CasaBlanca Vacation Club, 3340 Topaz St, Suite 270, Las Vegas, NV 89121 US (702) 650-3251 * (Nevada corp registration indicates that it's unrelated since Black Gaming, LLC's subsidiary, RBG, LLC, owns the Casablanca Resort in Mesquite and is the developer of the Casablanca Timeshares but forum posts from 05/10 state timeshare presentation telemarketer caller ID shows Resort Stay International, Casablanca Resorts and Casablanca Vacation Club promoting CasaBlanca, The Royal Resort and Jockey Club in Nevada and one in Park City, Utah.)

Also linked in searches of address to Highland Estates Resort **3340 Topaz St Ste 210**, Las Vegas, NV 89121, 702 313-8015 * but it may only be another reference to an offering by promoters working under a sales agreement since there are also references to CasaBlanca Vacation club having that number.

ResortStay International appears to have set up a booth at a wedding show in order to obtain sales leads.

888-752-4340 *, 702-313-8102 * and 702-650-2929 * linked to sales calls from ResortStay International and Casa Blanca Vacation Club.

ResortStay International LLC does business as ResortStay International with a purported 30-39 employees in Las Vegas.

Meigan Soo - Nevada, Director of Promotions Resort Stay International
- (Hospitality industry) September 2008 — January 2009 (5 months)
Lead generation, staffing, promotions, events. - myspace.com/pouch_puddle

Rosalind Merritt - Manager - Resort Stay International, Las Vegas, Nevada

William Winston - Sales Concierge - ResortStay International, age 34, Las Vegas

Is Geo Holiday Vacation Club a Scam and GeoHolic   Timeshare Membe...      http://www.crimes-of-pe    ion.com/Crimes/InPerson/MajorPerson/is-...

Brad Benesh designed resortstayinternational.com website for ResortStay International

Registrant:
resort stay
3340 topaz
ste 270
las vegas, Nevada 89121
United States

Registered through: GoDaddy.com, Inc. (http://www.godaddy.com)
Domain Name: RESORTSTAYINTERNATIONAL.COM
Created on: 24-Nov-08
Expires on: 24-Nov-10
Last Updated on: 24-Nov-09

Administrative Contact: Alan Rodrigues
rodrigues, alan arodrigues1467@hotmail.com
resort stay
3340 topaz
ste 270
las vegas, Nevada 89121
United States
(702) 526-7234 * Fax --

In 2005 the same Alan Rodrigues was accused of organizing and selling abusive tax shelters related to work at home businesses.

918 Alta Oaks Drive, Henderson, Nevada, 98014
702-526-7234 Fax: 702-434-1212

Google cache snippet of:: ...Las Vegas Vacation Authority 702-526-7234 Al Rodrigues. Travel Solutions, LLC. 2301 E Winery Road. #B-102. Pahrump, NV 89048 arodrigues1467. @hotmail.com

Alan Rodrigues has worked with Steven De Stout of staz.com on other businesses which are registered in Nevada.

Another reference to Starpoint Resorts mentions

Resort Stay International
2206 Paradise Rd
Las Vegas, Nevada, 89104-2547
Phone: 702-699-5323 *- Resort Stay Travel
Fax: 702-697-5923 *
800-292-1528 *

**3Days/ 2Nights - $99***
Accommodation - Jockey Club, Royal Resort or similar hotel

**BOOK NOW at globalinvestmentresorts.com/booking_form.html**

* Price does not include taxes and is based on completion of Timeshare Presentation or Vacation Club Presentation. Check qualification.

Qualification

1. Married couples ONLY between the ages of 25 and 72 years of age with combined income at least $50,000. Both needs to attend presentation.
2. Each Qualified Tour must possess and present at the Presentation a valid driver's license AND a major credit card or major debit card with visa/mc logo.
3. Guest cannot have toured **Resort Stay International** in the past 12 months.
4. Must be U.S. or Canadian citizen and must be able to speak & understand fluent English.
5. Children may not attend presentation.
6. No quinnellas (2 or more families traveling together) or Full time students will be accepted.

Is Geo Holiday Vacation Club a Scam and GeoHolic   Timeshare Membe...       http://www.crimes-of-pe    tion.com/Crimes/InPerson/MajorPerson/is-...

7. Reservation cannot be made more than 90 days prior to arrival date and less than 7 business days prior to arrival. Cancellations must be made at least 3 business days prior to arrival. All cancellations made less than 3 business days prior to arrival date and all no shows will be charged back 1 night no-show charge including taxes.

8. Any guest that arrives but does not meet the qualifications will be charged back for all room nights at rack rate including taxes.

Industry magazine gives 510-487-0669 for Starpoint Resort Group, Inc. but it's also the number for Starpoint Resort Partners, Inc. P O Box 6623, San Rafael, CA 94903.* p: 510-487-0669 * f: 415-331-7747 *.

4343 N Scottsdale Rd, Ste. 270, *
Scottsdale Arizona 85251-3352
Phone: 775-588-2149 *

Report alleges link between Starpoint and Intercity Escrow, Monterey Financial Services, Concord Servicing Corporation

address seems to be for timeshare mortgage servicer / collection agencies, Equiant Financial Services Inc, EMCC RECEIVABLES, LLC, EMCC Inc.who appear to collect delinquent accounts for the Shell Vacation Club of Illinois,

702-987-8004 *

801-809-1302 *

702-812-5847 *

775-588-2149 * links to Starpoint Resorts employee benefit website starpointbenefits.com with Doris Azevedo of the Starpoint Resort Group, Inc. as contact person

**Doris Azevedo;**
Phone 775-588-1581 *, FAX 775 588-2149, tsvdazevedo@aol.com DAZE193381@aol.com

Phone 775-588-8571 Fax: 775-588-5521. Numbers for Tahoe Summit Village

Tahoe Summit Village
PO Box 4917, 750 Wells Fargo Lane, Stateline, NV 89449
775-588-8571 • 866-265-2041

(Help Wanted Ad)

Bookkeeper at Tahoe Summit Village - South Lake Tahoe, California

Bookkeeper 40 hours per week, Monday - Friday. AP/HR/Payroll Starting at $13/hr.
Call **775-588-1581**

A possible reason for needing a new bookkeeper (with a background check this time.).

Bookkeeper steals from Resort Stay International

06/08/10 - A 45-year-old Gardnerville woman who pleaded guilty in 2005 to embezzling $400,000, was arrested last week on a theft charge, accused of issuing phony paychecks worth more than $20,000 to her boyfriend.

Marlo Weatherbee * is accused of fraudulently issuing company checks since December.

Weatherbee was employed as a bookkeeper for **Resort Stay International** in Stateline.

Is Geo Holiday Vacation Club a Scam and GeoHolic⁀ ᵀimeshare Membe...   http://www.crimes-of-pe⁀ ⁀ion.com/Crimes/InPerson/MajorPerson/is-...

According to reports, another bookkeeper discovered that Weatherbee allegedly issued 19 checks to her boyfriend with a value of more than $21,000.

Weatherbee reportedly told an associate the checks were sponsorship for the man who was a professional bowler and covered his expenses.

Deputies questioned the owner of the company who said the sponsorship statement was "absolutely ridiculous" and that he would press charges.

Weatherbee was to appear Tuesday before Tahoe Township Justice Richard Glasson.

She pleaded guilty to embezzlement in 2005, admitting she took nearly $400,000 from her employer, Metalast International LLC, over a nine-year period.

She received a suspended six-year prison sentence and was placed on five years probation by District Judge Dave Gamble.

She served one year in Douglas County Jail and was ordered to pay restitution at $1,000 a month.

Starpoint Resort Group Inc
121 West Street
Reno, NV 89501-1313
775-329-1411 * Fax: 775-329-1445 *

actual address is for the Plaza Resort Club or Plaza on the River (a Starpoint Resort) at 775-786-2200
plazaresortclub.com

Starpoint Resort Group Inc.
2505 S 320TH ST
Auburn, Washington 98003 (Federal Way) no listings at all

Starpoint Resort Group

202-552-1557 * National Gifting Center, Bellevue Washington

Lawyers for Starpoint Resort Group LLC in Burien, WA

Case No.: 2:09-cv-01101-RLH-PAL
UNITED STATES DISTRICT COURT DISTRICT OF NEVADA

RICK BRUNTON and MICHAEL LEBER Plaintiffs,

individually and on behalf of all other similarly situated,

Class action related to unpaid minimum wages and overtime against

STARPOINT RESORT GROUP, INC. and GEOHOLIDAY DEVELOPMENT LLC, and "JOHN DOES", name fictitious, actual name and number unknown, Defendants.

Lawyer for GeoHoliday and Starpoint in Nevada

## RESORTSTAY INTERNATIONAL, LLC

**Business Entity Information**

| Status: | Active | File Date: | 11/23/2005 |
| --- | --- | --- | --- |
| Type: | Domestic Limited-Liability Company | Entity Number: | E0795172005-8 |
| Qualifying State: | NV | List of Officers Due: | 11/30/2010 |
| Managed By: | Managers | Expiration Date: | |

1/1/2016 5:33 PM

Is Geo Holiday Vacation Club a Scam and GeoHoli...  Timeshare Membe...   http://www.crimes-of-pe...   sion.com/Crimes/InPerson/MajorPerson/is-...

NV Business ID: NV20051721217                     Business License Exp: 11/30/2010

**Registered Agent Information**

| | | | |
|---|---|---|---|
| Name: | ALLISON, MACKENZIE, PAVLAKIS, WRIGHT & FAGAN, LTD. | Address 1: | 402 NORTH DIVISION STREET |
| Address 2: | | City: | CARSON CITY |
| State: | NV | Zip Code: | 89703 |
| Phone: | | Fax: | |
| Mailing Address 1: | P O BOX 646 | Mailing Address 2: | |
| Mailing City: | CARSON CITY | Mailing State: | NV |
| Mailing Zip Code: | 89702 | | |
| Agent Type: | Commercial Registered Agent - Corporation | | |
| Jurisdiction: | NEVADA | Status: | Active |

**Financial Information**

No Par Share Count: 0 Capital Amount: $ 0

**No stock records found for this company**

**Officers**

Manager - STARPOINT RESORT GROUP
Address 1: 402 N DIVISION ST Address 2:
City:      CARSON CITY      State:      NV
Zip Code: 89703             Country:
Status:    Historical        Email:

Manager - STARPOINT RESORT GROUP
Address 1: 402 N DIVISION ST Address 2:
City:      CARSON CITY      State:      NV
Zip Code: 89703             Country:
Status:    Active            Email:

Division St. address is for the Carson City Nevada lawyers for Starpoint Resort Group.

ResortStay International mini-holiday website is resortstayinternational.com and lists number of 877-707-8697 with address of 3340 Topaz St, Las Vegas, NV 89121 the same as Starpoint Resort Group. (page on file)

Starpoint also shows up as at 2850 E Bonanza RD -apartments
Las Vegas, NV 89101-3600 702-650-0861 *

Name:        Starpoint Resort Group
Fax:         (702) 313-8102
Address:     1450 114th Ave SE Ste 205
             Bellevue, WA 98004-6934
File Open Date:  July 2005
Industry Classification: Vacation Time Share
BBB Accreditation:   Starpoint Resort Group is not a BBB Accredited business.

BBB rating of F for Starpoint Resort Group in Bellevue Washington

Name:        Starpoint Resort Group
Phone:       (702) 699-5323 Vegas #
Fax:         (702) 968-0805 *
Address:     1450 114th Ave SE STE 205
             Bellevue, WA 98004-6934
Principal:   Jessica Lohstreter, Office Manager
File Open Date: October 2008

Alan Dickler Chief Operating Officer at Starpoint Resort Group, Inc. in Hawaii.

Is Geo Holiday Vacation Club a Scam and GeoHolic    Timeshare Membe...    http://www.crimes-of-pe        tion.com/Crimes/InPerson/MajorPerson/is-...

File Number:F-1037979-1
Corp. Name:STARPOINT RESORT PARTNERS, INC.

**Domestic Address**

% LAWRENCE J ROSENFELD
GREENBERG TRAURIG LLP
2375 E CAMELBACK RD #700
PHOENIX, AZ 85016

**Foreign Address**

% STARPOINT RESORT PARTNERS INC
P.O. BOX 6623
SAN RAFAEL, CA 94903

**Statutory Agent Information**

Agent Name: LAWRENCE J ROSENFELD
        **Agent Mailing Address:**
        % GREENBERG TRAURIG LLP
        2375 E CAMELBACK RD #700
            PHOENIX, AZ 85016
        **Agent Physical Address:**
        2375 E. CAMELBACK RD #700
            PHOENIX, AZ 85016
    **Agent Status:** APPOINTED 08/07/2002
    **Agent Last Updated:** 09/27/2002

**Additional Corporate Information**

Corporation Type: BUSINESS   Business Type: REAL ESTATE
Incorporation Date: 08/07/2002   Corporate Life Period: PERPETUAL
Domicile: CALIFORNIA   County: MARICOPA
Approval Date: 08/07/2002   Original Publish Date: 09/10/2002

**Officer Information**

MICHAEL MULDOON PRESIDENT PO BOX    MICHAEL MULDOON SECRETARY PO BOX
4184 STATELINE,NV 89449 Date of Taking    4184 STATELINE,NV 89449 Date of Taking
Office: 06/01/2002 Last Updated: 08/22/2009    Office: 06/01/2002 Last Updated: 08/22/2009

**Director Information**

MICHAEL **MULDOON**                MICHAEL **MULDOON**

DIRECTOR PO BOX 4184 STATELINE,NV    DIRECTOR PO BOX 4184 STATELINE,NV
89449                                89449

**Date of Taking Office: 06/01/2002 Last**    **Date of Taking Office: 06/01/2002 Last**
**Updated: 08/22/2009**                        **Updated: 08/22/2009**

# KINVARA HOLDINGS, LLC

**Business Entity Information**

| | | | |
|---|---|---|---|
| Status: | Active | File Date: | 11/30/2004 |
| Type: | Domestic Limited-Liability Company | Entity Number: | LLC27717-2004 |
| Qualifying State: | NV | List of Officers Due: | 11/30/2010 |
| Managed By: | Managing Members | Expiration Date: | 11/30/2504 |

NV Business ID: NV20041279519            Business License Exp: 11/30/2010

**Registered Agent Information**

| | | | |
|---|---|---|---|
| Name: | ALLISON, MACKENZIE, PAVLAKIS, WRIGHT & FAGAN, LTD. | Address 1: | 402 NORTH DIVISION STREET |
| Address 2: | | City: | CARSON CITY |
| State: | NV | Zip Code: | 89703 |
| Phone: | | Fax: | |
| Mailing Address 1: | P O BOX 646 | Mailing Address 2: | |
| Mailing City: | CARSON CITY | Mailing State: | NV |
| Mailing Zip Code: | 89702 | | |
| Agent Type: | Commercial Registered Agent – Corporation | | |
| Jurisdiction: | NEVADA | Status: | Active |

**Financial Information**

| No Par Share Count: | 0 | Capital Amount: | $ 0 |
|---|---|---|---|
| **No stock records found for this company** | | | |

**Officers**

| Managing Member – MICHAEL J MULDOON | | | |
|---|---|---|---|
| Address 1: | 8219 ROUND HILLS CIRCLE | Address 2: | |
| City: | LAS VEGAS | State: | NV |
| Zip Code: | 89113 | Country: | |
| Status: | Historical | Email: | |
| Managing Member – MICHAEL J MULDOON | | | |
| Address 1: | 8219 ROUND HILLS CIRCLE | Address 2: | |
| City: | LAS VEGAS | State: | NV |
| Zip Code: | 89113 | Country: | |
| Status: | Active | Email: | |

I wonder if Michael's ancestors come from the Emerald Isle? Perhaps he has a more personal connection apart from golf?

8219 Round Hill Circle, Las Vegas, NV 89113-1232 (Spanish Trail Country Club)
2 bedroom 2 bath 1683 sq ft condo bought for $245,000 on September 3, 2003



Starpoint Resort Group

**Company Overview:** Timeshare Resort Development Company
**web site:**
**Location:** Las Vegas, Nevada
**Industry:** Travel & Hotel
**NetDocuments Usage:** Document Management
**Software switched from:**

"Our desire was to move from a heavy paper-oriented world where we were in a multi-site, multi-office, and multi-jurisdiction environment. NetDocuments allowed us to move forward and continue our migration towards a paperless world and have security layers of protection and universal access. We have also realized all kinds of savings in business continuity."

– *Michael Muldoon*

Domain Name:GEOHOLIDAY.ORG
Created On:26-Jul-2004
c/o Mehul Patel webmaster@geogrp.com
Registrant Organization:The Geo Group
40 Eglinton Ave. E., Suite 601
Toronto, Ontario M4P 3A2
Phone:+1.4164900222
FAX:+1.4164900155
NS1.GEOHOLIDAY.ORG

GEOHOLIDAY.COM Created on: 12-Aug-99 as above NS3.GENESISCIRCLE.COM

http://www.genesiscircle.com/web_development_portfolio1.html (website developer)

GEOHOLIDAY.INFO Created On:22-Aug-2005 as above NS3.GENESISCIRCLE.COM

GEOGROUPOFCOMPANIES.COM Created on: 09-Sep-99 as above NS3.GENESISCIRCLE.COM

GEOVACATIONCLUB.COM Created on: 09-Sep-99 Expires on: 09-Sep-15 as above
MAG1.MAGMA.CA

GHLPROMOTIONS.COM Created on: 15-Nov-04 as above NS3.GENESISCIRCLE.COM

GEOGROUP.US Created on: 22 Aug 2005 as above NS3.GENESISCIRCLE.COM

GHSPROMOTIONS.COM Created on: 05-Feb-08 as above NS3.GENESISCIRCLE.COM

Their website designers are:
Domain Name: GENESISCIRCLE.COM
Created on: 09-May-05
Expires on: 09-May-11
Last Updated on: 03-May-09

Administrative Contact:
Gnanaseelan, Christopher chris@gnanaseelan.com
SCC
8 Kessack Ct
Scarborough, Ontario M1B 1K6
Canada
4162861253 Fax --

Domain servers in listed order:
NS3.OURDNSERVERS.COM
NS4.OURDNSERVERS.COM

geoholiday.ws Domain Created: 2006-12-01
GEOHOLIDAY.TV Created on: 01-Dec-06 masked
geoholidays.ca Created 2005/01/08 masked

GEOHOLIDAYS.ORG Created On:16-Mar-2006 masked NS1.GEOHOLIDAYS.ORG

GEOHOLIDAYS.NET Created on: 16-Mar-06 masked NS1.GEOHOLIDAYS.NET

GEOHOLIDAYSERVICES.ORG Created On:16-Mar-2006 masked
NS1.GEOHOLIDAYSERVICES.ORG

GEOHOLIDAYSERVICES.NET Created on: 16-Mar-06 masked NS1.GEOHOLIDAYSERVICES.NET

GEOHOLIDAYGUANABAY.COM Created on: 17-Mar-06 masked NS3.GENESISCIRCLE.COM

GEOHOLIDAYCLUBFUNTROPICALE.COM Created on: 17-Mar-06 masked
NS3.GENESISCIRCLE.COM

GEOHOLIDAYPUEBLOREAL.COM Created on: 17-Mar-06 masked NS3.GENESISCIRCLE.COM

GEOHOLIDAYIMPERIALAKES.COM Created on: 17-Mar-06 masked NS3.GENESISCIRCLE.COM

GEOHOLIDAYHALIBURTONHEIGHTS.COM Created on: 17-Mar-06 masked
NS3.GENESISCIRCLE.COM

Is Geo Holiday Vacation Club a Scam and GeoHolid   Timeshare Membe...   http://www.crimes-of-pe     sion.com/Crimes/InPerson/MajorPerson/is-...

GEOHOLIDAYCLUBGEOPREMIERE.COM Created on: 17-Mar-06 masked NS3.GENESISCIRCLE.COM

geoholidayclub.ca 2005/01/08 masked ns3.genesiscircle.com

geoholidayvacationclub.ca 2005/01/08 masked sns29.websitewelcome.com

travelwithgeo.ca 2005/01/08 masked ns3.genesiscircle.com

clubseasonscanada.ca 2008/04/17 Renewal date: 2012/04/17 Updated date: 2010/04/13
Name servers: ns3.genesiscircle.com ns4.genesiscircle.com

GEOHOLIDAYHEIGHTS.COM Created on: 17-Mar-06 masked NS3.GENESISCIRCLE.COM

CLUBGEOPREMIERE.COM 13-nov-2004 masked NS1.CLUBGEOPREMIERE.COM

clubgeopremiere.ca 2005/01/08 masked sns1.websitewelcome.com

ghmarketing.ca 2005/01/08 masked ns1.ghmarketing.ca 70.85.32.2

ghfmarketing.ca 2005/01/08 masked ns1.ghfmarketing.ca 70.85.67.2

ghmemarketing.ca 2005/01/08 masked ns1.ghmemarketing.ca 67.18.66.2

GEOHOLIDAYSCAM.COM Created on: 16-Mar-06 masked NS1.GEOHOLIDAYSCAM.COM

THEGEOGROUP.ORG Created On:16-Mar-2006 masked NS1.THEGEOGROUP.ORG

GEOGRP.COM Creation Date: 09-nov-1998 masked MAG1.MAGMA.CA

GEOHOLIDAY-SCAM.NET Created on: 16-Mar-06 masked NS3.GENESISCIRCLE.COM

geoholidayblog.ca Created on: 2008/03/17 masked sns29.websitewelcome.com

Trademark of GeoHoliday corporate logo is registered to finance arm of Geo Group.

1,284,384. 2005/12/22.

Montex Financial Services Corp.,
18th Floor, Atria III, 2225 Sheppard Avenue East, Toronto, ONTARIO M2J 5C2

Representative for Service/Représentant pour Signification:

SHAPIRO COHEN, P.O. BOX 3440, STATION D,
112 KENT STREET, SUITE 2001, OTTAWA, ONTARIO, K1P6P1

SERVICES: Planning of vacations for individuals and groups, including the operation of a
telemarketing centre, the provision of vacation premises, reservation services for vacation premises,
maintenance and preparation of premises for use, provision of furnishings for vacation premises;
operation and management of vacation and resort properties; operation of vacation clubs including the
financing of the purchase of club memberships.

Used in CANADA since at least as early as June 1990 on services.

Geo / Burstein / Starpoint / Muldoon related filings in the Courts: (note: civil actions do not imply
negative connotations nor does reference to any company or individual indicate they are a party in the
listed actions, merely referenced)

- Barkin v. Burstein, 2009 CanLII 51193 (ON S.C.)— 2009-09-28
  Superior Court of Justice — Ontario
  Note: may be unrelated despite reference to Alex and Paul Burstein
- Hendrix v. Geo Group of Companies, 2008 CanLII 29596 (ON S.C.)— 2008-06-18
  Superior Court of Justice — Ontario
  Cecil Hendrix and Hendrix Consulting Inc. (plaintiffs) v.
  The Geo Group of Companies and Alex Burstein (defendants/plaintiffs by third party claim) v.
  FPL Vacations Ltd. and Alistaire Pringle (third parties/defendants by third party claim) (Court
  File No. 05-CV-294778PDA2)
- GHMR Marketing Inc. v. Joly, 2004 CanLII 15639 (ON L.R.B.)— 2004-05-26 Ontario Labour
  Relations Board — Ontario
- Wappler v. Geo Holiday Services, 2010 HRTO 1465 (CanLII)— 2010-07-05 Human Rights
  Tribunal of Ontario — Ontario

1/1/2016 5:33 PM

- *Ramjit v. GHL Promotions Inc.*, 2003 CanLII 9124 (ON L.R.B.) — 2003-12-12 Ontario Labour Relations Board — Ontario
- *GHME Marketing Ltd. v. Budd*, 2004 CanLII 49964 (ON L.R.B.) — 2004-12-15 Ontario Labour Relations Board — Ontario
- *GR Marketing Inc. v. Lake*, 2006 CanLII 24723 (ON L.R.B.) — 2006-07-11 Ontario Labour Relations Board — Ontario

Some details about the company taken from those court documents:

Geo Holiday is a business that promotes and sells time-share vacation properties around the world employing personnel in call centres throughout the Greater Toronto Area. Applicants are hired as call centre representatives booking appointments for Geo Holiday's Mini Vacation Program and attend one day of training.

P. was hired by Ms. Susan Costa as a call centre representative for a 90-minute presentation tour program and began training to work in Geo Holiday's call centre which is comprised of approximately 110 staff. The recruiting and training manager for the centre was Wendy Lecompte, who reported to Ms. Costa, office manager of the Toronto location.

The training program that the applicant was required to attend was a 2 day program designed to review general information about Geo Holiday, the contents of client sales pitches or scripts and follow-up documentation for the various 90-minute tour presentations.

..had a concern that in the new position he did not wish to have any dealings with the Club President, Ms. Betty Eisenstadt. ..according to his testimony still being harrssed by Ms. Eisenstadt.

Timeshare reference in matrimonial action.

[193] In 2000 or 2001, the Covrigas bought a timeshare. This is one item that was not included in Schedule A. In his NFP statement, Mr. Covriga acknowledges that he has 100% of the value of the timeshare.

[194] After separation, Ms. Covriga contacted the timeshare and changed the address on record from the matrimonial home to her address. As a result, the yearly fees invoice was sent to her and not Mr. Covriga. However, Ms. Covriga failed to pay the fees. When Mr. Covriga learned about this he had to pay late fees to bring the account up to date. Since then he has been paying the fees.

[195] Mr. Covriga has been trying to sell the timeshare but has received no bids. It is listed for sale at $6,500 by Fairfield Geo Group on timesharesquicksale. Only during the trial, did Mr. Covriga learn that Ms. Covriga is not disputing the $6,500 value.

..was a sales person at the Ottawa sales office. The pay structure for the sales persons is commission based on sales. The sales persons are paid a draw against commission. The draw is paid as an "attendance advance" of $25.00 per day. When commission is earned, the advance is recovered against that commission.

In addition, Project Directors have discretion to issue monetary payments known as "Special Payment Incentive Funds" ("SPIFs") when someone has done a particular good job.

Alan Walker is the controller of the applicant, **GHME Marketing Ltd.**, and in that capacity is responsible for the applicant's payroll. Mr. Walker testified that one of the applicant's sales strategies is to bring a number of prospective customers into an auditorium and have a sales person, known as the podium speaker, give them a short presentation or "show" to generate interest in purchasing a timeshare. The podium speakers get 1% of any deals written as a result of that show.

The parties agreed that Mr. Budd had earned $507.69 commission and $20.31 vacation pay on the "Schaeffer" deal. However, Mr. Walker testified that by that point, Mr. Budd also had received $1,300 in advances based on attendance. This was consistent with Mr. Budd's pay stub.

Also shown on Mr. Budd's pay stub is a "Commission Hold-back" of 10%, known as the "Bank." In accordance with Mr. Budd's contract of employment, the applicant was

entitled to hold back 10% of commission earnings, in this instance $50.77, to protect the company from cancellations that occur after a he had left the employment of the applicant. This a hold back would be paid to him once three months had passed or the first three payments made on a contract.

Mr. Walker referred to two documents titled "SPIF AWARD." Mr. Walker testified that he assumed that the payment had been made to Mr. Budd in cash, because when payments are made by cheque the cheque number is usually reflected.

However, Mr. Walker conceded he had not been responsible for the SPIF payment, and that to the best of his knowledge, the first SPIF payment would have been made by Mitch Joly, and the second one by Keith Thompson, the project director at the time.

Mr. Walker testified that despite the following paragraph being contained on the SPIF documents, in the 11 years he had been with the applicant, he was not aware of any instances where a SPIF payment was made via the payroll system:

"The amount of the SPIF award will be added to the next payroll run and the required statutory withholding taxes will be withheld at that time and the amount will be included in the annual reporting of remuneration."

Then a "Jacques" deal "went bad" and the $632.70 commission earned by Mr. Budd (over and above the 10% holdback) in that instance was to be returned to the applicant.

The applicant ("GII Marketing") is in the business of marketing time-share properties.

Current reference to former VP of Sales, Cecil Hendrix:

Agata Lyczek and Cecil Hendrix appearing for 2189013 Ontario Inc. o/a Global Direct Savings; Aminda Simms appearing for Allied Reclamation Services Inc.;

What others are saying about Geo Holidays online.

http://forums.redflagdeals.com/joined-geo-holiday-club-toronto-293749/

- Geo Holiday's concept is similar as the Timeshares company in the market but they are selling points/credits not the weeks. I can use the points to stay in their resorts around the world & I can also use my points to exchange RCI's points.

- In general timeshares are a good deal on the accommodation, but the air fare will kill you because you can't book last-minute and get discounts. You have to book the timeshare well ahead, and airfares are expensive booked ahead.

You will do much much better booking a package on Expedia or wherever than you will with a timeshare.

- the total amount was $14,000 Cad. There is also annual fee of around 500 cdn.

- In the last 6 years, they haven't booked a single trip. They get magazines each month but are always told, those weeks aren't available but if you pay X amount of dollars for an upgrade we could get you in then. Usually the upgrade (not even including airfare) is more than she could book an all inclusive trip on her own. Either that or she's told that she can go but you have to pay $80 per person per day for the all inclusive fee for food etc.

- They can break down the payments so that anyone would think "of course I can afford that! of course I deserve a vacation once a year!!" and sign up.

But think about it. You are buying a MEMBERSHIP in a CLUB. It could be GONE tomorrow. You own NOTHING.

http://forums.redflagdeals.com/geo-holidays-scam-real-if-you-care-134185/

- Anytime you go to a trade show or some fair, if there's some single person with a booth offering a draw, they are in the business of getting you to sign up so they can sell your info to these companies.

http://www.tripadvisor.com/ShowTopic-g183457-i2187-k63842-GeoHolidays_GeoPlus_Wigamog-Haliburton_Ontario.html

- (08/2005) The Guana Bay Beach Villas they own in St Maarten was horrible and we are trying to get out of their airtight contract. In my opinion, they misrepresented their properties as 5 star, when I would only rate Guana as maybe 2 1/2 stars. Cockroaches, water damage, mold, mildew ,smell, worn out bedding and towels, wild dogs begging for food outside the door and I could go on. The worst part is the companies attitude, specifically Betty Eisenstadt the president. She is quick to deny, threaten to sue and become aggressive. This is one scary person, in my opinion. They will sue us, but we feel we have a responsibility to stand up for our rights and to hold companies accountable for the promises they make and do not fulfill.

--

Do you realize you will pay over $500 U.S. in "dues" EVERY year, but could only be able to use your points every OTHER year?

Do you know a Class Action Suit is in the works against Geogroup/Geoholidays/geopremiere?

Do you know you will get accommodation only and the airfare is all up to you?

Do you think you can re-sell if you want? NOBODY will buy your membership for what you paid.

You could pay thousands up front and the accommodation you may get may barely be worth the annual dues?

They have a collections department -- if the program were as wonderful as the high pressure salespeople profess then why would they need it?

http://finance.groups.yahoo.com/group/FAIRFIELDSCAMS/
ourexperience.org (a client site from 2006 that no longer exists)
http://www.talkabouttravelling.com/g...?q=geo+holiday

Questions worth asking are:

What is the cooling off period? What if I change my mind? How do I cancel the contract?

Have they ever sued someone for failing to fulfill their obligation to pay?

Have they ever sued someone for a defamation related tort?

Does the company own any of the properties you will be staying at?

If not, how long a contract does the company have with the hotels and resorts it lists? How can they guarantee that prices won't go up if it's not within their control over your life span?

What sort of trust account do they have established to ensure the security of your future travel?

What percentage of your membership goes towards commissions for the sales person or organization that sold you?

Are they a member of any recognized travel industry association?

Are you covered by any form of insurance in the event they cease to operate at some time in the future?

Do you need to book your flights through their facilities?

Are the restrictions on room availabilities based on anything other than the fact they are fully booked before you applied?

Do the resorts only have a limited number of rooms available to members, such as with airline reward programs?

How many members do they have?

What is the average length of membership before a member stops participating in the program, not including those who cancel within the first ten days?

How many rooms do they have available for members at their listed resorts during peak holiday seasons?

Are their current room rates comparable to equivalent properties not under their control?

Are current room rates based on the maximum rack rate allowed by law or on market conditions and average nightly revenues?

Why don't they offer a similar program for apartment rentals so as to avoid rent hikes in the future? (Isn't that somewhat similar in concept?)

Are they any restrictions on how many days you can stay at their hotels, resorts, cruise ships each year?

If you are retired or rich and can travel 365 days a year, will they be able to accommodate your needs?

Why do they operate under so many different names?

Who are the owners of the company and what makes them special?

What name will be on the contract and the cheque?

Will they threaten to ruin your credit rating if I don't pay what I signed up for?

Have they ever been sanctioned by an government agency?

What is their BBB rating?

What are the annual fees?

Do my points build up or could I lose them if I don't use them each year?

How can they market a 45 year vacation program to a 68 year-old person? Do they imagine that their member will still be traveling when they are 113 years old? (Note: you must be between 27 and 68 to attend their sales presentation.)

How are each of their resorts rated on customer reviewed travel sites?

Who has determined the star rating of their properties? Was it an independent unrelated agency that is recognized for unbiased evaluations?

Are you required to finance the purchase exclusively with their related company Montex Financial Services, Inc./ Montex Financial Services Corp.?

What are their finance charges and annual rate of interest charged?

Have they ever ruined a person's credit rating by filing a notice of unpaid debt for a member who wishes to stop being one prior to full payment?

How much is their most expensive membership plan upfront and what are the annual fees linked to it?

What is their association or business relationship with the Mexico-based Royal Holiday timeshare organization that lists the same properties as those offered by Geo?

Can a person come in from off the street and simply rent a week from any of their properties, based on availability, without any obligation beyond the going rate?

Have they ever operated using the name, or utilized the services of, Starpoint Resorts while promoting their services in Nevada?

Do they have an actual reservations infrastructure or do they simply call a third party such as Trading Places International to book your vacation?

# Your Rights under Timeshare Agreements in Ontario, Canada

You're entitled to a 10-day cooling-off period, in which you may cancel your contract for any reason. To do this, you need to provide notice to the supplier — preferably by registered letter, fax or e-mail in order to ensure you have proof of delivery. The company must refund any deposit within 15 days after it receives a request to cancel.

If you pay by credit card and cancel within 10 days of signing a timeshare agreement, you have the right to exercise charge-back provisions, as outlined in Section 99 of the Consumer Protection Act. You may request the credit card issuer cancel or reverse the credit card charges and any associated interest or other charges. You must send a written notice to your credit card company within 60 days after the

date by which the company was supposed to have refunded the payment.

Consumer agreements must disclose specified information. If a company isn't delivering on the contract or if you encounter an aspect that wasn't disclosed as part of the deal (e.g., an annual renewal fee), you have the right to cancel within one year.

When a consumer and business are engaged in an ongoing contract and the business decides to amend the contract, it must inform the consumer and provide them with an updated version of the agreement. Contracts can be actively renegotiated, but the consumer must explicitly agree to the changes. Then the supplier must follow up with an updated version of the contract.

## Time Share Agreements

### Requirements for time share agreements

**26.** (1)For the purpose of section 27 of the Act, a time share agreement shall be signed by the consumer and the supplier and shall set out the following information:

1. The name of the consumer.

2. The name of the supplier and, if different, the name under which the supplier carries on business.

3. The telephone number of the supplier, the address of the premises from which the supplier conducts business, and information respecting other ways, if any, in which the supplier can be contacted by the consumer, such as the fax number and e-mail address of the supplier.

4. The names of,

i. the person, if any, who solicited the consumer in connection with the agreement,

ii. the person, if any, who negotiated the agreement with the consumer, and

iii. the person who concluded the agreement with the consumer.

5. If the supplier has contracted with a property manager, other than an employee of the supplier, to manage the property that is the subject of the agreement, the name and telephone number of the property manager and information respecting other ways, if any, in which the property manager can be contacted by the consumer, such as the fax number and e-mail address of the property manager.

6. The date on which and the place where the agreement is entered into.

7. The commencement date and the term of the agreement including, if that is the case, that the term is indefinite.

8. A statement containing the text set out in subsection (2) and, if applicable, the additional text set out in subsection (3),

i. which shall be in at least 10 point type, except for the heading which shall be in at least 12 point bold type, and

ii. which shall appear on the first page of the agreement, unless there is a notice on the first page of the agreement in at least 12 point bold type indicating where in the agreement the statement appears.

9. A fair and accurate description of the consumer's rights in respect of the use of the property that is the subject of the agreement, including,

i. the precise location of the property,

ii. the precise suite or the type of suite that the consumer will have the right to occupy,

iii. the periods during or the dates on which the consumer will have the right to use the property,

iv. the goods and services, including facilities, that will be provided to the consumer or to which the consumer will have access, together with any conditions attached to, and any restrictions and limitations on, the use of or access to these goods and services, and

v. any conditions attached to, and any restrictions and limitations on, the consumer's right to dispose of the time share the consumer is acquiring under the agreement.

10. The details respecting the consumer's right, if any, to use a different property in substitution for the property that is the subject of the agreement, including,

i. the times at which the right may be exercised,

ii. the method by which the right is to be exercised,

iii. the amounts payable by the consumer in connection with exercising the right, and

iv. the name of the individual or entity responsible for co-ordinating the substitution and information respecting the various ways in which the individual or entity can be contacted by the consumer, such as the telephone number, fax number and e-mail address of the individual or entity.

11. The details respecting the consumer's right, if any, to exchange his or her right to occupy a precise suite or a type of suite for a right to occupy a different suite or type of suite, including,

i. the times at which the right may be exercised,

ii. the method by which the right is to be exercised,

iii. the amounts payable by the consumer in connection with exercising the right, and

iv. the name of the individual or entity responsible for co-ordinating the exchange and information respecting the various ways in which the individual or entity can be contacted by the consumer, such as the telephone number, fax number and e-mail address of the individual or entity.

12. A fair and accurate description of the access to be provided to the consumer with respect to discounts or benefits for the future provision of transportation, accommodation or other goods or services related to travel.

13. An itemized list setting out,

i. the amount of the one-time payment payable by the consumer upon entering into the agreement and the goods or services for which it is payable,

ii. the amount of each additional one-time payment payable by the consumer and the good or service for which it is payable, and

iii. the amount and frequency of the periodic payments payable by the consumer and the good or service for which each payment is payable.

14. An itemized list setting out,

i. each optional good and service, including a facility and a membership, that the supplier represents will be available to the consumer by virtue of the consumer entering into the agreement, and

ii. the amount that the consumer would have to pay for such good or service if the consumer decided to avail himself or herself of it.

15. If any of the amounts set out in the agreement is subject to change or if the consumer may be required to make a payment in addition to the payments set out in the agreement,

i. a statement to that effect,

ii. a description of the circumstances in which the amount may change or the additional payment may be required, and

iii. either,

A. what the changed amount or the additional payment will be, or

B. the objective standard that will be applied to determine the changed amount or the additional payment.

16. If the agreement includes a trade-in arrangement, a description of the trade-in arrangement and the amount of the trade-in allowance.

17. The currency in which amounts are expressed, if it is not Canadian currency.

18. With respect to every amount that is or may be payable by the consumer, as referred to in paragraphs 10, 11, 13, 14 and 15, the terms and methods of payment.

19. The consequences of non-payment of any amount that is payable by the consumer. O.Reg. 17/05, s.26 (1).

(2)The statement mentioned in paragraph 8 of subsection (1) shall set out the following:

**Your Rights under the *Consumer Protection Act, 2002***

You may cancel this agreement at any time during the period that ends ten (10) days after the day you receive a written copy of the agreement. You do not need to give the supplier a reason for cancelling during this 10-day period.

If the supplier does not make delivery within 30 days after the delivery date specified in this agreement or if the supplier does not begin performance of his, her or its obligations within 30 days after the commencement date specified in this agreement, you may cancel this agreement at any time before delivery or commencement of performance. You lose the right to cancel if, after the 30-day period has expired, you agree to accept delivery or authorize commencement of performance.

If the delivery date or commencement date is not specified in this agreement and the supplier does not deliver or commence performance within 30 days after the date this agreement is entered into, you may cancel this agreement at any time before delivery or commencement of performance. You lose the right to cancel if, after the 30-day period has expired, you agree to accept delivery or authorize commencement of performance.

In addition, there are other grounds that allow you to cancel this agreement. You may also have other rights, duties and remedies at law. For more information, you may contact the Ministry of Consumer and Business Services.

To cancel this agreement, you must give notice of cancellation to the supplier, at the address set out in the agreement, by any means that allows you to prove the date on which you gave notice. If no address is set out in the agreement, use any address of the supplier that is on record with the Government of Ontario or the Government of Canada or is known by you.

If you cancel this agreement, the supplier has fifteen (15) days to refund any payment you have made and return to you all goods delivered under a trade-in arrangement (or refund an amount equal to the trade-in allowance).

Is GeoHoliday Vacation Club a Scam?

Crimes of Persuasion on 



**Access to Public Records**
This online background verification service lets a person instantly access numerous public records databases for your personal investigations and includes unlisted phone numbers, property searches, criminal records, vital statistics, adoption files, tax court records and more.

Home Page / Model Scams Index / Disclaimer / Privacy Statement © 2000-2013 by Les Henderson